KILPATRICK TOWNSEND & STOCKTON LLP
A. James Isbester (State Bar No. 129820)
jisbester@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Megan M. Chung (State Bar No. 232044)
mchung@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Matthew J. Meyer (State Bar No. 284578)
mmeyer@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Attorneys for Defendant
AXONICS MODULATION TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AXONICS MODULATION TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Action No. 8:19-cv-02115-DOC-JDE<br><br>**AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO STAY LITIGATION PENDING INTER PARTES REVIEW**<br><br>DATE: May 11, 2020<br>TIME: 8:30 a.m.<br>DEPT: Courtroom 9D<br><br>Judge: Hon. David O. Carter<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |



# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 3

I. INTRODUCTION ............................................................................................ 3

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 5

    A. Medtronic's Lawsuit Against Axonics ................................................... 5

    B. The Asserted Patents and Pending IPRs ................................................ 6

    C. The Public Health Emergency Due to COVID-19 ............................... 8

III. LEGAL STANDARD ...................................................................................... 9

IV. ARGUMENT .................................................................................................. 10

    A. Stage of the Proceeding ....................................................................... 10

    B. A Stay Will Simplify the Issues in Question and Reduce the Burden of Litigation ............................................................................ 11

    C. A Stay Will Not Unduly Prejudice or Tactically Disadvantage Medtronic ............................................................................................. 13

    D. The Current Public Health Emergency Further Favors a Stay ........................................................................................................ 14

V. CONCLUSION ............................................................................................... 16



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW — - i -
CASE NO. 8:19-CV-02115-DOC-JDE

# TABLE OF AUTHORITIES

Page

**Cases**

*Allergan Inc. v. Cayman Chem. Co.*,
   No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) .................................................................................................. 9

*Cannarella v. Volvo Car USA LLC*,
   No. CV 16–6195–RSWL–JEMx, 2016 WL 9450451 (C.D. Cal., Dec. 12, 2016) ......................................................................................................... 13

*Destination Maternity Corp. v. Target Corp.*,
   12 F. Supp. 3d 762 (E.D. Penn. 2014) ............................................................ 14

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) ......................................................................... 9

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983) ......................................................................... 9

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
   385 F. Supp. 2d 1022 (N.D. Cal. 2005) ............................................................ 9

*In re Etter*,
   756 F.2d 852 (Fed. Cir. 1985) ........................................................................... 9

*Karl Storz v. Stryker Corp.*,
   No. 14–cv–00876–RS (N.D.Cal. Mar. 30, 2015) ............................................ 13

*Limestone v. Micron Technology*,
   No. SA CV 15-00278-DOC (RNBx), 2016 WL 3598109 (C.D. Cal. January 12, 2016) ................................................................................... passim

*PersonalWeb Techs., LLC v. Apple Inc.*,
   69 F. Supp. 3d 1022 (N.D. Cal. 2014) ............................................................ 13

*Polaris Innovations Limited v. Kingston Technology*,
   No. SACV 16-00300-CJC(RAOx), 2017 WL 8220599 (C.D. Cal. Jun. 27, 2017) ......................................................................................................... 10

*Purecircle USA Inc. v. SweeGen, Inc.*,
   No. SACV 18–1679 JVS (JDEx), 2019 WL 3220021 (C.D. Cal. Jun. 3, 2019) ..................................................................................................... 12, 13

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
   159 F.3d 1337 (Fed. Cir. 1998) ....................................................................... 11

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Supp. 2d 1028 (C.D. Cal. 2013) ............................................................ 9



# TABLE OF AUTHORITIES
(continued)

Page

*Universal Electronics Inc. v. Roku, Inc*,
   No. SACV 18-1580 JVS (ADSx), 2019 WL 6974173 (C.D. Cal.
   November 4, 2019) .................................................................................. 11, 12

*Wi-LAN Inc. et al v. Huizhou TCL Mobile Communication Co. Ltd. et al*,
   No. SACV 19-870 JVS (ADSx) 2020 WL 1269837 (C.D. Cal. Feb. 7,
   2020) ........................................................................................................ 10, 12

