Nimalka Wickramasekera (SBN: 268518)
NWickramasekera@winston.com
Joe S. Netikosol (SBN: 302026)
JNetikosol@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

George C. Lombardi (*pro hac vice*)
GLombard@winston.com
Samantha M. Lerner (*pro hac vice*)
SLerner@winston.com
J.R. McNair (*pro hac vice*)
JMcNair@winston.com
Vivek V. Krishnan (*pro hac vice*)
VKrishnan@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AXONICS MODULATION TECHNOLOGIES, INC., <br><br> Defendant. | Case No.  **8:19-cv-02115-DOC-JDE** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION PENDING INTER PARTES REVIEW** <br><br> Fact Discovery Cut-Off:   December 7, 2020 <br> Motion Cut-Off:   January 11, 2021 <br> Pretrial Conference:   February 15, 2021 <br> Trial Date:   March 9, 2021 <br><br> Date:   May 11, 2019 <br> Time:   8:30 a.m. <br> Courtroom:   9D |

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

    A.  The Parties and the Complaint ................................................. 2

    B.  The Progress of the Case........................................................... 3

    C.  Axonics' Inter Partes Review Petitions ................................... 5

III.  LEGAL STANDARD ........................................................................ 5

IV.  ARGUMENT...................................................................................... 6

    A.  The Stage of the Case, the Court's Schedule, and the Parties' Significant Expenditure of Resources Weigh Against a Stay................... 6

    B.  A Stay Will Not Simplify the Issues Because the PTAB Need Not Decide Whether to Institute Review Until Near Close of Discovery. ................................................................................ 10

    C.  A Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to Medtronic. .................................................... 12

    D.  The COVID-19 pandemic will not disrupt the parties' obligations in this litigation. ..................................................................... 16

V.  CONCLUSION ................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Avago Techs. Fiber IP (Sing.) Pte. Ltd. v. IPtronics, Inc.*,
  2011 WL 3267768 (N.D. Cal. July 28, 2011) ........................................................ 14

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
  2011 WL 4448972 (C.D. Cal. Sept. 26, 2011) ................................................. 13, 15

*Carl Zeiss A.G. v. Nikon Corp.*,
  2018 WL 5081479 (C.D. Cal. Oct. 16, 2018) ........................................... 12, 13, 15

*Destination Maternity Corp. v. Target Corp.*,
  12 F. Supp. 3d 762 (Mar. 24, 2014) ...................................................................... 14

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
  Case No. 18-cv-2043-DOC (C.D. Cal. Jan. 13, 2020) ....................................*passim*

*Limestone v. Micron Tech.*,
  2016 WL 3598109 (C.D. Cal. Jan. 12, 2016)................................................9, 10, 14

*Otto Bock HealthCare LP v. Össur HF*,
  2013 WL 12313020 (C.D. Cal. Dec. 16, 2013)........................................................ 5

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
  2016 WL 7496740 (C.D. Cal. Nov. 17, 2016) ................................................. 6, 8, 9

*Polaris Innovations v. Kingston Tech. Co., Inc.*,
  2017 WL 8220599 (C.D. Cal. Jun. 27, 2017)................................................. 8, 9, 14

*SpeakWare, Inc. v. Microsoft Corp.*,
  2019 WL 1878350 (C.D. Cal. Feb. 21, 2019) ................................................*passim*

*SpeakWare, Inc. v. Microsoft Corp.*,
  Case No. 18-cv-1293-DOC (C.D. Cal. Jun. 21, 2019)............................................ 7

*Toshiba Tec Corp. v. Katun Corp.*,
  2016 WL 9137646 (C.D. Cal. Sept. 21, 2016) ..................................................... 2, 6

*Universal Elecs. Inc. v. Roku, Inc.*,
  2019 WL 6974173 (C.D. Cal. Nov. 4, 2019) .......................................... 6, 10, 12, 14

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. May 2, 2013) ........................................................ 14

*Wi-LAN Inc. v. Huizhou TCL Mobile Commc'n Co. Ltd.*,
    2020 WL 1269837 (C.D. Cal. Feb. 7, 2020) .......................................................... 14

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
    2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) .......................................................... 11

**Other Authorities**

Fed. R. Civ. P. 26(f) .......................................................................................................... 4

# I.  INTRODUCTION

Five months after Medtronic filed this patent infringement action, Defendant asks the Court to stay the case ***indefinitely*** merely because it filed petitions for *inter partes* review ("IPR") to challenge the validity of more than 100 claims across seven asserted patents.  A stay of this case would be inappropriate for several reasons.

