KILPATRICK TOWNSEND & STOCKTON LLP
A. James Isbester (State Bar No. 129820)
jisbester@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Megan M. Chung (State Bar No. 232044)
mchung@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Matthew J. Meyer (State Bar No. 284578)
mmeyer@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Attorneys for Defendant
AXONICS MODULATION TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AXONICS MODULATION TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 8:19-cv-02115-DOC-JDE <br><br> **AXONICS MODULATION TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW** <br><br> DATE: May 11, 2020 <br> TIME: 8:30 a.m. <br> DEPT: Courtroom 9D <br><br> Judge: Hon. David O. Carter <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |



AXONICS REPLY ISO ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................ 1

II. ALL RELEVANT FACTORS FAVOR A STAY OF THIS CASE ............... 2

    A. The Early Stage of the Proceedings Favors a Stay ............................. 2

    B. A Stay Will Simplify the Issues in Question and Reduce the Burden of Litigation .......................................................................... 6

    C. Medtronic Has Not Shown It Will Suffer Undue Prejudice or Tactical Disadvantage by a Stay ......................................................... 8

    D. The Current Public Health Emergency Favors a Stay ...................... 10

III. CONCLUSION ........................................................................................... 10



# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018) ................................................................................. 4

*Cypress Semiconductor Corp.v. GSI Tech., Inc.*,
   No. 13-CV-02013, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) ............................ 9

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
   No. SA CV 18-2043 (C.D. Cal. Jan. 13, 2020) ........................................... 1, 3, 4, 7

*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*,
   340 U.S. 147 (1950) ................................................................................................. 5

*Limestone v. Micron Tech.*,
   No. SA CV 15-00278, 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) ............. 2, 6, 7

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
   No. CV 13-06787, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) .......................... 5

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
   No. SACV 16-00300, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016) ..................... 4

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
   No. SACV 16-00300, 2017 WL 8220599 (C.D. Cal. June 27, 2017) ..................... 4

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
   159 F.3d 1337 (Fed. Cir. 1998) ............................................................................... 6

*SpeakWare, Inc. v. Microsoft Corp.*,
   No. SA CV 18-1293 (C.D. Cal. June 21, 2019) ................................................... 3, 7

*SpeakWare, Inc. v. Microsoft Corp.*,
   No. SA CV 18-293, 2019 WL 1878350 (C.D. Cal. Feb. 21, 2019) ........................ 3

*Universal Elecs. Inc. v. Roku, Inc.*,
   No. SACV 18-1580, 2019 WL 6974173 (C.D. Cal. Nov. 4, 2019) ........................ 2

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) ......................................................................... 9, 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Wi-LAN Inc. v. Huizhou TCL Mobile Commc'n Co.*,
  No. SACV 19-870, 2020 WL 1269837 (C.D. Cal. Feb. 7, 2020) .................... 3, 5, 6

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
  No. EDCV 14-01153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) ...................... 6

**Statutes**

35 U.S.C. § 101 .................................................................................................. 1, 3, 4

**Other Authorities**

Fed. R. Civ. P. 11 ....................................................................................................... 2

Fed. R. Civ. P. 12 ....................................................................................................... 3

U.S. CONST. art. I, § 8, cl. 8 ....................................................................................... 5



# I. INTRODUCTION

Medtronic's opposition to Axonics' motion to stay is built on arguments and theories that courts in this District have repeatedly rejected. Medtronic relies heavily on *Speakware* and *Ellison* where the defendants filed a Section 101 motion to dismiss (in addition to other motions) so this Court had to address substantively the patent claims and interpret them before any *inter partes* review ("IPR") petition was filed *or* where nine months had passed since the scheduling order issued before an IPR was filed. In contrast, Axonics filed its seven IPR petitions on the business day after this Court issued its Scheduling Order in this case on March 16, 2020. This motion to stay is the first motion in this case; and there has not been a single hearing in this case. Where a case is in the early stage of proceeding like this one with no hearings and little discovery, this District and Court has granted stays, even before institution of the IPRs.

Moreover, as Medtronic notes there are over 100 patent claims challenged at the Patent Office, who is statutorily required to address substantively these questions in its decisions regarding institution less than six months from now.[1] Axonics was diligent in filing seven petitions on all those claims, after Medtronic gave notice through the original and amended complaint, of the patents Medtronic thought were at issue. In contrast, Medtronic claims it needs an injunction but never filed a preliminary injunction motion. Further, Medtronic has not filed any evidence to support its claims of competition or injury—especially since Medtronic's patent claims asserted in the complaint are not limited to sacral neurostimulators, and there are many competitors in the broader neurostimulation market.

