KILPATRICK TOWNSEND & STOCKTON LLP
A. James Isbester (State Bar No. 129820)
jisbester@kilpatricktownsend.com
April Elizabeth Isaacson (State Bar No. 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Matthew J. Meyer (State Bar No. 284578)
mmeyer@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Attorneys for Defendant
AXONICS, INC. (f/k/a Axonics Modulation Technologies, Inc.)

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AXONICS MODULATION TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 8:19-cv-02115-DOC-JDE <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY** <br><br> Date: November 1, 2021 <br> Time: 8:30 a.m. <br> Ctrm.: 9D <br> Judge: Hon. Hon. David O. Carter <br><br> Complaint Filed: November 4, 2019 <br> Trial Date: |

## I. INTRODUCTION

Medtronic's motion to lift the stay should be denied because keeping the stay in place will streamline and simplify this case. Axonics' IPR petitions have already narrowed the issues and streamlined the case. Medtronic voluntarily disclaimed some of its claims, the PTAB found other of the asserted claims invalid, and the PTAB resolved various claim construction disputes between the parties. Axonics – and perhaps Medtronic – plans to appeal the PTAB's decisions on the IPR petitions, so those decisions are not yet final until they are reviewed by the Director of the USPTO and the U.S. Court of Appeals for the Federal Circuit. Contrary to Medtronic's claims, Axonics has a substantial chance of success on appeal. If the PTO's IPR decisions are reversed and additional Medtronic patents claims are invalidated, the issue of infringement on those claims will not need to be litigated before this Court.

All three stay factors weigh in favor of keeping the stay in place pending appeal by either or both parties. First, little work has been done in the litigation thus far; most work is still ahead for the Court and the parties. Second, an appeal of the IPR decisions is likely to further streamline and simplify this case. Third, there would be no "undue" prejudice to Medtronic if the stay is left in place pending appeal. Medtronic did not seek a preliminary injunction or show any evidence that it has been or would be irreparably harmed during the stay.

## II. FACTUAL BACKGROUND

Medtronic provided an inaccurate and incomplete summary of the PTAB's IPR decisions. The PTAB has not made a final determination on any of Medtronic's asserted patent claims. By order dated May 8, 2020, the Court granted Axonics' motion to stay this case pending the IPRs that Axonics filed. In that order, the Court instructed the parties to inform the Court "within 30 days of the PTO's issuing its decisions on *inter partes* review." Dkt Doc. 55 at 4. Since that time, the Supreme Court has stated that the Administrative Patent Judges of the Patent Trial

and Appeal Board are constitutionally prohibited from making unreviewable decisions. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1985 (2021). Rather, any decision by a PTAB panel must be reviewable by the Director of the Patent and Trademark Office, as a principal officer under the Constitution, appointed by the President with the advice and consent of the Senate. *Id.* at 1987.

Soon after the June 21, 2021 *Arthrex* decision, the PTO adopted "interim guidelines" by which parties to an IPR may request rehearing of the PTAB's decision by the Director.[1]  Quite simply, until that rehearing is done, or the parties have both waived such rehearing, there is no final PTO decision. Accordingly, there is no final decision from the PTO at this time on any of the IPRs in this dispute.

In its summary of the IPR proceedings, Medtronic fails to mention that the PTAB found numerous claims invalid over prior art, and omits the deadline for a request for rehearing to the USPTO Director of the PTAB's decisions.  *See* Dkt. 63 at 6.  A more complete chart is presented below.[2]

| IPR Petition | Patent No. | PTAB's Decision | Further Patent Office Deadlines |
|---|---|---|---|
| IPR2020-00714 | 9,463,324 | Denied institution as to each asserted claim on all asserted grounds. | None |
| IPR2020-00715 | 8,036,756 | Patentability of all asserted claims upheld. | Request for Rehearing by Director: October 13, 2021. |
| IPR2020- | 8,626,314 | Patentability of all asserted claims upheld. | Request for Rehearing by |

---

[1] *See* USPTO website announcement at: https://www.uspto.gov/patents/patent-trial-and-appeal-board/procedures/uspto-implementation-interim-director-review

[2] Medtronic's assertion that "the PTAB has confirmed the patentability of 73 asserted claims" is incorrect.  Dkt. 63 at 6.  Medtronic included in that number the claims from Patent No. 9,463,324, the IPR which was not instituted.  The PTAB's decision to not institute an IPR is not appealable, and does not "confirm" any patent claims or trigger estoppel against Axonics.

