Nimalka Wickramasekera (SBN: 268518)
NWickramasekera@winston.com
Joe S. Netikosol (SBN: 302026)
JNetikosol@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

George C. Lombardi (*pro hac vice*)
GLombardi@winston.com
Samantha M. Lerner (*pro hac vice*)
SLerner@winston.com
J.R. McNair (*pro hac vice*)
JMcNair@winston.com
Vivek V. Krishnan (*pro hac vice*)
VKrishnan@winston.com
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC., | **Case No. 8:19-cv-02115-DOC-JDE** |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY** |
| v. | Date:          November 1, 2021<br>Time:          8:30 a.m.<br>Courtroom:   9D |
| AXONICS MODULATION TECHNOLOGIES, INC., | |
| Defendant. | Judge:        Hon. David O. Carter |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 2

   A.   The Stay Has Fulfilled Its Purpose and Should Now Be Lifted. ......................... 2

   B.   The PTAB Made Final Written Determinations, and Any Director Review Is Uncertain and Unlikely to Simplify the Case. .................................. 3

   C.   The Stay Should Be Lifted Because the PTAB's Review Has Advanced the Case ............................................................................................ 4

   D.   A Stay Pending Appeal of the PTAB's Final Written Decisions Is Unlikely to Further Simplify the Case. .............................................. 5

   E.   Medtronic Would Be Unduly Prejudiced by an Indefinite Stay Pending Axonics' Appeals. ............................................................................. 10

III.  CONCLUSION ................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrea Elecs. Corp. v. Apple Inc.*,
2019 WL 3712120 (E.D.N.Y. Aug. 6, 2019) ............................................................ 8

*Carl Zeiss A.G. v. Nikon Corp.*,
2018 WL 5081479 (C.D. Cal. Oct. 16, 2018) ........................................................ 12

*Cooper Notification, Inc. v. Twitter, Inc.*,
2010 WL 5149351 (D. Del. Dec. 13, 2010) .......................................................... 12

*Dermafocus LLC v. Ulthera, Inc.*,
2018 WL 5113960 (D. Del. Oct. 19, 2019) ............................................................ 6

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ............................................................................... 8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
2020 WL 6270776 (D. Del. Oct. 26, 2020) ........................................................ 1, 8

*Juno Therapeutics, Inc. v. Kite Pharma*,
2018 WL 1470594 (C.D. Cal. Mar. 8, 2018) ............................................... 5, 10, 12

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ............................................................................. 1

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ............................................................................................... 1

*Limestone v. Micron Tech*,
2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) ......................................................... 5

*Lund Motion Prods. v. T-Max Hangzhou Tech. Co. Ltd.*,
No. 17-cv-01914-CJC-JPR (C.D. Cal. May 13, 2020) ................................ 4, 5, 6, 7

*MasterObjects, Inc. v. eBay, Inc.*,
2018 WL 11353751 (N.D. Cal. Nov. 7, 2018) ................................................*passim*

*Oyster Optics, LLC v. Ciena Corp.*,
2019 WL 4729468 (N.D. Cal. Sept. 23, 2019) .............................................. 5, 7, 11

ii

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
No. 5:18-cv-00356, Dkt. 192 (C.D. Cal. Nov. 2, 2020) ............................. 9

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
No. 5:18-cv-00356, Dkt. 194 (C.D. Cal. Jun. 30, 2021) ........................... 9

*Smart Modular Techs., Inc. v. Netlist, Inc.*,
2016 WL 5159524 (E.D. Cal. Sept. 21, 2016) ...................................... 11

*SZ DJI Tech. Co. v. Yuneec Int'l Co.*,
2016 WL 9114148 (C.D. Cal. Dec. 1, 2016)........................................ 12

*Twilio, Inc. v. TeleSign Corp.*,
2018 WL 1609630 (N.D. Cal. Apr. 3, 2018)....................................... 8, 9

