Nimalka Wickramasekera (SBN: 268518)
NWickramasekera@winston.com
Joe S. Netikosol (SBN: 302026)
JNetikosol@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750

George C. Lombardi (*pro hac vice*)
GLombard@winston.com
J.R. McNair (*pro hac vice*)
JMcNair@winston.com
Vivek V. Krishnan (*pro hac vice*)
VKrishnan@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AXONICS MODULATION TECHNOLOGIES, INC., <br><br> Defendant. | **Case No. 8:19-cv-02115-DOC-JDE** <br><br> **PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION** <br><br> District Judge:   Hon. David O. Carter <br> Special Master:   David Keyzer |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARD ............................................................................................2

III. THE COURT SHOULD ADOPT MEDTRONIC'S PROPOSAL FOR "SAID CURRENT PASSING THROUGH SAID INTERNAL POWER SOURCE DECLINES AS SAID VOLTAGE OF SAID INTERNAL POWER SOURCE INCREASES" .....................................................................2

IV. THE COURT SHOULD ADOPT MEDTRONIC'S PROPOSAL FOR "ADJUSTABLE ASSEMBLY ADAPTED TO ADJUST EFFICIENCY OF ENERGY TRANSFER BETWEEN THE PRIMARY COIL AND THE SECONDARY COIL" ....................................................................................5

V. CONCLUSION ......................................................................................................8

i

PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION
CASE NO. 8:19-CV-02115-DOC-JDE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cias, Inc. v. Alliance Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007) ...................................................................................7

*Cont'l Cirs. LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) .....................................................................................4

*Genentech, Inc. v. Chiron Corp.*,
112 F.3d 495 (Fed. Cir. 1997) .....................................................................................7

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ...................................................................................8

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
2019 WL 7172980 (C.D. Cal. Sept. 25, 2019) ............................................................2

*McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*,
656 F.2d 1309 (9th Cir. 1981) .....................................................................................2

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................4

*Seaman v. Sedgwick, Detert, Moran & Arnold, LLP*,
2014 WL12700973, at *1 (C.D. Cal. Sept. 30, 2014) .................................................2

**Other Authorities**

Fed. R. Civ. P. 53(f)(3) .....................................................................................................2

Fed. R. Civ. P. 53(f)(4) .....................................................................................................2

## I. INTRODUCTION

Plaintiffs Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, and Medtronic USA, Inc. (collectively, "Plaintiffs" or "Medtronic") bring this action for patent infringement against defendant Axonics Modulation Technology, Inc. ("Defendant" or "Axonics") for infringing its patents related to implantable medical leads, implantable medical devices, and related charging devices.

The parties dispute the construction of six claim terms. The parties submitted their respective briefing on these terms, and Medtronic respectfully refers the Court to, and incorporates the arguments set forth in, the claim construction briefing submitted to the Special Master and filed with the Court: Medtronic's Opening Claim Construction Brief (Dkt. No. 122) filed on July 1, 2022, and Medtronic's Responsive Claim Construction Brief (Dkt. No. 139) filed on July 15, 2022.[1]

The claim construction hearing was conducted by Special Master David Keyzer on September 7, 2022. On September 6, 2022, the day before the hearing, the Special Master issued his Tentative Special Master Report. After the hearing, the Special Master issued his Report and Recommendation on Claim Construction ("R&R") (Dkt. No. 163-1) on September 13, 2022. The R&R, by and large, adopted Medtronic's proposed constructions. Medtronic respectfully submits that the Court should adopt those terms, which include: "plurality of tine elements," "indicative of," "programmable limit," and "value associated with said current."

Medtronic respectfully brings this objection to challenge the two term proposals that the Special Master did not adopt, which include: (1) "wherein said [predetermined] current [passing through / in] said internal power source declines as said voltage of said internal power source increases during a charging cycle" and (2) "adjustable assembly adapted to adjust efficiency of energy transfer between the primary coil and the secondary coil." For these terms, Medtronic respectfully requests that the Court adopt

---

[1] Defendant Axonics' Opening Claim Construction Brief is Dkt. No. 111; Axonics' Responsive Claim Construction Brief is Dkt. No. 138.

1

PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION
CASE NO. 8:19-CV-02115-DOC-JDE

1   Medtronic's proposed constructions, as they reflect the plain and ordinary meanings of
2   the disputed terms and are supported by the intrinsic and extrinsic record.