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
   No. EDCV 14-01153 VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20,
   2015) ........................................................................................................ 11, 12

**Statutes**

35 U.S.C. § 314(a) ................................................................................................ 6

35 U.S.C. § 314(b) ................................................................................................ 7

35 U.S.C. § 315(e)(2) ............................................................................................ 4

35 U.S.C. § 6(c) .................................................................................................... 6

**Rules**

C.D. Cal. R. 7-15 .................................................................................................. 1

C.D. Cal. R. 7-3 .................................................................................................... 1

Fed. R. Civ. P 26(f) ............................................................................. 5, 14, 15, 16

Fed. R. Civ. P. 78 .................................................................................................. 1

**Regulations**

37 C.F.R. § 42.100 ............................................................................................ 7, 8

37 C.F.R. § 42.100(c) ........................................................................................... 8

37 C.F.R. § 42.107(b) ........................................................................................... 7



# NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 11, 2020 at 8:30 a.m., before the Honorable David O. Carter, 411 West Fourth Street, Courtroom 9D, Santa Ana, California 92701, Defendant Axonics Modulation Technologies, Inc. ("Axonics"), by and through its undersigned counsel, will bring for hearing this Motion to Stay Litigation Pending *Inter Partes* Review.

Axonics hereby moves this Court for an order staying this litigation pending the outcome of Axonics' petitions for *inter partes* review. Alternatively, if the Court does wish the litigation to proceed for the time being, Axonics requests certain, limited adjustments to the case schedule to accommodate the difficulties arising from the COVID-19 pandemic.

Because the present Motion is best addressed without a hearing (Fed.R.Civ.P. 78 and C.D. Cal. R. 7-15), Axonics waives oral argument on this matter unless requested by the Court.

This Motion is made on the ground that a stay is warranted because of the early stage of the proceedings, the potential to simplify the issues, and the lack of prejudice to Plaintiff. This Motion is based on the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Matthew Meyer ("Meyer Decl."), any matters of which this Court may take judicial notice, and such additional evidence or argument as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to C.D. Cal. R. 7-3, which took place on April 1, 2020.



| | | |
|---|---|---|
| 1 | DATED: April 10, 2020 | Respectfully submitted, |
| 2 | | KILPATRICK TOWNSEND & STOCKTON LLP |
| 4 | | By: */s/ Megan M. Chung* <br> MEGAN M. CHUNG |
| 6 | | Attorneys for Defendant <br> AXONICS MODULATION TECHNOLOGIES INC. |



# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 16, 2020, Axonics filed seven petitions for *inter partes* review ("IPR") with the U.S. Patent and Trademark Office (the "Patent Office") that challenge all seven asserted patents in this case, and all claims that have been asserted. Courts in this District routinely stay patent cases while the PTAB considers IPR petitions challenging asserted patents. A stay in this case, in particular, is warranted based on the relevant factors as well as the totality of the present circumstances, including the national COVID-19 pandemic that led to emergency orders that affect the parties and courts at this time. These are unusual and uncertain times where the court's and parties' resources are better conserved to keep businesses going and people employed rather than use valuable and limited resources on the present litigation. All three factors used in this District to consider this motion favor granting a stay.

First, this case is still in its early stages. The case management order issued less than a month ago on March 13, 2020. D.I. 42. The parties have not exchanged contentions. Not a single deposition has taken place. No claim construction briefing has begun, no expert discovery has been conducted, and no summary judgment motions have been filed. By staying the case now, the parties can avoid needlessly engaging in extraneous discovery on issues that will be effectively resolved by the IPR proceedings, and conserve the resources of the Court.