First, in the nearly half a year this case has been pending, the Court and Medtronic have expended substantial resources to advance the case.  The Court has already set a case schedule that includes a trial date, and Medtronic has worked diligently to comply with the Court's schedule, already providing Axonics a substantial amount of the discovery it has requested despite knowing full well it intended to seek IPRs.  Axonics has admittedly spent years, since 2013, studying Medtronic's patent portfolio.  As such, Axonics could have filed its IPR petitions at any time, even before this litigation, but strategically chose not to until now.  Indeed, prior to filing its IPR petitions, Axonics proceeded as if this case would be substantively litigated, pushed for an aggressive initial discovery and contentions schedule that has already put a disproportionate burden on Medtronic, and allowed the Court to set a trial date.  Axonics should not be rewarded for its unexcused delay to gain a tactical advantage over Medtronic, which could delay the trial by years.

Second, because Axonics merely ***filed*** IPR petitions—without any indication that the Patent Trial and Appeal Board ("PTAB") will actually address the validity of any of the seven asserted patents—Axonics' argument that the IPRs will simplify the case is purely speculative.  Even if the PTAB institutes all seven IPRs, it need not reach that decision until late September 2020, well near the end of discovery in this case.  And recent PTAB statistics show almost no chance the PTAB will invalidate—and thus dispose of—all challenged claims across seven diverse patents.  Moreover, the PTAB's final written decisions are not due until September 2021—over ***six months*** after the scheduled trial in this case.

Third, as it has stated publicly, Axonics' business plan all along has been to

1

exploit Medtronic's intellectual property to position itself as Medtronic's sole competitor in the sacral neuromodulation market.  Medtronic created the market for the treatment of certain conditions using sacral neuromodulation.  Because Medtronic and Axonics are direct—and by Axonics' own admission, the only—competitors in the market, a stay would unduly prejudice Medtronic.  Such delay in adjudicating the alleged infringement would further erode Medtronic's market position and risks depriving Medtronic of the opportunity to obtain a permanent injunction.

Accordingly, a stay should be denied because Axonics cannot meet its burden to show that one is warranted.  Indeed, its motion is "based on nothing more than the fact that a petition for *inter partes* review was filed."  *SpeakWare, Inc. v. Microsoft Corp.*, 2019 WL 1878350, at *3 (C.D. Cal. Feb. 21, 2019) (Carter, J.) (denying stay pending IPR).  As a matter of policy, "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts," and "[f]ederal court calendars should not be hijacked in this manner."  *Toshiba Tec Corp. v. Katun Corp.*, 2016 WL 9137646, at *4 (C.D. Cal. Sept. 21, 2016) (denying motion to stay pending IPR proceedings) (internal quotation omitted).

## II.    BACKGROUND

### A.    The Parties and the Complaint

For the last 25 years, Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, and Medtronic USA, Inc. (collectively, "Medtronic") have led the field in the treatment of bladder and bowel control issues using sacral neuromodulation technology, marketing those products under the tradename InterStim.  Dkt. 28 ("FAC") at ¶ 12.   Defendant Axonics Modulation Technologies, Inc. ("Axonics") also provides sacral neuromodulation solutions and launched its infringing product in the United States in October 2019.  Dkt. 34 ("Answer") at ¶ 20.

Since its inception in 2013, Axonics has targeted and based its entire business on the sacral neuromodulation market that Medtronic created.  According to its CEO, Axonics "looked at the size of the market then concluded [its] best opportunity for

return on investment and return on time would be to go after the sacral neuromodulation sector." *See* Declaration of J.R. McNair, Ex. 1 at 1.[1]  Indeed, according to Axonics, "[o]ne of the decision drivers was [having a huge] market with only one competitor," i.e., Medtronic.  *Id.*  As such, Axonics and its "in-house Intellectual Property (IP) lawyer" from the very start "spent many initial months examining patents and IP issues," *id.*, and acknowledged to the press upon being sued that it was "very familiar" with the patents that are the subject of the litigation.  *See id.*, Ex. 2 at 1.

In September and November 2019, Axonics announced that its rechargeable Sacral Neuromodulation ("r-SNM") System had been approved by the FDA for treating fecal incontinence and urinary incontinence, respectively.  FAC at ¶ 16.  The first commercial implant of the Axonics r-SNM System in the U.S. took place on October 29, 2019.  Answer at ¶ 20.

On November 4, 2019, Medtronic promptly brought this action against Axonics for infringing its patented tined lead and recharging technology, bringing claims for infringement of U.S. Patent Nos. 8,036,756, 8,626,314, 9,463,324, and 9,821,112.  Dkt. 1 ("Complaint").  The day after Medtronic filed suit, Axonics issued a press release, stating that because of its preparation and knowledge of Medtronic's IP, it "is prepared to act quickly and defend itself aggressively and has already begun working with legal counsel."  *See* Ex. 3 at 1.  On November 26, 2019, Medtronic amended its complaint and asserted three additional patents, U.S. Patent Nos. 8,738,148, 8,457,758, and 7,774,069.  Dkt. 28.  Axonics answered the FAC on January 2, 2020.  Dkt. 34.