Nowhere does Medtronic provide a sound reason for the denial of a stay pending resolution of Axonics' petitions for IPR of the asserted patents. Indeed, a stay is warranted here where it enables the parties and the Court to avoid

---

[1] Medtronic's preliminary responses are due in less than three months. Those statements will necessarily impact issues in this case, at least for claim construction.

1 expenditure of significant resources on issues pertaining to the over 100 challenged
2 claims that will be simplified by the Patent Office's review of, and potential
3 cancellation, of every claim asserted in this litigation.

## II.   ALL RELEVANT FACTORS FAVOR A STAY OF THIS CASE

### A.   The Early Stage of the Proceedings Favors a Stay

There is no question that the early stage of these proceedings strongly favors a stay. As the Court has previously explained, this factor favors a stay when "considering the general time line of patent litigation, there is more work ahead of the parties and the Court than behind the parties and the Court." *Limestone v. Micron Tech.,* No. SA CV 15-00278-DOC (RNBx), 2016 WL 3598109, at *3 (C.D. Cal. Jan. 12, 2016) (citation and internal quotations omitted).

Medtronic does not dispute that there is more work ahead of the parties and the Court in this litigation than behind the parties and the Court. Instead, it asks the Court to ignore this test and find the case is supposedly at an advanced stage based on the Court's issuance of a scheduling order and Medtronic's having conducted basic discovery such as providing initial disclosures, conducting an infringement analysis that should have been performed under Rule 11 before filing suit, and producing some documents. At this time, Medtronic has neither disclosed which claims it asserts in this case nor provided its infringement contentions. Under these facts, Medtronic offers no examples of this Court or any other finding a stay is not warranted.

Recently, this factor was found to favor a stay because "no depositions ha[d] been taken or scheduled and the parties have not yet produced email discovery" and "expert discovery ha[d] not begun and the parties ha[d] not filed summary judgment motions" even though the IPR petitions were filed more than a year after the complaint, a *Markman* hearing had already taken place and "dispositive motion practice" was underway. *Universal Elecs. Inc. v. Roku, Inc.*, No. SACV 18-1580



AXONICS REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 2 -

JVS (ADSx), 2019 WL 6974173, at **1-2 (C.D. Cal. Nov. 4, 2019). Here, no depositions, expert discovery, or email discovery has taken place. Moreover, dispositive motion practice is not underway, and Axonic's seven IPR petitions were filed only five months after the Complaint.

Even more recently, this District found this factor "strongly weighs in favor of a stay" where the defendant filed IPR petitions challenging three asserted patents on December 23 and 24, 2019—more than seven months after the May 9, 2019 complaint was filed—because "no witnesses ha[d] been deposed, no expert discovery ha[d] occurred, and trial [wa]s set for April 2021." *Wi-LAN Inc. v. Huizhou TCL Mobile Commc'n Co.,* No. SACV 19-870 JVS (ADSx), 2020 WL 1269837, at *2 (C.D. Cal. Feb. 7, 2020). Medtronic offers no basis for distinguishing the present situation from those in the *Wi-LAN*.

While Medtronic attempts to claim the present facts are analogous to those in the Court's prior decisions in *Speakware*[2] and *Ellison*,[3] the stage of the current proceedings stands in stark contrast to *Speakware* and *Ellison*.

In *Speakware*, the defendants thrust the merits of the case before the Court at the outset through early motion practice that addressed substantive issues in the case. This included a 35 U.S.C. § 101 patent-eligibility challenge at the Rule 12 stage, which necessitated the Court to become intimately familiar with the claims and specification of the asserted patent to address claim construction and invalidity issues subsumed in Section 101 challenges.[4] Having already expended considerable

---

[2] The *Speakware* litigation involved two separate decisions considering Defendants' request for a stay pending IPR: *SpeakWare, Inc. v. Microsoft Corp.*, No. SA CV 18-293-DOC (DFMx), 2019 WL 1878350 (C.D. Cal. Feb. 21, 2019) (Carter, J.) (denying stay pending IPR) ("*Speakware I*") and *SpeakWare, Inc. v. Microsoft Corp.*, No. SA CV 18-1293-DOC (DFMx) (C.D. Cal. June 21, 2019) (Carter, J.), Order Denying Defendant's Renewed Motion to Stay, Dkt. No. 78 ("*Speakware II*").

[3] *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. SA CV 18-2043-DOC (ADSx), Dkt. No. 45 at 2 (C.D. Cal. Jan. 13, 2020) (Carter, J.).