| IPR Petition | Patent No. | PTAB's Decision | Further Patent Office Deadlines |
|---|---|---|---|
| 00679 | | | Director: October 13, 2021. |
| IPR2020-00713 | 9,821,112 | Patentability of asserted claims 1–7, 16–18, and 22 upheld.  Claims 9-13 and 20 found unpatentable. Other claims disclaimed. | Request for Rehearing by Director: October 22, 2021. |
| IPR2020-00712 | 8,738,148 | Patentability of all asserted claims not disclaimed upheld. | Request for Rehearing by Director: October 22, 2021. |
| IPR2020-00680 | 8,457,758 | Patentability of all asserted claims not disclaimed upheld. | Request for Rehearing by Director: October 22, 2021. |
| IPR2020-00678 | 7,774,069 | Patentability of asserted claim 7 upheld.  Asserted claims 5, 6, 8 and 9 found unpatentable. | Request for Rehearing by Director: October 13, 2021. |

### III.   THE COURT SHOULD NOT PREMATURELY LIFT THE STAY BEFORE THE PTAB DECISIONS ARE REVIEWED

To streamline and simplify this litigation, the stay should remain in place until the appeals process through the Director and the Federal Circuit is completed.  In addition, by the terms of the Court's order granting the stay, the stay should remain in place until the deadline for seeking PTO Director review has passed.

Leaving the stay in place is likely to narrow the issues to be litigated and will make the litigation more efficient.  The Court anticipated this effect at the time the stay was implemented.  Dkt. 55 at 3.  Already, the IPRs have resulted in either Medtronic's disclaiming or the PTAB finding unpatentable 24 claims of the patents-in-suit.  Further, the PTAB has provided explanations of several disputed claim terms.  In short, the IPRs have reduced the Court's work by some amount already and an appeal could easily result in a further reduction of work.

### A. The Stay Should Remain in Place At Least Until the IPR Decisions are Final

No prejudice will arise from maintaining the stay until the PTO has issued final decisions in the six IPRs. Pursuant to longstanding IPR rules, requests for rehearing must be filed within 30 days of the PTAB's written decision. 37 CFR 42.71(d). The PTAB issued three of the IPR decisions on September 13, the other three on September 22. Axonics is likely to appeal at least some of the IPR decisions and the time to do so expires shortly as shown in the table in Section II above. It can be assumed that the Director will complete any requested rehearings without delay, given the Congressional mandate that IPRs be conducted with dispatch. Medtronic would suffer no harm in waiting for final IPR decisions, as demonstrated by the fact Medtronic did not request a preliminary injunction in this case. *See* Dkt. 55 at 4.

### B. If Any Claims Survive the Director's Review, the Stay Should Remain in Place Pending Exhaustion of Appeals

Axonics expects to appeal any adverse decision by the PTO to the Federal Circuit. Medtronic could also appeal. For the reasons set forth below, this case should be stayed until that appeals process plays out.

#### 1. The Early Stage of Litigation Favors of the Stay

The Court granted the stay in part because "no depositions have been taken, claim construction briefing has not begun, no expert discovery has occurred, and no summary judgment motions have been filed." Dkt. 55 at 2-3 (citing motion to stay). The situation has not changed. The IPR proceedings did not address issues of infringement or damages *at all*. And while the IPR proceedings addressed a subset of validity issues—namely, anticipation and obviousness based on "printed publications"—the IPR proceedings did not (and could not have) considered or resolved any other invalidity issues (*e.g.*, lack of written description under 35 U.S.C. § 112, anticipation or obviousness based on prior use or sales of physical systems).

*See* 35 U.S.C. § 311(b).  Accordingly, and as the Court found previously, "the amount of work still to do far outweighs that which has already been completed." Dkt. 55 at 3.  This factor weighs in favor of maintaining the stay.

Medtronic argues that the case is not "in its early stages."  Dkt. 63 at 7-8. Axonics disagrees with that characterization, but that is not the question.  Rather, the question is whether "there is more work ahead of the parties and the Court than behind the parties and the Court."  Dkt. 55 at 3 (quoting *Limestone v. Micron Tech.*, Nos. SA CV 15-0278-DOC (RNBx), 2016 WL 3598109, at *3 (C.D. Cal. Jan. 12, 2016)).  Medtronic has not disputed (because it cannot) that there is "more work ahead" than "behind the parties and the Court."

### 2.     Further Simplification of Issues is Likely

*First*, even though the PTAB did not institute IPR on one of the seven asserted patents, it "would make little sense to proceed" with trial here, when some (possibly all) remaining asserted claims from the other six patents could be cancelled after Director and/or Federal Circuit review.  *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL 1609630, at *2 (N.D. Cal. Apr. 3, 2018) (granting stay pending final exhaustion of IPR "including any appeals," where IPR was not instituted on one of three asserted patents, finding "the potential simplification of issues related to the other two patents outweighs the delay that will result in the adjudication" of the non-instituted patent).