*Twilio, Inc. v. TeleSign Corp.*,
No. 16-cv-06925, Dkt. 205 (N.D. Cal. Aug. 11, 2020) ......................... 8, 9

*Uniloc 2017 LLC v. Microsoft Corp.*,
No. 8:18-cv-02053-JLS-JDE, Dkt. 115 (C.D. Cal. May 8, 2020)........... 9, 10

*Uniloc 2017 LLC v. Microsoft Corp.*,
No. 8:18-cv-02053-JLS-JDE, Dkt. 117 (C.D. Cal. June 1, 2021)............ 10

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021).............................................................. 3, 4

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. May 2, 2013) ............................... 10, 12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014) .................................................. 12

**Other Authorities**

37 C.F.R. 42.71(d) .................................................................. 3

## I.     INTRODUCTION

This case was stayed more than 17 months while Axonics' IPR petitions were reviewed at the PTO.  The PTAB has now finished its review, and all seven asserted patents emerged with claims intact.  Specifically, the PTAB refused to institute review of one patent entirely and issued Final Written Decisions for the remaining six patents, leaving 73 asserted claims across all seven asserted patents for litigation in this Court.

Axonics only asked this Court to consider staying the case pending "*inter partes* review [that] would not be completed until September 2021."  (Dkt. 55 at 3.)  That review is now complete.  Dissatisfied with the final IPR decisions, Axonics changes course to seek an ***indefinite*** stay pending unspecified hypothetical reviews of indeterminate length by the Director of the PTO and the Federal Circuit.  Axonics' request for a stay pending appeal is against "the great weight of the case law" as courts have "typically denied motions to extend stays after a ruling from the PTAB." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2020 WL 6270776, at *5 (D. Del. Oct. 26, 2020).  According to the Federal Circuit, this is also an invitation for an abuse of discretion: "In *Landis* the Supreme Court stated that abuse of discretion resides in any 'stay of indefinite duration in the absence of a pressing need.'" *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  Indeed, "the prospect for simplification of patent matters in a case wanes greatly after the PTAB has issued its F[inal] W[ritten] D[ecision]." *MasterObjects, Inc. v. eBay, Inc.*, 2018 WL 11353751, at *2-3 (N.D. Cal. Nov. 7, 2018).  Here, Axonics' case simplification argument is highly speculative and unlikely to be correct, premised as it is on a rare appeal resulting in reversal of the PTAB's findings of no invalidity.  And while Axonics claims that it has "a substantial chance of success on appeal" that is "likely to further streamline and simplify this case" (Dkt. 66 at 1), nowhere does Axonics explain how its appeals differ from any other appeal in any other case.  Instead, Axonics resorts to the very type of self-interested speculation about its prospects for further reviews that have been rejected by other

1    courts denying stays pending IPR appeals.

2        There is also no genuine dispute that Medtronic will be prejudiced by a further

3    stay pending Director review or appeal, which would be of indefinite but substantial

4    length.  Notably, Axonics no longer disputes that it is a direct competitor of

5    Medtronic.  And Axonics continues to willfully infringe Medtronic's patents without

6    being held accountable.  With the terms of the asserted patents ticking away,

7    Medtronic risks losing the chance to obtain the permanent injunctive relief it seeks.

8        It is time for this Court to lift the stay—the PTAB has already simplified the

9    case as envisioned, and there is no set timeline for any further review in the Patent

10   Office or the Federal Circuit.  All three factors considered by courts in determining

11   whether to extend stays—the stage of the case, potential simplification, and prejudice

12   to Medtronic—strongly weigh against any further stay of this case.

13   **II.    ARGUMENT**

14       **A.    The Stay Has Fulfilled Its Purpose and Should Now Be Lifted.**

15       The Court should lift the stay because the stay has served its purpose of

16   simplifying issues and preserving judicial economy now that the PTAB has concluded

17   *inter partes* review.

18       To justify its requested stay (Dkt. 49), Axonics argued that "[g]iven its strict

19   timing requirements, IPR is designed . . . to reduce to 12 months the time the PTAB

20   spends reviewing validity, from the previous reexamination average of 36 months."