3   ## II.   LEGAL STANDARD

4   The Court reviews *de novo* all objections to a Special Master's report and
5   recommendation, including legal conclusions and findings of fact. Fed. R. Civ. P.
6   53(f)(3), (4); *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, 2019 WL 7172980, at *1
7   (C.D. Cal. Sept. 25, 2019) (citing *Seaman v. Sedgwick, Detert, Moran & Arnold, LLP*,
8   2014 WL12700973, at *1 (C.D. Cal. Sept. 30, 2014)). Accordingly, "[t]he court may
9   'accept, reject, or modify, in whole or in part, the findings or recommendations made
10  by the [special master].' The [court] may also receive further evidence or recommit the
11  matter to the [special master] with instructions." *Int'l Techs.*, 2019 WL 7172980, at *1
12  (citing *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309,
13  1313 (9th Cir. 1981)).

## III.   THE COURT SHOULD ADOPT MEDTRONIC'S PROPOSAL FOR "SAID CURRENT PASSING THROUGH SAID INTERNAL POWER SOURCE DECLINES AS SAID VOLTAGE OF SAID INTERNAL POWER SOURCE INCREASES"

| Claim Term Language |
|---|
| "wherein said current passing through said internal power source declines as said voltage of said internal power source increases during a charging cycle" ('758 Patent, Claims 2, 6, 10) |
| "wherein said predetermined current in said internal power source declines as said voltage of said internal power source increases during a charging cycle" ('069 Patent, Claim 7) |

| Medtronic's Proposal | Axonics' Proposal | Special Master's R&R |
|---|---|---|
| "wherein at any instance during the charging cycle said [predetermined] current [in / passing | "Excludes charging with constant current and roughly constant voltage phases and | "wherein said current passing through said internal power source declines as said voltage of said internal |

| | | |
|---|---|---|
| through] said internal power source has an inverse relationship with said voltage of said internal power source, such that said current declines as said voltage increases; an inverse relationship between current and voltage does not include in its scope instances in which the current declines only after the voltage of the internal power source increases during a charging cycle" | excludes instances in which the [predetermined] current [passing through / in] said internal power source declines only after the voltage of the internal power source increases during a charging cycle" | power source increases during a charging cycle, which does not include instances in which said current passing through said internal power source declines only after the voltage of said internal power source increases during a charging cycle, and which does not include a two-phase charging cycle with a constant current phase followed by a roughly constant voltage phase"<br><br>"wherein said predetermined current in said internal power source declines as said voltage of said internal power source increases during a charging cycle, which does not include instances in which said predetermined current in said internal power source declines only after the voltage of the internal power source increases during a charging cycle, and which does not include a two-phase charging cycle with a constant current phase followed by a roughly constant voltage phase" |

Medtronic believes this term is clear from the claim language and requires no construction, and that Medtronic's proposal is consistent with the specification and plain meaning understood by a POSITA. In construing claims, district courts give claims their ordinary and customary meaning, which is the meaning that the term would

3

1  have to a person of ordinary skill in the art in question at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Here, as the claim language shows, the term means that at some instance during a charging cycle, there must be an inverse relationship between the current and the voltage such that the current declines "as" the voltage increases.

Medtronic's proposal captures the interpretation of this term as applied by the PTAB in its Final Written Decision. The PTAB explained that the "Petitioner [Axonics] appears to recognize that the ordinary meaning (i.e., 'at first glance') of the recited current that declines 'as' voltage increases corresponds to an 'inverse relationship' between voltage and current." Dkt. No. 122-26, Ex. Y, IPR2020-00680 FWD at 38. The construction of this term is clear from this statement alone.

The Special Master's R&R found that "in addition to (or as part of) Medtronic disclaiming instances in which the current passing through the internal power source declines only after the voltage of said internal power source increases during a charging cycle, Medtronic disclaimed a two-phase charging cycle with a constant current phase followed by a roughly constant voltage phase." R&R (Dkt. No. 163-1) at 85. However, the construction in the R&R ***goes beyond*** the PTAB's Final Written Decision and limits the claim in a manner that is inconsistent with the PTAB's final determination.