Second, a stay will simplify the issues for trial, if not for the entire proceeding. Because these IPR petitions may result in the cancellation of all of the asserted claims this case should be stayed now. Further, any statements made by Plaintiffs Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, Medtronic USA, Inc. ("Medtronic" or "Plaintiffs") in the IPR proceedings will become part of the file history of the patents and could substantially impact claim construction for any claim in the unlikely event it



1  survives. If Medtronic amends its claims, it also impacts claim construction and
2  may simplify damages issues in this case. If the PTAB issues final written
3  decisions, Axonics will also be estopped from raising certain invalidity grounds
4  pursuant to 35 U.S.C. § 315(e)(2).
5        Third, a stay will not unduly prejudice Medtronic. Medtronic did not file a
6  preliminary injunction motion and thus this is like many other cases where stay has
7  been granted to simplify issues and conserve resources. Because Axonics promptly
8  petitioned for *inter partes* review, the PTAB is statutorily required to decide
9  whether to institute the majority of the IPR petitions by September 24, 2020, and
10 thereafter decide on unpatentability of the challenged patent claims within twelve
11 months of institution.
12       Finally, the public health emergency declared in California (and other states)
13 in response to the spread of COVID-19 further counsels in favor of staying this case
14 now. Under Executive Order N-33-20, all individuals living in California have been
15 directed "to stay home or at their place of residence except as needed to maintain
16 continuity of operations of the federal critical infrastructure sectors." Axonics'
17 employees, working in its principal executive offices in Irvine, California, are
18 currently unable to come into the office, which complicates and increases the cost
19 and burden of discovery for Axonics, thus magnifying the inefficiencies caused by
20 conducting extraneous discovery on issues that will be resolved by the PTAB.
21 Further, while the United States Courthouse in Santa Ana continues to operate, the
22 court's already limited resources are better directed to addressing criminal matters,
23 for which the Constitutional right to a speedy trial applies, rather than overseeing
24 discovery in an intellectual property dispute over money. This is particularly true
25 where the Patent Office, which has no criminal docket or accompanying
26 Constitutional obligations, is already re-assessing the validity of the patents without
27 delay—a process which requires no involvement by the Parties' employees and thus
28 minimizes the persons placed in harm's way by the administration of the present



dispute.

Thus, Axonics respectfully requests the Court promote efficiency for the Court and parties by granting this Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Medtronic's Lawsuit Against Axonics

Medtronic filed its Complaint on November 4, 2019 alleging infringement of U.S. Patent Nos. 8,036,756 ("the '756 patent"); 8,626,314 ("the '314 patent"); 9,463,324 ("the '324 patent"); and 9,821,112 ("the '112 patent"). D.I. 1. On November 26, 2019, Medtronic amended its Complaint to further allege infringement of three additional patents: U.S. Patent Nos. 8,738,148 ("the '148 patent"); 8,457,758 ("the '758 patent"); and 7,774,069 ("the '069 patent"). D.I. 18. Axonics filed its Answer to the First Amended Complaint on January 2, 2020.

On March 9, 2020, the Parties filed the Joint Rule 26(f) Report, in which Axonics disclosed to the Court that in the event it seeks *inter partes* review of some or all of the patents-in-suit, Axonics would bring a motion to stay the litigation pending resolution of the IPRs. D.I. 38. The initial case management conference was scheduled for March 16, 2020. D.I. 39. On March 13, 2020, the Court vacated the conference and issued its Scheduling Order. D.I. 40, 42. The Court did not adopt the parties' proposal for claim construction, and instead set the last date for dispositive motions for January 11, 2021. Trial is scheduled for March 9, 2021. D.I. 42.

Discovery is in its earliest stages. No document productions have been made and all patent disclosures remain, including the parties' contentions as to infringement, invalidity, and claim construction. No expert discovery has been conducted. No summary judgment motions have been filed. Indeed, no motions have been filed in the case whatsoever prior to the present motion to stay the proceedings.



### B.     The Asserted Patents and Pending IPRs

This case involves seven patents, across three patent families, directed to implantable medical devices, and, more specifically, either implantable medical electrical stimulation leads (the '756 patent and '314 patents) or recharging of implantable medical devices (the '324 patent, '112 patent, '148 patent, '758 patent, and '069 patent).