### B.  The Progress of the Case

In February, the parties conferred to set a case schedule and discovery plan. Thereafter, the parties diligently engaged in discovery.  On February 18, 2020, Medtronic served Axonics with its first set of requests for production and interrogatories.  McNair Decl. ¶ 3.  On March 11, 2020, Axonics served Medtronic with

---

[1] All further exhibits cited are referenced in the Declaration of J.R. McNair.

its first set of requests for production and interrogatories. *Id.* ¶ 4. Since then, Medtronic has been interviewing witnesses, collecting documents, and preparing written responses to Axonics' written discovery, which Medtronic served Axonics with on April 10, 2020. *Id.* To date, Medtronic has collected, reviewed, and produced 13,965 pages of documents. *Id.* ¶ 5.

The parties filed their Joint Rule 26(f) report on February 24, 2020, jointly proposing an ***agreed-upon*** case schedule through trial. Dkt. 38 ("26(f) Report"). On March 13, 2020, this Court issued a scheduling order setting the date for filing dispositive motions as January 11, 2021, and the date for trial as March 9, 2021. Dkt. 42 ("Scheduling Order"). The Court's orders in this case have stressed that the schedule imposes strict deadlines, and changes are strongly disfavored. *See* Initial Standing Order (Dkt. 16 at 2) ("This Court has a strong interest in adhering to scheduled dates."); Order Setting Scheduling Conference (Dkt. 35 at 4) ("After the parties have selected these dates, continuances are rarely granted due to the Court's heavy case load and in fairness to other litigants before the Court."); Scheduling Order (Dkt. 42 at 2) ("Plan now to complete discovery on the schedule set; a continuance is unlikely.").

The same day the Court issued its scheduling order, the parties filed their stipulated protective order. Dkt. 43. At Axonics' request, the parties' stipulated protective order included an ***agreed-upon*** patent discovery schedule. *Id.* at 28–29; *See* Ex. 4 at 28–29. Per that schedule, the parties specified the date on which each will provide an initial production of documents (April 10, 2020), the date for the parties to provide ESI disclosures including identifying the individuals and sources most likely to have discoverable information (April 24, 2020), and the date upon which Medtronic will produce its initial infringement claim charts (May 6, 2020). *Id.* The Protective Order, including these agreed-upon dates, was entered into the record the following business day on March 16, 2020, by Magistrate John D. Early. Dkt. 44 ("Protective Order").

Medtronic has already devoted substantial resources to meet the Court's and the

parties' agreed-upon deadlines.  Most recently, on April 10, 2020, Axonics produced documents showing how the accused r-SNM system works.  McNair Decl. ¶ 6.  Since then, Medtronic has been analyzing and preparing its infringement contentions, which, pursuant to the parties' agreement, are due to Axonics on May 6, 2020, before the date Axonics set for the hearing on this motion.  *Id.*

### C.    Axonics' Inter Partes Review Petitions

Only after allowing the Court to set the trial date—and just ***one business day*** after Axonics jointly proposed specific discovery dates imposing significant early discovery upon Medtronic—Axonics filed seven petitions for IPR with the PTAB of the U.S. Patent and Trademark Office ("PTO") on March 16, 2020.  Axonics' petitions challenge more than 100 patent claims from seven patents and three diverse patent families.  Dkt. 49 ("Axonics Mot.") at 6.  Nearly one month after filing its IPR petitions, on April 10, 2020, Axonics moved to stay the case pending resolution of its IPRs.  *Id.* The PTO is not required to decide whether to institute review of any of the petitions until September 2020, and for any review instituted, it will likely not reach a final decision on patent validity until September 2021.  *Id.* at 7–8.

### III.    LEGAL STANDARD

"The party seeking a stay bears the burden of showing that a stay is warranted." *Otto Bock HealthCare LP v. Össur HF*, 2013 WL 12313020, at *2 (C.D. Cal. Dec. 16, 2013) (denying motion to stay pending IPR).  "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  *SpeakWare, Inc.*, 2019 WL 1878350 at *2; *See* Ex. 5, *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, Case No. 18-cv-2043-DOC at 2 (C.D. Cal. Jan. 13, 2020) (Carter, J.) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)) (denying motion to stay pending IPR).  "[A] court is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations—even if the reexaminations are relevant to the infringement claims before the Court."  *Id.* (citing *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,

2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014)); *see also Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, 2016 WL 7496740, at *1 (C.D. Cal. Nov. 17, 2016); *Toshiba Tec Corp.*, 2016 WL 9137646, at *4.