[4] Patent eligibility challenges at the Rule 12 stage are notoriously complicated

1  resources studying the lone asserted patent in that case, there was little benefit to the
2  Court from a stay of the proceedings while the PTO did the same.  In contrast here,
3  Axonics has placed no such early burden on the Court.  Indeed, the Court has yet to
4  hold a single hearing or conference let alone been required to become familiar or
5  adjudicate the invalidity of any of the seven asserted patents or their over 100
6  challenged claims.[5]

7  The facts of *Ellison* are even more remote from the present circumstances.  In
8  *Ellison*, the defendants filed an IPR petition against two asserted claims a full <u>nine</u>
9  <u>months after the scheduling conference</u>.  In contrast, Axonics filed their seven IPR
10 petitions against over 100 claims the <u>same day</u> the scheduling conference was to be
11 held.  Thus, the *Ellison* case only illustrates the actual diligence with which Axonics
12 has pursued IPR of the asserted patents.

13 Medtronic nevertheless alleges that because Axonics was aware prior to the
14 filing of the Complaint that Medtronic had many patents, Axonics should have
15 somehow filed its IPR petitions "long—possibly years—before March 2020" in
16 order to spare the parties the burden that the present suit—filed by Medtronic—has

---

inquiries forcing district courts to make full invalidity rulings based on only the patents, the pleadings and unclear and problematic appellate decisions for which even Federal Circuit judges throwing up their hands and requesting higher intervention.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1360-62 (Fed. Cir. 2018) (Reyna, J., concurring in part and dissenting in part) ("the law needs clarification by higher authority, perhaps by Congress, to work its way out of what so many in the innovation field consider are § 101 problems"—"it's in the details that problems and uncertainties have arisen").

[5] Medtronic also cites *Polaris Innovations Ltd. v. Kingston Tech. Co.,* No. SACV 16-00300-CJC(RAOx), 2016 WL 7496740, at *1 (C.D. Cal. Nov. 17, 2016) for similar support on this factor.  In *Polaris* (as in *Speakware*) the parties had briefed and the court had resolved two motions by the defendant "including its dispositive motion for judgment on the pleadings" prior to the court's initial denial of stay.  *Id.* at *2.  Further, the court reconsidered and explicitly found—seven months later—the stage of the proceedings factor "supports a stay." *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2017 WL 8220599, at *2 (C.D. Cal. June 27, 2017).



1  brought upon them.  (Dkt. No. 50 at 8.)  As a preliminary matter, Medtronic offers
2  no legal support, because there is none, that this bizarre and logically twisted
3  argument can deny a stay.  Contrary to Medtronic's arguments, the law imposes no
4  obligation on a company to pre-emptively file IPR petitions against every invalid
5  patent it finds, especially where, as here, it does not infringe the patents-at-issue.
6  Indeed, courts recognize the opposite: infringement suits cause IPRs, and courts will
7  therefore shift a defendant's expenditures in pursuing an IPR as recoverable
8  litigation fees and costs that would not have been incurred "[b]ut for the filing of the
9  patent infringement claim."  *See Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-
10 06787 JEM, 2018 WL 7504404, at *7 (C.D. Cal. Dec. 27, 2018).

11     Medtronic has thousands of patents that it received in exchange for letting the
12 public learn from those patents in order "[t]o promote the Progress of Science and
13 useful Arts", i.e. encourage the development of new inventions.  *See* U.S. CONST.
14 art. I, § 8, cl. 8; *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S.
15 147, 154-55 (1950) (Douglas, J. concurring) ("Patents serve a higher end—the
16 advancement of science.").  After obtaining patents, Medtronic cannot now try to
17 advance a new, but illogical rule, forcing companies conducting rightfully due
18 diligence on patents, in order to innovate and avoid impinging on other's rights,  to
19 file IPRs (or other similar proceedings) before there is even a lawsuit, before there is
20 knowledge of which patents (out of the thousands and thousands) matter, and before
21 there is knowledge of the products or features at issue.  Instituting such a rule would
22 always favor large and established companies like Medtronic at the expense of solo
23 inventors and startup companies like Axonics who cannot afford expensive legal
24 costs and should instead focus on creating innovative technologies to deliver new
25 patient care.  Medtronic's argument should be rejected outright with no base in law
26 and as unsound policy. Under the current circumstances, there is no question this
27 factor favors a stay.  Indeed, the most analogous facts are those of the recent *Wi-*
28 *LAN* decision in this district where the factor was found to "strongly weighs in favor



AXONICS REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 5 -

1  of a stay." See *Wi-LAN,* 2020 WL 1269837, at *2.  Similarly, the early nature of the
2  proceedings strongly favors a stay here.