*Second*, if any asserted claims are cancelled through Director or Federal Circuit review, the case will be streamlined and greatly simplified because all issues of infringement, validity, and damages on such claims will be moot.  Medtronic argues that the Federal Circuit "affirms the PTAB on every issue in nearly 75 percent of cases."  Dkt. 62 at 10 n.5.  Those statistics do not necessarily predict the result on appeal in this instance, particularly given the strength of Axonics' appeal. Taking Medtronic's argument at face value, however, Axonics has a substantial chance of having at least some of the surviving patent claims cancelled on appeal.

This case would be streamlined and simplified even if some claims survive. *See Sleep Number Corp. v. Sizewise Rentals, LLC*, Case No. 5:18-cv-00356 AB (SPx) at Dkt. 192 (C.D. Cal. Nov. 2, 2020) (denying request to lift stay where PTAB found some claims patentable and IPR decisions were appealed because the "the appeals involve claim construction and patentability issues that will bind this Court."); *Uniloc 2017 LLC v. Microsoft Corp.*, Case No. 8:18-cv-02053-JLS-JDE at Dkt. 115 (C.D. Cal. May 8, 2020) (denying motion to lift stay where PTAB denied institution on eight of 18 asserted patents due to "the efficiency gained from maintaining these cases and their patents consolidated—and therefore more streamlined—state.").

*Third*, further simplification of the case is likely even if any of the remaining asserted claims *survive* Director and Federal Circuit review. During the IPR proceedings Medtronic made certain arguments distinguishing its claims from prior art, shedding light on the proper construction and scope of the claims. "An applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope[.]" *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1380 (Fed. Cir. 2021) (quoting *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007)). This principle applies in IPR proceedings to "ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017). If any claims survive on appeal, the Federal Circuit will likely weigh in on whether Medtronic gave up any claim scope as the price for maintaining its claims, and if so, how much scope was disclaimed. This would—at minimum—streamline claim construction before this Court, and could result in noninfringement. *See Andrea Elecs. Corp. v. Apple Inc.*, No. 16CV5220JMASIL, 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019) ("Ultimately, the Court notes that the conservation of judicial resources weighs in favor of extending the stay—to move towards trial on claims 6-9 and then find the construction of the claims has changed, or the claims themselves have been

invalidated, would result in unnecessarily expended judicial resources.").

### 3. No Undue Prejudice to Medtronic

When the Court granted the stay, it found that Medtronic would not be unduly prejudiced by the stay, noting that "Plaintiffs do not explain why they did not move for a preliminary injunction" and "Plaintiffs also do not explain why an eventual award of damages would be an inadequate remedy." Dkt. 55 at 4 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318-20 (Fed. Cir. 2014) (finding that "rational reasons for not pursuing a preliminary injunction" nevertheless contradicted the plaintiff's "assertion that it needs injunctive relief as soon as possible")). On this score, nothing has changed.

***First***, Medtronic still has not explained why it did not move for a preliminary injunction; it only vaguely references "Medtronic's strategic decision to not seek preliminary relief so that it could proceed with urgency according to this Court's deadlines." Dkt. 63 at 14. But Medtronic's unexplained choice to *not* seek preliminary relief hardly shows "urgency." *VirtualAgility*, 759 F.3d at 1318-20.

***Second***, Medtronic still has not shown why money damages would be an inadequate remedy; it argues only that a few of its patents "are set to expire between 2024 and 2026." Dkt. 63 at 14. But those dates are far beyond the time when appellate review will be exhausted. Medtronic states that any appeals are likely to be disposed of within "14 months." *Id*. Conversely, two of its patents (the '314 and '756 patents relating to lead anchors) will both have expired by February, such that the only possible remedy is monetary damages.

***Third***, and perhaps most tellingly, this case has been stayed since May 8, 2020, but Medtronic has not adduced *any* evidence that it has been irreparably harmed during the stay so far. Medtronic confirms through its silence that money damages would be an adequate remedy should Medtronic ultimately prevail on any claims.

***Finally***, if either or both parties appeal any final decisions from the PTO,

1  Axonics will not seek any extensions of time in the appeals, and is open to
2  discussing with Medtronic expediting briefing and review by the Federal Circuit.
3     In sum, this third factor also weighs in favor of maintaining the stay.
4  **IV.    CONCLUSION**
5     For the foregoing reasons, the Court should deny the motion to lift the stay.

7  DATED:  October 8, 2021          Respectfully submitted,

8                                   KILPATRICK TOWNSEND & STOCKTON LLP

11                                  By:  */s/ A. James Isbester*
                                         A. JAMES ISBESTER

12                                  Attorneys for Defendant
13                                  AXONICS, INC. (f/k/a Axonics Modulation Technologies, Inc.)