21   (Dkt. 49 at 8.)  Thus, Axonics argued the case should be stayed until the PTAB issued

22   its ***Final Written Decisions***—not until all appellate reviews were exhausted.  (*See*

23   *also id.* at 3 ("Courts in this District routinely stay patent cases while the PTAB

24   considers IPR petitions challenging asserted patents"); *id.* at 4 ("Because Axonics

25   promptly petitioned for *inter partes* review, the PTAB is statutorily required to decide

26   whether to institute the majority of the IPR petitions by September 24, 2020, and

27   thereafter decide on unpatentability of the challenged patent claims within twelve

28   months of institution" in September 2021).)  Recognizing the indeterminate nature and

1   timing of further review, Axonics never suggested at that time that the Court stay this
2   case until the PTAB and Federal Circuit complete further review of the PTAB's Final
3   Written Decisions.  Instead, the Court granted the stay based on the *finite* time frame
4   Axonics proposed: completion of PTO review in "September 2021."  (Dkt. 55 at 3.)
5   Thus, both Axonics and the Court apparently contemplated a stay that would run no
6   further than the PTAB's completion of *inter partes* review.  That time has come, and
7   the stay should be lifted.

8   **B.     The PTAB Made Final Written Determinations, and Any Director**
9   **Review Is Uncertain and Unlikely to Simplify the Case.**

10   Axonics asserts that the stay should continue because the "PTAB has not made
11   a final determination on any of Medtronic's asserted patent claims."  (Dkt. 66 at 1.)
12   This statement is contrary to both law and Axonics' own previous statements.  Just a
13   few weeks ago, on September 30, the parties *jointly informed* the Court that the
14   "PTAB issued final written decisions."  (Dkt. 62)  True to its name, a Final Written
15   Decision by the PTAB constitutes a judgment and "a final determination."[1]  Axonics
16   now asserts that the Supreme Court's decision in *United States v. Arthrex, Inc.*, 141 S.
17   Ct. 1970 (2021) changed the finality of the PTAB's rulings.  (Dkt. 66 at 1-2.)  Not so.
18   The *Arthrex* case establishes a *discretionary* form of review by the Director.  *Arthrex*,
19   141 S. Ct. at 1988 ("To be clear, the Director need not review every decision of the
20   PTAB.  What matters is that the Director have the discretion to review decisions
21   rendered by APJs.")  As the PTO recently explained, Director review is similar to the
22   previous option to seek panel rehearing of a Final Written Decision.[2]  Indeed, a party
23   is permitted to seek panel rehearing or Director review of a Final Written Decision,

24
25   [1] *See* USPTO website at https://www.uspto.gov/patents/ptab/trials/inter-partes-review
     ("If the proceeding is instituted and not dismissed, a final determination by the Board
26   will be issued within 1 year (extendable for good cause by 6 months)" (emphasis
     added)).
27   [2] *See* USPTO website at https://www.uspto.gov/patents/patent-trial-and-appeal-
     board/procedures/arthrex-qas ("As an interim measure, the mechanism to request
28   review by the Director is similar to the current rehearing procedures under 37 C.F.R.
     42.71(d).").

1  but not both.  *Id.*  Thus, the additional Director review option does not change the

2  finality of the PTAB's decisions any more than the previous panel rehearing option

3  did, and Axonics has not identified any authority to the contrary.

4  Despite its heavy reliance on the prospect of Director review, Axonics has only

5  requested Director review for two of the seven asserted patents to date.  One patent,

6  the '324 patent, is not subject to Director review at all (*see* Dkt. 62 at 2 ("not

7  appealable")).  For another patent, the '069 patent, Axonics allowed the deadline to

8  pass without seeking Director review.  (*See Id.* at 3.)  And while Axonics did file

9  requests for Director review related to the '756 and '314 patents on the very last day

10  possible,[3] it has not filed requests for the remaining patents.  Axonics' delay

11  highlights the indefinite timeline for potential Director review.  In any event, that

12  Axonics may request further potential reviews does not justify continuing the stay

13  indefinitely.  To date, no petition for Director review of an IPR decision filed by any

14  party has been granted.  (*See* Dkt. 63. at 11; *See also* Ex. 9 at 1).  Moreover, there is

15  no timeline for any such review even if granted.  This factor weighs heavily against

16  continuing the stay.