The Federal Circuit has made clear that "[s]imilar to disclaimers in the specification, '[t]o operate as a disclaimer, the statement in the prosecution history must be clear and unambiguous, and constitute a clear disavowal of scope.'" *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797–98 (Fed. Cir. 2019) (reversing the district court's finding because "none of the statements relied upon by the district court rises to the level of 'a clear and unmistakable disclaimer,'" and confirming that disavowal of claim scope—whether in the specification or prosecution history—must be "clear and unmistakable."). Here, neither the specification nor prosecution history supports such a narrow interpretation, and Medtronic made no disclaimer with respect to the claim scope.

4

PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION
CASE NO. 8:19-CV-02115-DOC-JDE

1  As discussed in its opening claim construction brief, Medtronic's statement was relating to discussion of prior art—"Petitioner does not show how Baumann discloses in its system battery current $I_L$ declines as its battery voltage $U_Z$ increases during a charging cycle" because, instead, Baumann teaches regulating current in two phases. Dkt. No. 111-30, Ex. 28 at 27. This statement does not amount to a disclaimer because it explains that the Petitioner failed to meet its burden to show that the prior art teaches that limitation. In explaining that the two phases do not teach the limitation, Medtronic provided, "Petitioner does not show how Baumann discloses in its system battery current $I_L$ declines *as* its battery voltage $U_Z$ increases during a charging cycle … instead Baumann discloses regulating current in two phases. In the first phase, the battery current $I_L$ is set or constant level while the battery voltage $U_Z$ increases… during the second phase… battery voltage $U_G$ initially decreases *as the current is held at a constant level*." *Id.* at 27-28. That is, neither phase described an inverse relationship. In short, Medtronic did not disclaim any claim scope because the Baumann reference simply failed to disclose the full scope of the claims. The R&R appears to rely on the word "instead" in Medtronic's statement as presenting a direct contrast between the claim scope and the purported teachings of the prior art Baumann. R&R (Dkt. No. 163-1) at 84. But the R&R errs by treating the deficiencies of Baumann as a disclaimer of *all* two-phase charging cycles with a constant current phase followed by a roughly constant voltage phase, and the R&R cites to no authority to support that such use of the term qualifies as a "clear and unmistakable disclaimer," as set forth by the Federal Circuit. Accordingly, Medtronic respectfully objects to the R&R's findings for this term and submits that the Court should adopt Medtronic's proposal.

### IV. THE COURT SHOULD ADOPT MEDTRONIC'S PROPOSAL FOR "ADJUSTABLE ASSEMBLY ADAPTED TO ADJUST EFFICIENCY OF ENERGY TRANSFER BETWEEN THE PRIMARY COIL AND THE SECONDARY COIL"

| Claim Term Language |
|---|
| [The external device of claim 1 further comprises an ] **"adjustable assembly adapted to adjust efficiency of energy transfer between the primary coil and the secondary coil"** <br> '324 Patent, Claim 5 |

| **Medtronic's Proposal** | **Axonics' Proposal** | **Special Master's R&R** |
|---|---|---|
| Plain and ordinary meaning which is an assembly of the external device that allows for adapting the position of the primary coil of the external device relative to the secondary coil to adjust efficiency of charging. | "a component of the external device that is moveable relative to another component of the external device to adjust efficiency of charging" | "a component of the external device that is moveable relative to another component of the external device to adjust efficiency of energy transfer between the primary coil and the secondary coil" |

The dispute regarding this term hinges on whether "adjustable assembly" indicates that a "component of the external device is movable relative to another component," or whether the term "adjustable" modifies "assembly" such that "adjustable assembly" indicates that the external device comprises an assembly capable of being adjusted (Medtronic's position). Axonics argued that its construction makes clear that this "adjustable assembly" is ***included within*** the external charger whereby adjustment occurs by relative movement of the components of the charger. The Special Master adopted Axonics' construction and recommends interpreting the term as "a component of the external device that is moveable relative to another component of the external device[.]" R&R (Dkt. No. 163-1) at 50. Medtronic respectfully objects to this recommendation.

Medtronic's proposal properly conveys the plain meaning—that the external device comprises an adjustable assembly means that the assembly of the external device *includes* adjustability. As the Special Master indicated, the word "comprises," based

6

PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION
CASE NO. 8:19-CV-02115-DOC-JDE

1. on ordinary meaning and patent law, indicates the *inclusion* of something. *Id*. at 47. Accordingly, "what is recited before the word 'comprises' must include what is recited after the word 'comprises.'" *Id*. at 47; *see*, *e.g.*, *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that *the named elements are essential*, but other elements may be added and still form a construct within the scope of the claim.") (emphasis added); *Cias, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' means 'including but not limited to.'").