In its First Amended Complaint, Medtronic asserted specifically claim 14 of the '756 patent, claim 11 of the '314 patent, claims 1, 4 and 11 of the '324 patent, claim 1 of the '112 patent, claim 1 of the '148 patent, claim 4 of the '758 patent, and claim 5 of the '069 patent. *See* D.I. 28 at 12-74.

On March 16, 2020, Axonics filed seven petitions[1] for IPR with the Patent Office, asserting that all of the asserted claims of all seven patents are unpatentable due to either anticipation or obviousness. *See* Meyer Decl., Exs. A-G (Axonics' seven IPR Petitions of the asserted patents). Axonics' petitions challenge not just the claims asserted in the First Amended Complaint but any and all claims of possible relevance: claims 5 through 9 of the '069 patent, claims 1, 2, 4, 7, 10-12, 14, 18-24 of the '314 patent, claims 1, 2, 5, 7, 13-15, and 18 of the '756 patent, as well as every claim of the other four asserted patents (over 100 claims in total).

IPR proceedings are conducted before a panel of three technically-trained Administrative Patent Judges of the PTAB. 35 U.S.C. § 6(c). To institute an IPR, the PTAB must decide whether "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

Congress authorized IPR proceedings to "limit unnecessary and

---

[1] IPR2020-00678 (the '069 patent); IPR2020-00680 (the '758 patent); IPR2020-00712 (the '148 patent); IPR2020-00713 (the '112 patent); IPR2020-00714 (the '324 patent); IPR2020-00679 (the '314 patent); and IPR2020-00715 (the '756 patent).



counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 *et seq.*).

The Patent Office, including those working for the Patent Trial and Appeal Board ("PTAB"), has been successfully working remotely for many years. By the end of 2018, they had attained 98% telework eligibility for all of their business units. Patent Office 2018 Telework Annual Report at 17.[2] PTAB judges have been working remotely and even have held hearings via teleconferencing. *See id.*; *see also* August 30, 2019 PTAB Guide to the Administration of Oral Hearings[3] at 5 (how to request telephonic hearings).

On March 24, 2020, the Patent Office issued Notices of Filing Date Accorded in five of the seven petitions. On April 6, 2020, the Patent Office issued Notices of Filing Date Accorded in the remaining two petitions. Medtronic has three months from the date of these notices (i.e., until June 24, 2020 or July 6, 2020) to provide a preliminary response. 37 C.F.R. § 42.107(b). "A patent owner may expedite the proceeding by filing an election to waive the patent owner preliminary response." 37 C.F.R. § 42.107(b). Accordingly, Medtronic could expedite the timing of the institution decision if it so chooses. The PTAB must decide within three months of the receipt of the preliminary response, or waiver thereof, whether to institute the IPR. 35 U.S.C. § 314(b). Thus, institution decisions for the majority of the IPRs would issue, at the latest, on September 24, 2020—if Medtronic waits until June 24, 2020 to provide preliminary responses.

---

[2] https://www.uspto.gov/sites/default/files/documents/Telework_Annual_Report_2018%20508%20Compliant.pdf

[3] https://www.uspto.gov/sites/default/files/documents/PTAB%20Hearings%20Guide.pdf

1     If the IPRs are instituted, they must be "administered such that pendency
2 before the Board after institution is normally no more than one year" although that
3 time can be extended up to six months by the Chief Administrative Patent Judge. 37
4 C.F.R. § 42.100(c).

5     Given its strict timing requirements, IPR is designed (1) to reduce to 12
6 months the time the PTAB spends reviewing validity, from the previous
7 reexamination average of 36 months (77 Fed. Reg. 48,680, 48,725) (Aug. 14, 2012)
8 (codified at 37 C.F.R. §§ 42.100 et seq.); (2) to minimize duplicative efforts by
9 increasing coordination between district court litigation and *inter partes* review (*id.*
10 at 48,721); and (3) to allow limited discovery in the review proceedings (*id.* at
11 48,719).