In determining whether a stay is appropriate pending IPR, courts in this District typically consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *SpeakWare, Inc.*, 2019 WL 1878350 at *2 (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. May 2, 2013)); *Ellison Educ. Equip., Inc.,* Case No. 18-cv-2043-DOC at 2.  The three factors "are not exhaustive, however, as the decision whether to order a stay must be based on the totality of the circumstances." *SpeakWare, Inc.*, 2019 WL 1878350 at *2 (citing *Polaris Innovations Ltd.*, 2016 WL 7496740, at *1).

## IV.    ARGUMENT

### A.    The Stage of the Case, the Court's Schedule, and the Parties' Significant Expenditure of Resources Weigh Against a Stay.

The first factor for this Court to consider is the stage of the proceedings, including "whether discovery is complete and whether a trial date has been set." *Universal Elecs.*, 943 F. Supp. 2d at 1030–31.  As discussed above, in contrast to other motions to stay granted by this Court, the parties agreed to and jointly proposed a schedule in this case (including an initial patent discovery schedule jointly filed just one business day before Axonics filed its IPR requests); this Court has issued a scheduling order and set a trial date; and the parties have been diligently engaging in discovery.  As such, this factor weighs strongly against a stay. *SpeakWare, Inc.*, 2019 WL 1878350 at *2; *Ellison Educ. Equip., Inc.,* Case No. 18-cv-2043-DOC at 2–3.

Indeed, this Court has previously deemed this factor to weigh against a stay under similar circumstances.  In *SpeakWare*, the defendant filed petitions for IPR four months after the complaint was filed.  2019 WL 1878350 at *1–*2.  "[B]ased on nothing more

than the fact that a petition for *inter partes* review was filed," the defendant moved to stay the case. *Id.* at *3. In denying the motion, this Court noted that it was brought after a scheduling order had been issued, a motion to consolidate had been decided, and the trial date had been set. *Id.* at *2. The Court further noted that although the trial would not commence until the following year, the parties and the Court "expended non-trivial resources into this litigation." *Id.*[2]

Similarly, in *Ellison*, after the parties agreed upon discovery dates and this Court set the trial date, the defendants moved to stay the case based on the mere filing of their petition for IPR. Case No. 18-cv-2043-DOC at 2–3. In denying the motion, this Court stated that "[d]efendants filed their petition for IPR, knowing full well that dates had already been chosen and scheduled," and "while more discovery remains, the parties have already undertaken some discovery and expended resources to do so." *Id.* at 3. The same is true here.

*SpeakWare* and *Ellison* counsel strongly against a stay in this case. Here, Axonics strategically waited to file its petitions for IPR until March 16, 2020, almost five months after Medtronic filed its complaint and immediately after jointly proposing a schedule to this Court that imposed significant early discovery obligations on Medtronic. Axonics then moved for a stay nearly one month later on April 10, 2020. During this time, discovery has commenced, the Court issued its Scheduling Order (Dkt. 42) and entered the Protective Order (Dkt. 44), a trial date has been set, the parties have exchanged initial disclosures identifying more than 20 potential fact witnesses, the parties have exchanged and responded to extensive bilateral requests for production of documents, and both parties have responded to interrogatories. McNair Decl. ¶¶ 2–4. In addition, to date, Medtronic has produced 13,965 pages of documents in response to

---

[2] The defendants in *SpeakWare* renewed their stay motion after the PTO decided to review all challenged claims, which this Court denied on the same bases. *See* Ex. 6, *SpeakWare*, Case No. 18-cv-1293-DOC (C.D. Cal. Jun. 21, 2019) (Carter, J.), Order Denying Defendant's Renewed Motion to Stay, Dkt. 78.

Axonics' requests.  *Id.* at ¶ 5.  On April 10, 2020, Axonics produced technical documents showing the operation of the accused products, which Medtronic has already expended significant resources analyzing to prepare its detailed infringement contentions for all seven asserted patents.  These contentions are due—according to the schedule Axonics asked for—on May 6, 2020, **before** the hearing date of the instant motion.  *Id.* ¶ 6.  Most importantly, however, **no** IPRs have been instituted.

Nevertheless, to support its belated request for a stay, Axonics argues that this case is in its "infancy."  Axonics' Mot. at 10.  As discussed above, Axonics' argument belies its own approach to this litigation.  Indeed, despite planning all along to file IPR petitions, Axonics submitted a case schedule calling for trial in 2021, which the Court subsequently set for March 2021—now less than a year away.  And, just one business day before filing its IPR requests, Axonics proposed specific dates for Medtronic to provide lengthy and detailed discovery disclosures.  Dkt. 43 at 28–29; *See* Ex. 4 at 28-29.  As such, Axonics cannot credibly dispute that both parties have already expended significant resources on discovery in this case.