3       **B.    A Stay Will Simplify the Issues in Question and Reduce the Burden of Litigation**
4

5  The Federal Circuit has explained that a stay pending reexamination is
6  justified under the present circumstances, i.e., where "the outcome of the
7  reexamination would be likely to assist the court in determining patent validity and,
8  if the claims were canceled in the reexamination, would eliminate the need to try the
9  infringement issue." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341
10 (Fed. Cir. 1998).  Indeed, this factor strongly favors a stay here "because Defendants
11 have petitioned for review of all claims asserted in this action" so "the outcome of
12 the IPR has the potential to be case-dispositive." *Wonderland Nursery Goods Co. v.
13 Baby Trend, Inc.*, No. EDCV 14-01153 VAP (SPx), 2015 WL 1809309, at *3 (C.D.
14 Cal. Apr. 20, 2015).

15 The potential simplification of issues to be gained from Axonics' seven IPRs
16 against more than 100 claims favors a stay here.  Chief Judge Phillips previously
17 provided a sound articulation of why, on balance, it is preferable for the Court to
18 stay proceedings pending IPR—even prior to institution—if the IPRs have the
19 potential to be case dispositive.  *See Wonderland Nursery Goods,* 2015 WL
20 1809309, at *3.  In essence, the harm from granting a stay for IPRs that are
21 ultimately not instituted is far less than the harm caused by the loss resources
22 directed to addressing claims that are either invalidated or, which require
23 reconsideration based on developments at the IPR proceedings.  *See id.*  This Court
24 confirmed that the same reasoning applies even where the IPR proceedings cover
25 most but not all claims.  *See Limestone,* 2016 WL 3598109, at **4-5 (staying case
26 prior to institution of IPR).

27 While it is true that this Court has both granted and denied stays prior to
28



institution of IPR proceedings[6], Medtronic ignores this Court's decisions granting stays and instead attempts to draw parallels between the present case and *Speakware* and *Ellison* cases. However, those are false parallels as discussed above. In sum, the tipping point in *Speakware* was the fact that—due to the Defendants' early substantive dispositive motion practice—the Court had already expended considerable resources developing an expertise on the asserted patent such that the PTO's consideration of the same patent offered little benefit. And in *Ellison*, the nine month delay between the scheduling conference and the filing of the IPR challenging a mere two claims offered little simplification for the parties or the Court. Here, in contrast, the potential simplification of issues from Axonics' challenge of over 100 claims is both staggering in its breadth and crucially, the efficiencies resulting from the simplification are capable of being fully realized by the Court where there have been no hearings.

Finally, Medtronic asserts "the PTAB's own statistics show that the chances that it will invalidate all challenged claims are exceedingly small." Dkt. No. 50 at 12. The Court, however, has previously recognized the limited value of statistics in the present inquiry because "the PTAB will presumably decide each IPR petition on its own merits." *See Speakware II*, No. 18-cv-1293-DOC (DFMx), Dkt. No. 78 at 5. Further, one can scarcely imagine a more misleading use of the statistics than the numbers set forth in Medtronic's opposition. Medtronic states that "only 17% of the petitions filed with the PTAB concluded with all claims being found unpatentable" but this begs the question of what happened to the other 83%. Some petitions were also found to have only certain claims unpatentable, or the patent owner amended the claims or disclaimed the patent or the parties settled the cases—all of which narrows or resolves the litigation. *See* Dkt. No. 50-1, Ex. 12 at 102. In fact, based on Medtronic's submission only 5% of the petitions led to all claims being upheld.

---

[6] Compare *Limestone*, 2016 WL 3598109, at *5 (staying case prior to institution of IPR) and *Ellison* (denying stay).

AXONICS REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 7 -

*Id.* Even then, the PTAB would have decided on claim construction, which narrows issues for litigation.

Ultimately, Medtronic's statistics do not support its position. Indeed, due to the estoppel that will attach to Axonics upon any final written decision, the only scenario where issues would arguably not be simplified is if all seven IPR petitions were denied institution. Medtronic's statistics show this scenario is exceedingly unlikely—assuming (as the Court does not) that all IPR petitions are equal. Of the 10,561 petitions, only 2,019 were denied: 19%. Dkt. No. 50-1, Ex. 12 at 102. Assuming—as Medtronic does—that all IPR petitions are the same, the likelihood that all seven petitions are denied institution would be 19% to the seventh power, which is approximately 0.001%. Thus, if this were Las Vegas and not a federal district court, the chance of issue simplification would be 99.999%.