17  **C.     The Stay Should Be Lifted Because the PTAB's Review Has**

18  **Advanced the Case**

19  The stay is also no longer justified given the progression in the case.  As

20  Axonics admits, the *inter partes* review proceedings have already "reduced the

21  Court's work by some amount already" by ruling on claims and by "provid[ing]

22  explanations of several disputed claim terms."  (Dkt. 66 at 3).  Axonics then changes

23  direction and argues that this case is in its early stages.  (*Id.* at 5.)  To the contrary, as

24  Judge Carney indicated in *Lund*, after "complex proceedings before the PTAB," it

25  would be "a mistake to characterize this case as one that is still in its early stages"

26  given "the time that has passed and the resources the parties have expended."  *See*

27

28

---

[3] Axonics cannot dispute that its requests for Director review related to the '756 and
'314 patents expressly raise no claim construction issues.

1  *Lund Motion Prods. v. T-Max Hangzhou Tech. Co. Ltd.*, No. 17-cv-01914-CJC-JPR,
2  Dkt. 75 at 4 (C.D. Cal. May 13, 2020) (citing *Oyster Optics, LLC v. Ciena Corp.*,
3  2019 WL 4729468, at *3 (N.D. Cal. Sept. 23, 2019)).[4]  Axonics does not address these
4  cases.

5       Axonics nevertheless disputes the advancement of the case on the basis that
6  events that necessarily occur in district court have "not changed" because of the
7  current stay.  (Dkt. 66 at 4-5).  Axonics' catch-22 argument—the case should continue
8  to be stayed because a stay has prevented it from advancing to date—has been rejected
9  before and should be here as well.  Indeed, "the existence of a stay, on its own, does
10  not justify its perpetuation: this case would remain frozen in its nascent stage if the
11  Court continued the stay."  *Oyster Optics,* 2019 WL 4729468, at *2.  The significant
12  progress that has been made in light of the PTAB's findings supports lifting the stay.

13      **D.   A Stay Pending Appeal of the PTAB's Final Written Decisions Is**
14         **Unlikely to Further Simplify the Case.**

15       Axonics asserts that keeping an indefinite stay in place through all appeals will
16  "streamline and simplify this case," without providing any support for this statement.
17  (Dkt. 66 at 1).  Indeed, "the prospect for simplification of patent matters in a case
18  wanes greatly after the PTAB has issued its F[inal] W[ritten] D[ecision]."
19  *MasterObjects*, 2018 WL 11353751, at *2 (granting motion to lift stay).  Thus, the
20  only potential simplification Axonics can point to are vague and speculative appellate
21  outcomes, which courts in this district and others have rejected as a reason to extend a
22  stay pending appeal.  *See, e.g.*, *Lund*, No. 17-cv-01914-CJC-JPR, Dkt. 75 at 5
23  ("Defendants have not established that their appeal is likely to succeed, so any
24  possible simplification of the issues is speculative."); *Juno Therapeutics, Inc. v. Kite*

25  _____

26  [4] Axonics relies on *Limestone v. Micron Tech*, which stayed proceedings shortly after
IPR petitions were filed.  2016 WL 3598109, at *3 (C.D. Cal. Jan. 12, 2016).
27  However, the circumstances here are analogous to *Lund* in which the stage of the case
is very different after "complex proceedings before the PTAB" have progressed to the
28  issuance of Final Written Decisions.  *See Lund*, No. 17-cv-01914-CJC-JPR, Dkt 75
at 4.