Applying the definition of "comprises" here, the phrase "external device further comprises an … 'adjustable assembly'" means that the external device *includes* an adjustable assembly. That is, it has an assembly the position of which is adjustable. As such, the recommended construction is incorrect because the claim term language reads "adjustable assembly"—indicating that the word "adjustable" modifies the word "assembly," not that the word "adjustable" modifies a specific component **within** the assembly.

The plain meaning of the term imposes no requirement that the adjustable assembly be a component within—or is moveable only relative to another component of—the device. The specification likewise poses no such restriction. To reach its conclusion that moving the entire external device does not meet adjustable assembly, the R&R relies on arguments Axonics made at the hearing and certain disclosures of the specification. This includes the argument that "the adjustable assembly is recited as being *part of* the external device," and "specification regarding positioning the entire device by hand *before* using an adjustable assembly such as rotating core cup assembly 92." R&R (Dkt. 163-1) at 48–49 (citing '324 Patent at 11:33–39 & 12:45–13:5).

Such reliance, however, is improper. The Federal Circuit has explained that embodiments in the specification—even if there is only one embodiment—cannot limit the scope of the claims absent the patentee's "words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371–

7

72 (Fed. Cir. 2014). Here, the recommended construction narrows the claim scope by improperly importing an embodiment from the specification into the claim language. Nothing in the claim language or specification, however, sufficiently supports such a narrow read. Notably, the R&R cites to nothing in the specification that amounts to the patentee's "words or expressions of manifest exclusion or restriction." *Id.* And the R&R erred in not considering descriptions in the specification of a belt securing the external charger to the body, which is by definition "adjustable." *See* '324 Patent at 10:49–51, 10:57–63, 12:5–10.

For these reasons, Medtronic objects to the R&R's findings for this term and respectfully requests that this Court adopt Medtronic's plain and direct proposal.

## V. CONCLUSION

For the reasons stated herein, Medtronic objects to certain portions of the R&R and respectfully requests that the Court adopt Medtronic's proposed constructions for: (1) "wherein said [predetermined] current [passing through / in] said internal power source declines as said voltage of said internal power source increases during a charging cycle" and (2) "adjustable assembly adapted to adjust efficiency of energy transfer between the primary coil and the secondary coil."

Dated: October 4, 2022               WINSTON & STRAWN LLP

By: /s/ *Nimalka Wickramasekera*
    Nimalka Wickramasekera
    George C. Lombardi
    J.R. McNair
    Vivek V. Krishnan
    Joe Netikosol

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

**United States District Court for the Central District of California**

*Medtronic, Inc. et al. v. Axonics Modulation Technologies, Inc.*
**Case No. 8:19-cv-02115-DOC-JDE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Winston & Strawn LLP, 333 S. Grand Avenue, Los Angeles, CA 90071-1543. On October 4, 2022, I served the following document(s):

**PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION**

☐ **MAIL**: by placing a copy(ies) of the document(s) listed above in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, CA addressed as set forth below. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

☒ **EMAIL**: by electronically transmitting copy(ies) of the document(s) listed above via email to the addressee(s) as set forth below, in accordance with the parties' agreement to be served electronically pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), or Local Rule of Court, or court order.

| | |
|---|---|
| Matthew D. Powers<br>William P. Nelson<br>TENSEGRITY LAW GROUP, LLP<br>555 Twin Dolphin Drive, Suite 650<br>Redwood Shores, CA 94065<br>Telephone: (650) 802-6000<br>Facsimile: (650) 802-6001<br>matthew.powers@tensegritylawgroup.com<br>william.nelson@tensegritylawgroup.com | Azra M. Hadzimehmedovic<br>Aaron M. Nathan<br>Samantha A. Jameson<br>TENSEGRITY LAW GROUP, LLP<br>8260 Greensboro Drive, Suite 260<br>McLean, VA 22102<br>Telephone: (703) 940-5033<br>Facsimile: (650) 802-6001<br>azra@tensegritylawgroup.com<br>aaron.nathan@tensegritylawgroup.com<br>samantha.jameson@tensegritylawgroup.com |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Signed: */s/ Nikki Khorram*
Nikki Khorram

Dated: October 4, 2022