12     **C.    The Public Health Emergency Due to COVID-19**

13     A public health emergency has been declared in California (and other states)
14 in response to the spread of COVID-19, also known as "Coronavirus." *See e.g.*,
15 C.D. Cal. General Orders 20-02 and 20-03. "[T]he Centers for Disease Control and
16 Prevention and other public health authorities have advised the taking of precautions
17 to reduce the possibility of exposure to the virus and slow the spread of the disease."
18 C.D. Cal. General Order 20-02 at 1. On March 19, 2020, California Executive
19 Order N-33-20 was issued, directing all individuals living in California "to stay
20 home or at their place of residence except as needed to maintain continuity of
21 operations of the federal critical infrastructure sectors." Meyer Decl., Ex. H at 1.

22     Axonics' principal executive offices are in this district in Irvine, California.
23 *See* D.I. 28 at 2. As explained in Axonics' Annual Report, Axonics' employees
24 perform substantially all of Axonics' research and development and back office
25 activity in Irvine, California. *See* Meyer Decl., Ex. I (Excerpts from Axonics'
26 March, 4 2020 Form 10-K) at 4.

27     The United States Courthouse in Santa Ana remains open for criminal
28 matters, but is otherwise closed to the public. Meyer Decl., Ex. J (Central District of



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW     - 8 -
CASE NO. 8:19-CV-02115-DOC-JDE

1  California COVID-19 Notice). "In civil cases, no hearings will go forward except
2  for emergency time-sensitive matters." *Id.* at 2.

3  **III.  LEGAL STANDARD**

4  "Courts have inherent power to manage their dockets and stay proceedings,
5  including the authority to order a stay pending conclusion of a PTO reexamination."
6  *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted)).
7  "Courts in this District consider three factors in determining whether to stay a case
8  pending IPR: '(1) whether discovery is complete and whether a trial date has been
9  set; (2) whether a stay will simplify the issues in question and trial of the case; and
10 (3)whether a stay would unduly prejudice or present a clear tactical disadvantage to
11 the nonmoving party.'" *Limestone v. Micron Tech.,* No. SA CV 15-00278-DOC
12 (RNBx), 2016 WL 3598109, at *2 (C.D. Cal. Jan. 12, 2016) citing *Universal Elecs.,*
13 *Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal.
14 2013). "The inquiry is not limited to these three factors." *Id.* at *2. Rather, "the
15 totality of the circumstances governs." *Id.* citing *Allergan Inc. v. Cayman Chem.*
16 *Co.*, No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9,
17 2009).

18 A stay may be "particularly justified where the outcome of the reexamination
19 would be likely to assist the court in determining patent validity and, if the claims
20 were cancelled in the reexamination, would eliminate the need to try the
21 infringement issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F.
22 Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing *Gould v. Control Laser Corp.*, 705
23 F.2d 1340, 1342 (Fed. Cir. 1983)). Indeed, "an auxiliary function [of the IPR] is to
24 free the court from any need to consider prior art without the benefit of the PTO's
25 initial consideration." *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985). "Thus, there is
26 a liberal policy in favor of granting motions to stay proceedings pending the
27 outcome of re-examination, especially in cases that are still in the initial stages of
28 litigation and where there has been little or no discovery." *Limestone,* 2016 WL



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW                              - 9 -
CASE NO. 8:19-CV-02115-DOC-JDE

1  3598109, at *2 (citation and internal quotations omitted).

## IV. ARGUMENT

All of the factors considered in deciding whether to grant a stay weigh strongly in favor of granting a stay here, as do the totality of the circumstances in view of the current national and state health emergency.