Even more, public information suggests that Axonics knew about the asserted patents long ago and based its company's strategy around understanding them.  *See* Ex. 7 at 1 ("Since its inception in late 2013, Axonics has invested millions of dollars and thousands of hours into understanding the relevant and adjacent intellectual property landscape while developing our products and our own intellectual property.").  As such, Axonics could have filed the IPR petitions long—possibly years—before March 2020.  Or, at the very least, it could have filed them shortly after the initiation of this action, when the case truly was in its "infancy," and before the parties expended significant resources on discovery and the Court set a schedule.  Granting a stay at this stage would reward Axonics for its strategic delay, which places the potential resolution of the IPRs in September 2021, more than six months after this case is to be tried.

Axonics' reliance on *Polaris Innovations v. Kingston Tech. Co., Inc.*, 2017 WL 8220599 (C.D. Cal. Jun. 27, 2017) is misplaced.  In *Polaris*—as in *SpeakWare*—the

defendant's first motion to stay was ***denied*** because similar to the posture of this case, the defendant had "only petitioned for IPR" and the parties had expended "non-trivial resources" exchanging written interrogatories, requests for production, and claim construction proposals, and the court had resolved two motions for judgment on the pleadings. *See Polaris Innovations*, 2016 WL 7496740, at *2. In denying the first motion, the court noted that "[s]taying this case for months would prejudice [the plaintiff] and undermine [the] [c]ourt's efficient management of the case."[3]  *Id.*  The *Polaris* court granted defendant's ***renewed*** motion after the case had been pending for 16 months, but the facts relevant to a stay had materially changed.  At that point, the PTO had instituted review of the patent and the parties still had not advanced the case, having failed to complete both fact and expert discovery while extending numerous deadlines. *Polaris*, 2017 WL 8220599 at *2.  The posture of the case when *Polaris* was stayed is far different than this case.[4]  By contrast, the Court has scheduled trial approximately 16 months after the case was filed, fact discovery is well underway, and no IPRs have been instituted. *Polaris* strongly counsels ***against*** a stay here.

Axonics' reliance on *Limestone v. Micron Tech.*, 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) (Carter, J.), is similarly misplaced.  This Court distinguished its prior decision in *Limestone* when it denied the stay in *SpeakWare*, specifically noting that in *Limestone*, no trial date had been set.  *SpeakWare, Inc.*, 2019 WL 1878350 at *2.  Moreover, *Limestone* involved 10 different consolidated cases and discovery had not

---

[3] As relevant to factor two, the *Polaris* court noted that "while it [was] still somewhat early in the litigation," the [defendant] had only petitioned for IPR and it "can only speculate as to whether the PTAB will grant review, and if granted, what the scope of such review would be…." *See id.*

[4] The *Polaris* case shows just how disruptive a stay can be, remaining stayed almost three years later even though some of the claims were upheld by the PTO following IPR. *See* Ex. 8 at 1–7; Ex. 9 at 1–4.  In fact, four of the five decisions on these IPRs were appealed to the Federal Circuit and the final appeal was resolved in April 2020. *See* Ex. 10 at 1–8.  The Federal Circuit vacated and remanded three of the IPRs back to the PTAB, in favor of the patent holder, for review consistent with the Federal Circuit's decision. *Id.*  This will inevitably further delay the resolution of the district court case.

even begun for nine of the defendants when the stay motion was filed.  2016 WL 3598109 at *2.  As discussed above, that is not the case here.

Given the circumstances, there is no reason for the Court to deviate from its previous rulings.  As such, this factor weighs against a stay because the Court has set a schedule and trial date in this case, the case is not in its infancy, and the parties have already expended non-trivial resources on the case.

### B. A Stay Will Not Simplify the Issues Because the PTAB Need Not Decide Whether to Institute Review Until Near Close of Discovery.

The next prong of the analysis is whether a stay would simplify the issues in question and trial of the case.  *Universal Elecs.*, 943 F. Supp. 2d at 1030–31.

Axonics filed its IPR petitions on March 16, 2020, challenging more than 100 claims in seven asserted patents.  To date, the PTAB has not decided whether to institute the IPRs and need not do so until late September 2020.  By that time, discovery will be near completion.  Moreover, even if the PTAB decides to initiate review, final determination would not be until September 2021, *six months* after the scheduled trial in this matter.  Given that the trial is set for March 9, 2021, the validity issues will be resolved by this Court well before the PTAB issues a final determination.  This Court has deemed similar circumstances in *SpeakWare* and *Ellison* as weighing against a stay. *SpeakWare*, 2019 WL 1878350 at *3; *Ellison Educ. Equip, Inc.*, Case No. 18-cv-2043-DOC at 3.