As a better illustration of the fact that Axonics' IPR petitions are likely to simplify the issues in this litigation, Axonics included all seven IPR petitions as exhibits to its motion, so that the Court can review and confirm that these are kind of IPR petitions that are likely to be instituted and/or that these are the kinds of patents for which the Court would invite the experts at the PTO to review in order to separate the wheat (if any) from the chaff before the present litigation proceeds in full—or not at all.

Upon review of the present circumstances, and based on the precedents in this Court and other courts in this district, Axonics believes the Court will agree that this factor weighs heavily in favor of a stay.

### C. Medtronic Has Not Shown It Will Suffer Undue Prejudice or Tactical Disadvantage by a Stay

Medtronic will also not be unduly prejudiced by a stay.

While Medtronic and Axonics may be competitors in the sacral neuromodulation market, the asserted patents are not directed to or limited to that field according to Medtronic and at least most of the patent claims. In its



AXONICS REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 8 -

1  opposition, Medtronic identifies several neurostimulators, generally, that it alleges
2  practice the asserted patents. As explained in Axonics' motion, there are numerous
3  competitors offering neurostimulators. See Mot., Dkt. No. 49 at 14.

4  Alternatively, to the extent the market is defined by the accused product
5  rather than the asserted patents, Axonics' r-SNM system is the *only* rechargeable
6  sacral neuromodulation device available. Indeed, Axonics entered the market
7  specifically because patients prefer rechargeable devices and a rechargeable sacral
8  neuromodulation device was not being supplied. None of Medtronic's products
9  identified by Medtronic in its opposition is a rechargeable sacral neuromodulation
10 device that could ever directly compete with the accused Axonics r-SNM system in
11 the United States.[7]

12 Thus, the parties are *not* direct competitors in the rechargeable sacral
13 neuromodulation market, if market is based on accused products, and they are not
14 the only competitors in the broader neuromodulation market, if the market is based
15 on the asserted patents. Further, Medtronic did not come forth with any market or
16 customer evidence of diverted sales, which undercuts their claim of undue prejudice.
17 *See e.g., Cypress Semiconductor Corp.v. GSI Tech., Inc.*, No. 13-CV-02013-JST,
18 2014 WL 5021100, at **4-5 (N.D. Cal. Oct. 7, 2014) (noting the lack of evidence
19 that customers "in fact purchased allegedly infringing…parts when they would
20 otherwise have purchased [patentee] parts.")

21 Further, Medtronic's failure to explain its decision not to seek a preliminary
22 injunction speaks volumes about the lack of undue prejudice posed by a stay. While
23 Medtronic cites stale law minimizing the impact of its decision not to seek
24 injunctive relief, all of that case law predates the Federal Circuit's 2014 decision in
25 *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014). In
26 *VirtualAgility*, the Federal Circuit reversed a district court's denial of a stay pending

---

[7] After it filed its complaint, Medtronic came out with the InterStim™ Micro product, but that product has not been approved for sale in the United States.



AXONICS REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW
CASE NO. 8:19-CV-02115-DOC-JDE

- 9 -

post-grant review of a patent under the CBM program in part because "the district court clearly erred in finding that the undue prejudice factor weighed heavily against a stay." *Id.* at 1318-20. There, the Federal Circuit noted that while patentee provided "rational reasons for not pursuing a preliminary injunction" those reasons ("it was not worth the expense to ask for this remedy") were found to contradict the patentee's assertion that it "needs injunctive relief as soon as possible." *Id.* at 1319. Here, not only has Medtronic not sought a preliminary injunction but, more importantly, it has provided *no explanation* for not seeking one, despite its claims about the urgent need for injunctive relief for its patents.

Similarly, Medtronic's claim that a stay "will amount to a compulsory license" is nonsense as it would be free to seek damages in the unlikely event that its claims survive IPR.

Because Medtronic has failed to make a showing of undue prejudice, this factor also favors a stay.

### D. The Current Public Health Emergency Favors a Stay

Additionally, as set forth in Axonics' Motion, the national public health emergency counsels in favor of staying the case. During this time where the Patent Office is already statutorily required to substantively address the IPR petition for institution, and in Axonics' opinion, for final written decision, resources can be conserved by proceeding at the Patent Office on the 100 patent claims while staying the current court proceedings.

### III. CONCLUSION

Because all relevant factors either heavily favor a stay or favor a stay, Axonics requests that the Court stay this litigation pending final determinations in the seven IPR proceedings it has raised.



DATED: April 27, 2020  Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ A. James Isbester
    A. JAMES ISBESTER

Attorneys for Defendant
AXONICS MODULATION
TECHNOLOGIES INC.