*Pharma*, 2018 WL 1470594, at *7 (C.D. Cal. Mar. 8, 2018) ("As other courts have held, the pendency of an appeal from the IPR, and the possibility that the Federal Circuit may reverse the PTO (and thereby simplify this litigation by, presumably, making it disappear), is not, in and of itself, a sufficient basis to make the patentee continue to wait to enforce patent rights that it currently holds.") (internal quotations omitted). "[W]hile the Federal Circuit may come to a different conclusion than the PTAB, the **mere possibility** (**as opposed to 'reasonable likelihood'**) that the asserted claims could be invalidated [after an] appeal and [that this would] result in simplification is too speculative to be given much weight." *Dermafocus LLC v. Ulthera, Inc.*, 2018 WL 5113960, at *2 (D. Del. Oct. 19, 2019) (emphasis added).

Axonics uses the same speculation as these prior cases and posits that "if any asserted claims are cancelled through Director or Federal Circuit review, the case will be streamlined and greatly simplified because … such claims will be moot." (Dkt. 66 at 5.)[5] That is an unlikely outcome. The likelihood of the PTO Director overturning a Final Written Decision is nil based on the results so far—0 reviews granted in 67 requests. (Ex. 9 at 1.) After Axonics' arguments for each of the confirmed claims have run their indeterminate course at the PTO, "the likelihood of the Federal Circuit's overturning the PTAB's IPR decision is approximately one in ten," *MasterObjects*, 2018 WL 11353751, at *2-3, with the "Federal Circuit affirm[ing] the PTAB on every issue in nearly 75 percent of cases." *Lund*, No. 17-cv-01914-CJC-JPR, Dkt. 75 at 6.

Axonics dismisses these dire numbers as "statistics [that] do not necessarily predict the result on appeal in this instance, particularly given the strength of Axonics' appeal." (Dkt. 66 at 5.) Axonics boldly claims it "has a substantial chance of success

---

[5] Axonics suggests that Medtronic might appeal to the Federal Circuit the few claims of asserted U.S. Patent Nos. 9,821,112 (claims 9-13, 20) and 7,774,069 (claims 5, 6, 8, 9) found invalid by the PTAB. (Dkt. 66 at 1, 4.) Medtronic does not intend to assert those claims if the Court lifts the stay as requested by the instant motion, and any appellate review of those claims therefore cannot simplify the case.

on appeal" (*id*. at 1, 5), but provides no facts or explanation why its appeals are likely to have a different result than others do. At this juncture, all signs indicate that the PTAB's decisions are likely to be upheld. *See MasterObjects*, 2018 WL 11353751, at *3 ("The case for simplification now is quite different than it was when eBay originally applied for a stay: 'now the best data point we have from the PTAB suggests that these claims will survive.'"). Furthermore, this is not the first time Axonics has been wrong regarding its prospects for success. After the IPR petitions were filed, Axonics' CEO claimed it "provided the USPTO compelling challenges to the validity of Medtronic patents at issue and now await institution of each IPR petition."[6] Not only did the PTAB refuse to institute one of the patents outright; it confirmed the patentability of nearly 50 asserted claims in the six patents it fully reviewed. There is no basis to further delay this litigation based solely on Axonics' hopes for a different outcome on appeal. Even if appeal were to change some of the PTAB's holdings, this Court is perfectly capable of making adjustments to accommodate these changes. *See Lund*, No. 17-cv-01914-CJC-JPR, Dkt. 75 at 6 (citing *Oyster Optics*, 2019 WL 4729468, at *2).