### A. Stage of the Proceeding

This factor favors a stay when "considering the general time line of patent litigation, there is more work ahead of the parties and the Court than behind the parties and the Court." *Limestone,* 2016 WL 3598109, at *3 (citation and internal quotations omitted). Where, as here, "discovery has just commenced – the parties have propounded one set of written interrogatories and requests for production – and the parties have not exchanged their positions related to claim construction … no witnesses have been deposed, no expert discovery has occurred, and trial is set [for the following year]." This factor "strongly weighs in favor of a stay." *Wi-LAN Inc. v. Huizhou TCL Mobile Commc'n Co.,* No. SACV 19-870 JVS (ADSx) 2020 WL 1269837, at *2 (C.D. Cal. Feb. 7, 2020).

This case is at the earliest stage, and the costliest stages of litigation have yet to occur: production of documents, email production, invalidity and infringement contentions, claim construction, dispositive motions, expert discovery, etc. Further, the Court has not yet been forced to expend any of its resources on any motion practice or resolving any other disputes between the parties. A stay of the proceedings while the case is in its infancy would conserve resources and benefit the parties as well as the Court. Indeed, courts have regularly stayed cases further along than the present litigation. *See Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2017 WL 8220599, at *2 (C.D. Cal. Jun. 27, 2017) (stage of the litigation factor favored stay where the case had been "pending for sixteen months" but "[n]o expert discovery ha[d] occurred," "the parties [we]re continuing to take depositions," the "proceedings to date, while numerous, d[id] not



1  place the parties on the cusp of trial."); *see also Universal Elecs. Inc. v. Roku, Inc.*,
2  No. SACV 18-1580 JVS (ADSx), 2019 WL 6974173, at *1 (C.D. Cal. November 4,
3  2019) (stage of the proceedings factor weighed in favor of a stay where "no
4  depositions ha[d] been taken or scheduled and the parties have not yet produced
5  email discovery" and "expert discovery ha[d] not begun and the parties ha[d] not
6  filed summary judgment motions" even though more than a year passed before the
7  IPR was filed, a Markman hearing had taken place and "dispositive motion practice"
8  was already underway.)

By contrast, allowing this litigation to progress, even during the relatively short six months that it will take the PTAB to render its institution decision, would require the parties to expend substantial effort and resources on extraneous issues that will be effectively resolved by the IPR proceedings.

Thus, the early nature of the proceedings strongly favors a stay here.

### B. A Stay Will Simplify the Issues in Question and Reduce the Burden of Litigation

In the context of *inter partes* review, a stay is justified where "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998).

Here, "because Defendants have petitioned for review of all claims asserted in this action, the outcome of the IPR has the potential to be case-dispositive." *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153 VAP (SPx), 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015). Further, "if an IPR is instituted and the claims are not cancelled, estoppel will prevent Defendants from raising in this Court invalidity grounds that were or could reasonably have been raised during the IPR." *Id*. Thus, because all asserted claims have been challenged this factor "weighs in favor of stay" even though the IPRs have not yet been



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW                               - 11 -
CASE NO. 8:19-CV-02115-DOC-JDE

1 instituted. *Id.*

2 "Although courts in this District have acknowledged the speculative nature of simplification where, as here, the PTAB has not yet made an institution decision, many courts have ultimately been persuaded that the potential to save significant judicial resources sways the analysis in favor of stay" even where not all asserted claims have been challenged. *Purecircle USA Inc. v. SweeGen, Inc.*, No. SACV 18–1679 JVS (JDEx), 2019 WL 3220021, at *2 (C.D. Cal. Jun. 3, 2019). This Court, for example, has stayed litigation prior to institution of IPR proceedings even where only "twenty-three of the twenty-six asserted claims" had been challenged and the IPRs were not potentially case dispositive. *See Limestone,* 2016 WL 3598109, at *3-4.