In *SpeakWare*, this Court denied a motion to stay based on "merely petition[ing] for IPR."  *SpeakWare*, 2019 WL 1878350 at *3.  There, the Court noted the relevant timeline: "Once a petition for IPR is filed, the patent owner has the right to file a preliminary response to the petition, arguing for why an IPR should not be instituted." *Id.*  "The Director of the PTAB then has three months to decide whether to grant the petition, and may only do so if the petition 'shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.'"  *Id.*  Finally, "the PTAB may decide to review . . . none of the challenged

claims." *Id.* Accordingly, this Court concluded that this factor weighs against a stay because "any simplification [of the action] as a result of PTAB proceedings is inherently speculative." *Id.*

Similarly, in *Ellison*, this Court held that, "while the single claim [] at issue in this action would also be reexamined in the IPR, the PTAB has not decided whether to institute IPR, and need not do so until … almost two full months after the close of discovery set by this Court's scheduling order. Thus, while the IPR ***might*** simplify this proceeding ***if*** it were instituted, there is also a significant chance that the PTAB will decide not to institute IPR, and this Court will have thrown off the entire scheduling of this case for no benefit." *Ellison Educ. Equip.*, Case No. 18-cv-2043-DOC at 3 (emphasis in original). Accordingly, this Court concluded that this factor weighs against a stay. *Id.*

The holdings in *SpeakWare* and *Ellison* apply here: Axonics' motion to stay is based on "nothing more than the fact that a petition for *inter partes* review was filed," and, thus, "any simplification [of the action] as a result of PTAB proceedings is inherently speculative." *SpeakWare*, 2019 WL 1878350 at *3.

Axonics argues that because it has petitioned for review of all claims asserted in this action, the outcome of the IPRs ***could be*** case-dispositive. *See* Axonics' Mot. at 11, citing *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015). However, this Court has rejected this argument in prior cases, because the filing of an IPR petition by itself does not simplify any issues in question—ultimately, the PTAB may not institute IPR proceedings. *SpeakWare*, 2019 WL 1878350 at *3; *Ellison Educ. Equip., Inc.*, Case No. 18-cv-2043-DOC at 3. Even if IPRs are instituted, as this Court has previously noted, "the PTAB will presumably decide each IPR petition on its own merits, and the mere fact that many instituted IPR petitions resolve in the cancellation of some claims does not persuade the Court that a stay pending IPR review would ultimately simplify the issues before this Court." Ex. 6, *SpeakWare*, Case No. 18-cv-1293-DOC at 5 (denying renewed motion to stay following

1    institution of IPRs).

2        Moreover, Axonics' argument requires the Court to believe that the PTAB will

3    likely institute review of all seven of its petitions, and that all challenged claims will be

4    invalidated during these proceedings.  This outcome is highly unlikely, to say the least.

5    Current PTAB statistics suggest a strong likelihood that not all IPRs will be instituted

6    and, even if they are, not all claims will be deemed unpatentable.  Notably, the rates of

7    IPR institution and invalidation have continuously fallen year after year.  For example,

8    for the fiscal year 2019, 63% of the petitions were instituted, and the PTAB has

9    forecasted that in the fiscal year 2020, only 54% of the petitions will be instituted.  *See*

10   Ex. 11 at 6.  Additionally, only 17% of the petitions filed with the PTAB concluded

11   with all claims being found unpatentable.  *See* Ex. 12 at 1.  Thus, Axonics' argument

12   that this factor favors a stay because the outcome of the IPRs could be case-dispositive

13   is pure speculation: Axonics filed seven petitions covering more than 100 claims across

14   diverse subject matters; the PTAB's own statistics show that the chances that it will

15   invalidate all challenged claims are exceedingly small.

16       In sum, Axonics' motion is based on nothing more than the fact that it has filed

17   petitions for IPR and, thus, any simplification of this case as a result of PTAB

18   proceedings is inherently speculative.  As such, this factor weighs against a stay.

19   **C.  A Stay Would Unduly Prejudice or Present a Clear Tactical**
**Disadvantage to Medtronic.**

20

21       The third factor for this Court to consider is "whether a stay would unduly

22   prejudice or present a clear tactical disadvantage to the nonmoving party."  *Universal*

23   *Elecs.*, 943 F. Supp. 2d at 1030–31.

24       While mere delay in the litigation does not itself establish undue prejudice,

25   "[w]hen the parties are business competitors, however, and the plaintiff may lose

26   customers if the case does not proceed, this may result in prejudice."  *See Carl Zeiss*

27   *A.G. v. Nikon Corp.*, 2018 WL 5081479, at *3–*4 (C.D. Cal. Oct. 16, 2018).  Moreover,

28   where, as here, certain patents asserted against a direct competitor are near expiration,

this factor weighs strongly against a stay. *Id.* (finding undue prejudice and denying stay where the parties' products directly competed, and the patents were to set to expire shortly, the court stated "[p]lacing an asserted patent 'in limbo for the majority of its remaining life would create a clear tactical disadvantage for [p]laintiffs.'"); *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011) (Carter, J.) (same). Because Medtronic and Axonics are indisputably direct competitors, and certain of Medtronic's asserted patents are expiring shortly, this factor weighs against a stay.