Axonics also makes vague remarks regarding what **could** happen in a **hypothetical** appeal process. Specifically, Axonics claims "the Federal Circuit will likely weigh in on whether Medtronic gave up any claim scope as the price for maintaining its claims, and if so, how much scope was disclaimed." (Dkt. 66 at 6.) But Axonics provides no explanation why the Federal Circuit would "weigh in" on claim scope or how that impacts Axonics' infringement in this case. Indeed, "it is far from certain that the Federal Circuit will issue anything more expansive than a one-line, summary affirmance." *MasterObjects,* 2018 WL 11353751, at *2. Furthermore, it is well established that the parties are not permitted to raise new claim construction

---

[6] 3/16/2020 Axonics Press Release, "Axonics® Announces Filing of Petitions Before the United States Patent and Trademark Office Contesting The Validity of Medtronic Patents," https://ir.axonics.com/node/7661/pdf.

arguments on appeal. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("Because Google failed to present these claim construction arguments to the Board, Google forfeited both arguments.").

In this case, the PTAB did not even perform claim construction in three of the written decisions, which it resolved based on Axonics' complete failure to show a motivation to combine prior art references required to prove obviousness. (*See e.g.*, Ex. 10, IPR2020-00679 FWD at 17, 29-35, 51-57; Ex. 11, IPR2020-00715 FWD at 17-18, 37-43, 58-64; Ex. 12, IPR2020-00713 FWD at 13, 24-30.) Thus, the Federal Circuit's consideration of claim scope is even less likely for these appeals.[7] Ultimately, Axonics' "hope that the Federal Circuit will issue additional claim construction is speculative: Waiting for the possibility of additional claim construction guidance does not justify an indeterminate stay." *MasterObjects*, 2018 WL 11353751, at *2 (internal quotation marks removed).

With "the great weight of the case law" against it, *IOENGINE*, 2020 WL 6270776, at *5, Axonics relies on several cases, none of which addresses the circumstances in this case. First, Axonics cites *Twilio, Inc. v. TeleSign Corp.*, 2018 WL 1609630, at *2 (N.D. Cal. Apr. 3, 2018), for the proposition that the stay should not be lifted until after appeals because "further simplification of issues is likely." (Dkt. 66 at 5.) The posture of *Twilio* was quite different. There, the court decided a motion to stay the case following IPR *institution*. *Id.* at *1. Specifically, the court in *Twilio* stayed the case "pending final exhaustion of the pending IPR proceedings … including any appeals" preemptively at the institution stage without the benefit of Final Written Decisions confirming any claims, let alone the nearly 50 claims across

---

[7] Axonics also cites *Andrea Elecs. Corp. v. Apple Inc.*, 2019 WL 3712120 (E.D.N.Y. Aug. 6, 2019) for the general proposition that resolution of an appeal could "streamline claim construction." (Dkt. 66 at 6.) However, unlike here, that case involved four claims in a single patent that had one identifiable claim construction issue (i.e., the term "periodically"), which the Court noted could "change the contours of the case." *Id.* at *2. Here, Axonics does not even attempt to identify any particular claim construction issue across seven patents because it cannot.

six patents as the PTAB has done here.  *See id.* at \*2.  This is a much different case—the PTAB has now overwhelmingly **rejected** Axonics IPR invalidity challenges.  In the end, *Twilio* shows why the stay should be lifted.  There, the Federal Circuit affirmed each and every PTAB finding, thus providing no simplification of the case beyond what already had happened in the IPR.  *See* Joint Status Report Re IPR Proceedings, *Twilio, Inc. v. TeleSign Corp.*, No. 16-cv-06925, Dkt. 205 (N.D. Cal. Aug. 11, 2020).

Axonics also cites *Sleep Number Corp. v. Sizewise Rentals, LLC*, No. 5:18-cv-00356, Dkt. 192 (C.D. Cal. Nov. 2, 2020).  (Dkt. 66 at 6.)  But the court's two-page order in *Sleep Number* does not even address the three-factor analysis relevant here. *See Sleep Number*, No. 5:18-cv-00356, Dkt. 192 at 1-2.  Moreover, *Sleep Number* exemplifies the prejudice to the party opposing a continued stay of indefinite duration. The most recent joint status report in *Sleep Number* indicates that appeals are still pending at the Federal Circuit, a full 14 months after the PTAB issued its most recent Final Written Decision, with no indication when those proceedings will conclude, and how long it will take before the stay may be lifted.  *See* Joint Status Report Re IPR, *Sleep Number Corp.*, No. 5:18-cv-00356, Dkt. 194 (C.D. Cal. Jun. 30, 2021) ("The briefing on this appeal will continue before the Federal Circuit until at least October 18, 2021.").  Thus, that case has been in limbo for months, without any indication of when it might resume or any benefit in extending the stay.