Where all asserted claims are challenged, however, the issue is straightforward. Any concern plaintiffs may raise regarding staying the litigation prior to institution of the IPRs is obviated by the relatively short time frame by which the PTAB must issue its decision as to whether to institute IPR. *Wonderland*, 2015 WL 1809309, at *3. If, however, the case is not stayed but an IPR is instituted, the court risks expending resources either wastefully (i.e., as to patents invalidated by the PTAB) or on issues that will necessitate reconsideration based on the developments of the IPR proceedings. Thus, "the risk of delay attending an unnecessary stay is minimal relative to the risk of unnecessary expenditure of resources should the stay be denied and an IPR subsequently commence." *Id.*

Courts in this district therefore regularly stay proceedings pending IPRs that have not yet been instituted where all asserted claims have been challenged. *See Wonderland*, 2015 WL 1809309, at *3; *Universal Elecs.,* 2019 WL 6974173, at *2; *Wi-LAN,* 2020 WL 1269837, at *2.

Thus, this factor weighs heavily in favor of a stay.



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO STAY LITIGATION PENDING INTER PARTES REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 12 -

### C. A Stay Will Not Unduly Prejudice or Tactically Disadvantage Medtronic

Medtronic will not be unduly prejudiced by a stay. "The mere possibility of delay, inherent in all proceedings, is insufficient to constitute undue prejudice." *Purecircle*, 2019 WL 3220021, at *3 (citation omitted). "Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Limestone,* 2016 WL 3598109, at *5, quoting *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014).

Here, Axonics filed its seven petitions for *inter partes* review within five months of the filing of the Complaint and promptly moved for a stay within a month, which favors a stay. *See Cannarella v. Volvo Car USA LLC*, No. CV 16–6195–RSWL–JEMx, 2016 WL 9450451, at *13 (C.D. Cal. Dec. 12, 2016) (identifying "the timing of the review request" and "the timing of the request for stay" as relevant sub-factors).

Further, the relationship of the parties does not support any claim of undue prejudice. *See Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14–cv–00876–RS, at *4 (N.D.Cal. Mar. 30, 2015) ("One relevant consideration in evaluating [Plaintiff's] claims of undue harm is whether the parties are sole competitors in the relevant markets.") While Medtronic and Axonics both market implantable neurostimulators (*see e.g*., D.I. 28, ¶ 13), Medtronic has not pointed to any product that it claims practices its seven asserted patents. Indeed, Medtronic's Interstim II product described in the Complaint is not rechargeable. *See* Meyer Decl., Ex. K (January 13, 2020 Medtronic Press Release discussing "recharge-free Interstim II neurostimulator"). Thus the transcutaneous energy transfer systems and methods in five of the seven asserted patents (i.e., the '324, '112, '148, '758, and '069 patents) are irrelevant to Medtronic's product. Further, Medtronic's InterStim Micro product is not approved for sale in the U.S. and thus Axonics cannot have



1 taken any InterStim Micro sales from Medtronic.

2     Moreover, Medtronic cannot contend that Axonics and Medtronic are sole
3 competitors in either the field neurostimulation or the field of rechargeable
4 implantable medical devices, more generally, in accordance with the scope of the
5 asserted patents. Other competitors in those fields include, at least, Boston
6 Scientific, St. Jude Medical, and Nevro. *See e.g.*, Meyer Decl., Ex. L.

7     Finally, Medtronic did not move for a preliminary injunction and stated in the
8 Joint Rule 26(f) Report (D.I. 38 at 3) that it does not plan to make such a motion,
9 which indicates that any prejudice to Medtronic that might result from delaying the
10 resolution of this suit is not severe. *See, e.g.*, *Destination Maternity Corp. v. Target
11 Corp.*, 12 F. Supp. 3d 762, 768 (E.D. Penn. 2014) (finding no undue prejudice
12 where there were multiple competitors in the field and plaintiff did not move for a
13 preliminary injunction).

14     Thus, the lack of undue prejudice to Medtronic here clearly favors a stay.

15 **D.**     **The Current Public Health Emergency Further Favors a Stay**

16     The "totality of the circumstances governs" the inquiry into whether to stay
17 proceedings pending IPR. *Limestone,* 2016 WL 3598109, at *2 (citation omitted).