Axonics cannot credibly dispute that Medtronic's products and Axonics' accused products directly compete in the marketplace. Indeed, Medtronic's products have been a central focus for Axonics and its CEO since the company's inception in 2013. According to Axonics' CEO, "[Axonics] started with the notion that [it] could build a miniaturized rechargeable neuromodulation product and then [it] did significant analysis of the various different clinical indications that people were pursuing." *See* Ex. 1 at 1. "[It] looked at the size of the market then concluded [its] best opportunity for return on investment and return on time would be to **go after the sacral neuromodulation sector**. **One of the decision drivers was [having a huge] market with only one competitor**." *Id.* (emphasis added). Indeed, immediately after Medtronic filed this suit, Axonics' CEO told the press that "Medtronic has had this market to themselves for 20+ years." *See* Ex. 2 at 1; *see also* Ex. 3 at 1.

Moreover, contrary to Axonics' assertion otherwise (Axonics Mot. at 13), Medtronic has indeed identified several of its products that practice the asserted patents in its interrogatory responses served prior to this motion. *See* Ex. 13 at 7–8. These products include, for example, the following Medtronic product lines: Restore™, Activa™ RC, Intellis™, and InterStim. *See id.* Axonics advertises its accused system as an alternative to the Medtronic InterStim system, *see* Ex. 14 at 1, without identifying one single other competitor in the sacral neuromodulation market where InterStim and Axonics' products directly compete. *See also* Answer ¶¶ 15, 18 (comparing technology

1   in Axonics' product to Medtronic's InterStim).

2   Thus—unlike the cases involving non-practicing entities upon which Axonics

3   relies[5]—a stay of 18 months or more would lengthen the time new market entrant

4   Axonics can harm Medtronic in the sacral neuromodulation market, which Axonics

5   identified as its "only" competitor.  Courts have found that "the parties' status as

6   competitors in the market" can be sufficient to "make a showing of undue prejudice

7   *apart* from just the delay."  *Avago Techs. Fiber IP (Sing.) Pte. Ltd. v. IPtronics, Inc.*,

8   2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (denying motion to stay) (emphasis

9   added).  Moreover, courts have stated that "infringement among competitors can cause

10  harm in the marketplace that is not compensable by readily calculable money damages,"

11  and that "[s]taying a case while such harm is ongoing usually prejudices the patentee

12  that seeks timely enforcement of its right to exclude."  *Universal Elecs.*, 943 F. Supp.

13  2d at 1034 (citing *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 348,

14  351 (D. Mass. 2011) ("prejudice [to the patentee] is heightened when parties to litigation

15  are direct competitors; in such cases, courts presume that a stay will prejudice the non-

16  movant")).

17  And contrary to Axonics' arguments, a failure to move for a preliminary

18  injunction does not negate this harm in the context of a stay motion.  Indeed, other

19  courts in this District have found that "[t]he fact that Plaintiff did not seek a preliminary

20  injunction does not mean that it would not suffer prejudicial harm from its competitor's

21  market activity during a *lengthy delay in the case*."  *Universal Elecs.*, 943 F. Supp. 2d

22  at 1034 (emphasis added); *see also Avago Techs.*, 2011 WL 3267768 at *6 ("IPtronics

23

24  [5] *Limestone*, 2016 WL 3598109 at *5; *Wi-LAN Inc. v. Huizhou TCL Mobile Commc'n
    Co. Ltd.*, 2020 WL 1269837, at *3 (C.D. Cal. Feb. 7, 2020); *Polaris Innovations*, 2017
25  WL 8220599 at *2; *Universal Elecs. Inc. v. Roku, Inc.*, 2019 WL 6974173 at *3 (C.D.
    Cal. Nov. 4, 2019).  Axonics also relies on *Destination Maternity Corp. v. Target Corp.*,
26  12 F. Supp. 3d 762 (Mar. 24, 2014), where the parties were two producers of "maternity
27  pants" in a market with many competitors.  *Id.* at 768.  The statements of Axonics' CEO
    directly refute any contention here that the relevant market has many competitors.
28

14

suggests that Plaintiff should have requested a preliminary injunction if it were worried about irreparable harm, and that its failure to do so weakens its opposition to the stay motion.  This contention is flawed.  As IPtronics points out, Avago might have other reasons for deciding not to pursue injunctive relief at this stage . . . [o]n IPtronics' motion to stay, the Court will not hold against Avago its decision to spare the parties more litigation."); *Biomet Biologics*, 2011 WL 4448972 at *2 ("Like the Avago court, this Court will not hold against Plaintiffs their decision not to pursue a preliminary injunction.").