Finally, Axonics cites *Uniloc 2017 LLC v. Microsoft Corp.*, No. 8:18-cv-02053-JLS-JDE, Dkt. 115 (C.D. Cal. May 8, 2020) (Dkt. 66 at 6.), which also involved an entirely different situation, and does not address a motion to lift a stay following the PTAB's Final Written Decisions.  Instead, *Uniloc* addressed whether the stay should be lifted at the **institution** stage after IPR was instituted for some patents but not others, and while the parties were awaiting the PTAB's Final Written Decisions where review was instituted.  *Uniloc*, No. 8:18-cv-02053-JLS-JDE, Dkt. 115.  In fact, the court in *Uniloc* specifically contemplated modification of the stay no later than two

9

weeks after the PTAB's final determinations. *Id*. at 2 ("The parties shall file a joint status report as to the status of the various IPR proceedings in six (6) months or within fourteen (14) days of the PTAB's issuance of its final determination as to the last then-pending IPR petition, whichever is sooner.").[8] Thus, *Uniloc* is inconsistent with Axonics' request for an indefinite stay pending appellate review and does not endorse continuing a stay under the circumstances of the present case.

In sum, the authority and evidence show simplification of issues on appeal is unlikely, Axonics has not shown any reason why this case should continue to be stayed while most are not, and any speculation about potential simplification does not justify the lengthy and indefinite continuation of the stay requested by Axonics.

## E. Medtronic Would Be Unduly Prejudiced by an Indefinite Stay Pending Axonics' Appeals.

When the Court ordered the stay, it found the prejudice to Medtronic to be a "factor [that] tilts slightly against a stay." (Dkt. 55 at 4.) This factor tilts further against a stay now after the passage of 17 months, during which Medtronic's competitor Axonics has been able to market its products without having to answer for its willful infringement of Medtronic's patents. Axonics tellingly does not deny that the parties are anything but direct competitors. (Dkt. 63 at 12.) That cannot be disputed, and thus prejudice is particularly high. *See Juno Therapeutics*, 2018 WL 1470594, at *8 ("The Court notes that prejudice to the patentee is heightened when parties to litigation are direct competitors and as a result, courts presume that a stay will prejudice the non-movant.") (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1034 (C.D. Cal. May 2, 2013)) (internal citations omitted).

---

[8] After the conclusion of the PTAB's Final Written Decisions for all instituted IPRs, the court continued the stay ***because*** both parties agreed the case should remain stayed. *See* Joint Status Report Re IP, *Uniloc*, No. 8:18-cv-02053-JLS-JDE, Dkt. 117 (C.D. Cal. June 1, 2021).

1    If Axonics' request to continue the stay pending PTO Director review and

2    appeal were granted, harm to Medtronic will continue to accrue with each passing

3    day. Unlike the statutorily imposed deadline for the PTAB's *inter partes* review,

4    which provided a time limit for Axonics' initial request for a stay, Axonics' current

5    request for a stay pending Federal Circuit appeal has no such deadline. *Oyster Optics*,

6    2019 WL 4729468, at *4. Nor does review by the Director have a specified timeline

7    for completion. The indefinite time frame for further review by either, or both, makes

8    continuing the stay especially prejudicial to Medtronic. *See Smart Modular Techs.,*

9    *Inc. v. Netlist, Inc.*, 2016 WL 5159524, at *3 (E.D. Cal. Sept. 21, 2016) ("[T]he

10   additional delay that would be incurred by continuing the stay pending exhaustion of

11   appeals is significant.").