18     The public health emergency declared in California, Wisconsin and
19 Minnesota in response to the spread of COVID-19 further counsels in favor of
20 staying this case now. All individuals living in California have been directed "to
21 stay home or at their place of residence except as needed to maintain continuity of
22 operations of the federal critical infrastructure sectors." Meyer Decl., Ex. H
23 (California Executive Order N-33-20) at 1. This includes Axonics' employees,
24 working in in Irvine, California, who are currently unable to come into the office.
25 This, of course, complicates and increases the cost of discovery for Axonics, and
26 magnifies the harm caused by conducting extraneous discovery on issues that will
27 be resolved by the PTAB. Similarly, Axonics understands that Medtronic's
28 potential witnesses, including the individuals identified in its Initial Disclosures, are



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW      - 14 -
CASE NO. 8:19-CV-02115-DOC-JDE

1    located in Wisconsin and Minnesota, which are under similar orders. *See* Meyer
2    Decl., Ex. M (Wisconsin Safer At Home Order); Meyer Decl., Ex. N (Minnesota
3    Emergency Executive Order 20-33).
4         The burden on the Court from the public health crisis is also substantial. The
5    United States Courthouse in Santa Ana remains open for criminal matters, but it is
6    otherwise closed to the public. Meyer Decl., Ex. J at 1 (Central District of
7    California COVID-19 Notice). "In civil cases, no hearings will go forward except
8    for emergency time-sensitive matters." *Id.* at 2. As indicated by this district's own
9    guidelines, the court's already limited resources are better directed to addressing
10   criminal matters, for which the Constitutional right to a speedy trial applies, rather
11   than overseeing discovery in this intellectual property dispute between two
12   corporations. The Patent Office, which has no criminal docket or accompanying
13   Constitutional obligations, is already re-assessing the validity of the patents without
14   delay as evidenced by its recent issuance of notices of filing date accorded in
15   Axonic's IPR proceedings. Allowing the activity in this dispute to continue in the
16   Patent Office, where discovery is limited, the work can be done remotely, and no
17   involvement by the Parties' employees is necessary, is good public policy because it
18   minimizes the persons placed in harm's way by the administration of the present
19   dispute.
20        Thus, the current climate due to the threat of COVID-19 further favors a stay.
21   Alternatively, if the Court nevertheless wishes the litigation to proceed for the time
22   being, Axonics requests limited adjustments to the case schedule to accommodate
23   the difficulties arising from the COVID-19 pandemic. Specifically, Exhibit B to the
24   Protective Order entered by Magistrate Judge Early on March 16, 2020—three days
25   before California Executive Order N-33-20 issued—includes several discovery
26   deadlines proposed by the Parties' Joint 26(f) Report as pieces of a proposed
27   schedule that was not adopted by the Court:
28



AXONICS MODULATION TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION
TO STAY LITIGATION PENDING INTER PARTES REVIEW    - 15 -
CASE NO. 8:19-CV-02115-DOC-JDE

"On April 10, 2020, each defendant shall produce to the plaintiff technical documents (including for software where applicable) sufficient to show the accused features and operation of the accused products. . . . On May 6, 2020, plaintiff shall produce to each defendant an initial claim chart relating each accused product to the asserted claims each product allegedly infringes. . . . On June 10, 2020, each defendant shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents)."

D.I. 44 at 27-28 (Protective Order, Exhibit B).

While these deadlines made sense—prior to the COVID-19 health crisis—in the context of the schedule proposed in the Joint 26(f) Report, which also included full claim construction and a *Markman* hearing, they make little sense now.

Should the Court not stay the present litigation, despite the many advantages to doing so, Axonics requests the Court remove these deadlines from the ESI Order, so that the Parties may conduct discovery in a timeframe and manner befitting the current circumstances and case schedule.

## V. CONCLUSION

For the foregoing reasons, Axonics requests that the Court stay this litigation pending final determinations in the seven IPR proceedings it has raised.

DATED: April 10, 2020          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Megan M. Chung*
     MEGAN M. CHUNG

Attorneys for Defendant
AXONICS MODULATION TECHNOLOGIES INC.