Furthermore, granting a stay and delaying this action will amount to a compulsory license for nearly the rest of the patent term for two asserted patents—the '314 and '756 patents—which expire on November 9, 2021, and February 18, 2022.  In *Biomet Biologics*, this Court found this factor to weigh strongly against a stay because the parties were direct competitors, and the plaintiffs' patent would be close to expiration by the time the reexamination, if instituted, would reach resolution.  *Biomet*, 2011 WL 4448972 at *2.  According to the Court, "[p]laintiffs [were] rightfully concerned about the remaining life of [their patent]," where the patent would expire roughly 12 months after the completion of the reexamination, and that "[p]lacing the patent in limbo for the majority of its remaining life would create a clear tactical disadvantage for Plaintiffs."  *Id.*; *see also Carl Zeiss*, 2018 WL 5081479 at *4.  The same is true here—if any IPRs are instituted, they would not reach final resolution until September 2021.  Medtronic's two "tined lead" patents would expire two and five months thereafter, effectively depriving Medtronic of any chance of a trial verdict and permanent injunction prior to their expiration.

For at least these reasons, Medtronic will suffer significant harm should it have to wait 18 more months to vindicate its rights against a direct competitor who for nearly seven years targeted and built a business based on Medtronic's products and intellectual property.  The clear tactical disadvantage to Medtronic, therefore, weighs against a stay of this case.

15

**D.    The COVID-19 pandemic will not disrupt the parties' obligations in this litigation.**

Medtronic understands and fully appreciates the seriousness of the COVID-19 pandemic facing our country and the need to comply with "shelter-in-place" orders. The Central District of California has issued recent guidance that it "will not call in jurors for service in civil or criminal jury trials until after June 1, 2020." *See* Ex. 15 at 1. This Court has set a trial date for March 2021, well after the date through which current jury trials in this District are postponed. Further, this District has also made a point of keeping filing deadlines in place and adopting procedures to allow for pleading practice to proceed, rather than staying litigation completely. *Id.* ("All filing deadlines will remain in place unless otherwise ordered by the presiding Judge."); ("Pursuant to the [Court's Continuity of Operations Plan], hearings in civil cases will only go forward by video or telephonic conference.").

The COVID-19 pandemic does not justify a stay in this case. First, Axonics has not identified any specific scheduling issues caused by the pandemic either in meet and confers with counsel for Medtronic or in its brief. Axonics' Mot. at 14–16. Medtronic has already indicated its willingness to work with Axonics to deal with any legitimate issues that may arise, and repeatedly asked Axonics to identify any current issues so that the parties can discuss potential solutions. *See* Ex. 16 at 2, 5. To date, Axonics has not identified anything specific that it cannot do to either Medtronic or via sworn declaration to this Court. Instead, it merely argues—without providing support—that the situation "complicates and increases the cost and burden of discovery for Axonics." Axonics' Mot. at 4, 14.

In fact, the parties' dealings suggest otherwise. Axonics was able to provide substantive responses to Medtronic's interrogatories—which presumably involved discussion(s) with Axonics' employees and reviewing of documents—on March 19, 2020. McNair Decl. ¶ 3. Axonics also collected and produced documents on April 10, 2020. *Id.* ¶ 6. Medtronic remains willing to work with Axonics in good faith to address

any specific issues Axonics may have in light of the pandemic.

Second, Axonics argues that the Court's limited resources should be preserved (Axonics Mot. at 15), but the current case schedule does not call for Court involvement until the resolution of possible summary judgment motions in January 2021.  As such, continuing with the schedule should not consume any limited resources from the Court during this crisis.  Further, the legal community has adapted to remote work and vendors are now providing services for electronic depositions or mediations via video conference.  Accordingly, much—if not all—of the discovery obligations can be conducted in light of these new technological developments.  Obviously, Medtronic defers to the Court's determination of its capabilities to handle matters during the COVID-19 crisis, but at this juncture, there is simply no indication that this case will pose any unique issues that would justify delay.

Third, the stay Axonics seeks belies its assertion that the COVID-19 pandemic makes it necessary.  Axonics does not suggest staying this case until the pandemic subsides.  Rather, it moved to stay this case pending resolution of the IPRs.  Therefore, Axonics' COVID-19 argument does not support its motion to stay the case through the time any IPRs are resolved.

Accordingly, the COVID-19 pandemic does not require a stay pending Axonics' *inter partes* reviews.

## V.   CONCLUSION

For at least the reasons stated above, the totality of the circumstances weighs strongly against a stay of this litigation.  Accordingly, Axonics' motion to stay proceedings pending *inter partes review* should be denied.

Dated:  April 20, 2020                        WINSTON & STRAWN LLP

By:  /s/ *Nimalka Wickramasekera*
Nimalka Wickramasekera
George C. Lombardi
J.R. McNair

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Samantha M. Lerner
Vivek V. Krishnan
Joe Netikosol

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC
PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC;
MEDTRONIC USA, INC.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION PENDING IPR
CASE NO. 8:19-CV-02115-DOC-JDE