12   Furthermore, Medtronic is prejudiced by untimely enforcement of its patent

13   rights. While Medtronic has been delayed in enforcing its patents, its direct

14   competitor Axonics has been able to push off the consequences of its willful

15   infringement. Medtronic's latest expiring patent in each of the three patent families it

16   asserts against Axonics is February 18, 2022, April 30, 2024, and March 2, 2026,

17   respectively. Medtronic has requested relief from this Court to permanently enjoin

18   Axonics from infringing its patents through expiration. (Dkt. 28 at 75, Prayer for

19   Relief D.) Medtronic realistically has already lost that relief for one family of patents

20   expiring shortly, and will continue to lose the opportunity for a permanent injunction

21   for other asserted patents to the extent the case is stayed any longer.

22   Axonics ignores the prejudice to Medtronic identified above and performs its

23   own incomplete analysis. Axonics has confused the standard for this motion—

24   ***whether a stay would unduly prejudice or present a clear tactical disadvantage to***

25   ***Medtronic***—with that of injunctive relief, which involves the factors Axonics

26   mentions, i.e., adequacy of money damages and "irreparabl[e] harm." (Dkt. 66 at 7.)

27   For evaluating undue prejudice and tactical disadvantage, courts have looked to many

28   other factors, including whether the parties are competitors, how soon the patents at

11

issue are set to expire, and the length of time of the stay.  *See, e.g., Juno Therapeutics*, 2018 WL 1470594, at *8 (finding prejudice to the patentee is heightened when parties to litigation are direct competitors); *Carl Zeiss A.G. v. Nikon Corp.*, 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018) (finding prejudice when patents would expire soon); *MasterObjects*, 2018 WL 11353751, at *3 (finding prejudice when considering the length of time of an appeal).  These factors all indicate that Medtronic will suffer undue prejudice if the stay is not lifted now.

Finally, Axonics continues to fault Medtronic for not seeking the extraordinary and rarely granted remedy of a preliminary injunction, (Dkt. 66 at 7), as if that is the silver bullet that counterbalances any prejudice to Medtronic and justifies the indefinite extension of the stay Axonics seeks.[9]  As Medtronic addressed in detail in its opening brief, substantial authority indicates that not seeking a preliminary injunction does not equate to a lack of prejudice.  (Dkt. 63 at 13-14); *see also Universal Elecs.*, 943 F. Supp. 2d at 1034 ("The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case."); *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, 2016 WL 9114148, at *3-4 (C.D. Cal. Dec. 1, 2016) ("Defendants further argue that Plaintiffs have not moved the case forward with urgency because they did not move for preliminary injunction.  Even so, it does not mean that Plaintiffs would not suffer prejudicial harm from their competitor's market activity during a lengthy delay in the case.") (internal citation removed); *Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010) (Not seeking a preliminary injunction "tells one nothing about Cooper's motivation to obtain injunctive relief, or even about the potential irreparability of any harm from any

---

[9]  Axonics supports its position with a single case, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318-20 (Fed. Cir. 2014).  As Medtronic explained in detail in its opening brief, that case involves very different facts and circumstances than those present here.  (Dkt. 63 at 13-14.)  Axonics does not even attempt to address those differences in its opposition.

infringement (if ultimately proven).").

While the Court earlier determined that prejudice to Medtronic tilted only slightly against a stay, this factor has moved much more strongly against any further stay with the passage of time, particularly given the lack of any definite time frame for the stay and the lack of any reasonable prospect for further simplification of the case.

## III. CONCLUSION

For all the foregoing reasons, Medtronic's motion to lift the stay should be granted. Medtronic respectfully asks that the court enter an order lifting the stay on proceedings in this action and order the parties to propose a case schedule within ten (10) days.

Dated: October 18, 2021

WINSTON & STRAWN LLP

By: */s/ Nimalka Wickramasekera*
Nimalka Wickramasekera
George C. Lombardi
Samantha M. Lerner
J.R. McNair
Vivek V. Krishnan
Joe Netikosol

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC
PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC;
MEDTRONIC USA, INC.