1  Nimalka Wickramasekera (SBN: 268518)
   NWickramasekera@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue
3  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
4  Facsimile:   (213) 615-1750

5  George C. Lombardi (*pro hac vice*)
   GLombard@winston.com
6  Brian Nisbet (*pro hac vice*)
   BNisbet@winston.com
7  J.R. McNair (*pro hac vice*)
   JMcNair@winston.com
8  WINSTON & STRAWN LLP
   35 W. Wacker Drive
9  Chicago, IL 60601-9703
   Telephone:  (312) 558-5600
10 Facsimile:   (312) 558-5700

11 Attorneys for Plaintiffs
   MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.;
12 MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

13               **UNITED STATES DISTRICT COURT**

14               **CENTRAL DISTRICT OF CALIFORNIA**

15

16 MEDTRONIC, INC.; MEDTRONIC          **Case No.  8:19-cv-02115-DOC-JDE**
17 PUERTO RICO OPERATIONS
   CO.; MEDTRONIC LOGISTICS,
18 LLC; MEDTRONIC USA, INC.,           **PLAINTIFFS' REPLY TO**
                                       **DEFENDANT'S ADDITIONAL**
19                                     **MATERIAL FACTS IN SUPPORT OF**
           Plaintiffs,                 **PLAINTIFFS' MOTION FOR PARTIAL**
20                                     **SUMMARY JUDGMENT**

21      v.
                                       Date:  March 6, 2023
22 AXONICS, INC.,                      Time:  8:30 A.M.
                                       Place: Courtroom 10A
23                                     Judge: Hon. David O. Carter
           Defendant.
24

25                                     REDACTED VERSION OF DOCUMENT
                                       PROPOSED TO BE SEALED
26

27

28

                                     1

Pursuant to Rule 56 of the Federal Rules and Local Rule 56-1 of the District Court for the Central District of California, Plaintiffs Medtronic, Inc; Medtronic Puerto Rico Operations Co.; Medtronic Logistics, LLC; and Medtronic USA, Inc. (collectively, "Medtronic") hereby submit the following reply to Defendant Axonics Modulation Technologies, LLC ("Axonics") additional material facts to Medtronic's statement of uncontroverted facts and conclusions of law.

| **Axonics' Additional Material Facts** | **Medtronic's Reply** |
|---|---|
| 116. The 069 and 758 Patents identify U.S. Pat. No. 5,713,939 to Nedungadi et al. as dated "2/1998."<br><br>069 Patent (Ex. II), p. 2; 758 Patent (Ex. JJ), p. 2. | Undisputed, but immaterial to Medtronic's motion.  Also immaterial since Axonics' expert never cited this date or relied upon this as a prior art date for Nedungadi.<br><br>Dkt. 201-31 [Irazoqui Rpt., 758 Patent Admitted Prior Art Chart]; Dkt. 201-32 [Irazoqui Rpt., 069 Patent Admitted Prior Art Chart]. |
| 117. The 069, 758, and 148 Patents list "PCT Patent Application No. WO 01/83029.  The year of publication matches the first two digits in the number: 2001.<br><br>148 Patent (Ex. KK), Col. 2:4; 069 Patent (Ex. II), Col. 1:60; 758 Patent (Ex. JJ), Col. 2:1. | Undisputed, but immaterial to Medtronic's motion.  Also immaterial since Axonics' expert never cited this date or relied upon this as a prior art date for WO 01/83029.<br><br>Dkt. 201-30 [Irazoqui Rpt., 148 Patent Admitted Prior Art Chart]; |

| | |
|---|---|
| | Dkt. 201-31 [Irazoqui Rpt., 758 Patent Admitted Prior Art Chart]; Dkt. 201-32 [Irazoqui Rpt., 069 Patent Admitted Prior Art Chart]. |
| 118. Axonics' expert Dr. Irazoqui identified portions of the admissions related to Nedungadi for every element of, for example, 148 Claims 6 and 758 Claims 1.<br><br>Medtronic Ex. 33 [Irazoqui Rpt., 148 Patent Admitted Prior Art Chart]; Medtronic Ex. 34 [Irazoqui Rpt., 758 Patent Admitted Prior Art Chart]. | Disputed in part and immaterial since Dr. Irazoqui also identified, in addition to Nedungadi, additional alleged distinct "prior art systems" as part of his alleged "anticipation" charts including citations to the Torgerson reference.<br><br>Dkt. 201-30 [Irazoqui Rpt., 148 Patent Admitted Prior Art Chart], 5-7; Dkt. 201-31 [Irazoqui Rpt., 758 Patent Admitted Prior Art Chart], 5-7; Dkt. 201-32 [Irazoqui Rpt., 069 Patent Admitted Prior Art Chart], 13-14. |
| 119. Axonics' expert Dr. Irazoqui's admitted prior art charts cite and quote the 148, 758, or 069 Patents as containing applicant admissions regarding prior art, and not patents or printed publications.<br><br>Medtronic Ex. 33 [Irazoqui Rpt., 148 Patent Admitted Prior Art Chart]; Medtronic Ex. 34 [Irazoqui Rpt., 758 Patent Admitted Prior | Disputed in part and immaterial. Disputed in that the passages Dr. Irazoqui quotes from the '148, '758, and '069 Patents as containing alleged admissions are ***identical*** to language in the Nedungadi and Torgerson references.  Axonics does not dispute this. |

3

| | |
|---|---|
| Art Chart]; Medtronic Ex. 35 [Irazoqui Rpt., 069 Patent Admitted Prior Art Chart]. | Dkt. 222-2 SUF 83–88 (Axonics' response). |
| 120. Axonics contended that the Nedungadi admission contained in the 148 and 758 Patents at least rendered claims of the 148 and 758, Patents invalid under § 102(f). <br><br> Ex. FF (October 17, 2022, 148 Invalidity Chart) at 5; Ex. GG (October 17, 2022, 758 Invalidity Chart) at 5; Ex. HH (October 17, 2022, 069 Invalidity Chart) at 5. | Disputed in part and immaterial. A simple look at Axonics' discovery responses shows that no evidence has been cited for this alleged "Nedungadi admission." And Axonics' expert has not advanced this theory under 102(f). <br><br> Dkt. 201-30 [Irazoqui Rpt., 148 Patent Admitted Prior Art Chart]; Dkt. 201-31 [Irazoqui Rpt., 758 Patent Admitted Prior Art Chart]; Dkt. 201-32 [Irazoqui Rpt., 069 Patent Admitted Prior Art Chart]. |
| 121. Medtronic contends that Claims 1-11 and 20-24 of the 324 Patent cover all possible physical arrangements of the following claim elements: "primary coil," "housing," "temperature sensor," and "control circuitry." <br><br> 324 Patent (Ex. LL), Claims 1-11, 20-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that the Axonics CD infringes system claims 1, 2, 4, 6-11, 20, 22-24 of the '324 patent, which are silent on any particular physical arrangement of the components. Medtronic does not dispute that the Axonics CD infringes method claims 12, 14, 16, and 17 of the '324 patent, which are silent on any particular physical arrangement of the components. |

4

| | | |
|---|---|---|
| | | Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial.<br><br>Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 122. | Medtronic contends that the claim elements "primary coil," "housing," "temperature sensor," and "control circuitry" for Claims 1-11 and 20-24 of the 324 Patent include within their scope single-enclosure chargers in which all of these elements are in close proximity to each other.<br><br>324 Patent (Ex. LL), Claims 1-11, 20-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that the Axonics CD infringes system claims 1, 2, 4, 6-11, 20, 22-24 of the '324 patent, which are silent on any particular physical arrangement of the components.  Medtronic does not dispute that the Axonics CD infringes method claims 12, 14, 16, and 17 of the '324 patent, which are silent on any particular physical arrangement of the components. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |

| | |
|---|---|
| | Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 123. The claim elements "primary coil," "housing," "temperature sensor," and "control circuitry" for Claims 1- 11 and 20-24 of the 324 Patent are not unclaimed features or improvements.<br><br>324 Patent (Ex. LL), Claims 1-11, 20-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Claim 1 of the '324 patent recites a system comprising, *inter alia* a "primary coil," "housing", "temperature sensor" and "control circuitry," the physical arrangement of which is unclaimed.  Medtronic does not dispute that claims 2, 4, 6, 7-11 depend from claim 1.  Medtronic does not dispute that claim 20 recites, *inter alia,* a "primary coil," "housing," "temperature sensor," and "control circuitry", the physical arrangement of which is not claimed.  Medtronic does not dispute that claims 22-24 depend from claim 20.  Axonics' statement is also immaterial.<br><br>Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. |

PLAINTIFFS' REPLY TO DEFENDANT'S ADDITIONAL MATERIAL FACTS
CASE NO. 8:19-cv-02115-DOC-JDE

| | |
|---|---|
| | 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 124. Medtronic contends that Claims 12-17 and 19 of the 324 Patent cover all possible physical arrangements of the following claim elements: "primary coil," the "housing," and "temperature sensor," as well as "controlling the transfer of energy"<br><br>324 Patent (Ex. LL), Claims 12-17 and 19; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Claims 12, 14, 16, and 17 are method claims that are silent on the physical arrangement of elements. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial.<br><br>Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 125. Medtronic contends that the claim elements "primary coil," the "housing," and "temperature sensor," as well as "controlling the transfer of energy" for Claims 12-17 and 19 of the 324 Patent include within their scope single-enclosure chargers in which all of these | Medtronic does not dispute that the Axonics CD performs the method claimed in Claims 12, 14, 16, and 17 of the '324 patent, which are silent on the physical arrangement of the components.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' |

| | |
|---|---|
| elements are in close proximity to each other.<br><br>324 Patent (Ex. LL), Claims 12-17 and 19; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | CD.  Axonics' statement is also immaterial. |
| 126. The claim elements "primary coil," the "housing," and "temperature sensor," as well as "controlling the transfer of energy" for Claims 12-17 and 19 of the 324 Patent are not unclaimed features or improvements.<br><br>324 Patent (Ex. LL), Claims 12-17 and 19; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Claim 12 of the '324 patent recites a "a method for transferring energy from an external device comprising a housing and a primary coil to an implantable medical device," "providing, a via a temperature sensor of the external device, output indicative of a temperature of the side of the housing," "controlling the transfer of energy from the primary coil to the secondary coil based on the output indicative of the temperature of the side of the housing to limit a temperature to which a patient is exposed during the transfer of energy to the implantable medical device," and claims no physical arrangement of elements. Medtronic does not dispute that |

| | |
|---|---|
| | claims 14, 16, and 17 depend from claim 12.  Axonics' statement is also immaterial.

Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 127. Medtronic contends that Claims 1-7, 16-17, and 22 of the 112 Patent cover all possible physical arrangements of the following claim elements: "external charging device," "sensor," and "control circuit"

112 Patent (Ex. MM), Claims 1-7, 16-17, and 22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Axonics' CD infringes system claims 1, 4, 5, 6, 7, and 22, which are silent on the physical arrangement of elements.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 128. Medtronic contends that the claim elements "external charging device," "sensor," and "control circuit" for Claims 1-7, 16-17, and 22 of the 112 Patent include within their scope single-enclosure chargers in which all of these | Medtronic does not dispute that Axonics' CD infringes system claims 1, 4, 5, 6, 7, and 22, which are silent on the physical arrangement of elements.  Medtronic disputes that the scope of the |

9

| | |
|---|---|
| elements are in close proximity to each other.<br><br>112 Patent (Ex. MM), Claims 1-7, 16-17, and 22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 129. The claim elements "external charging device," "sensor," and "control circuit" for Claims 1-7, 16-17, and 22 of the 112 Patent are not unclaimed features or improvements.<br><br>112 Patent (Ex. MM), Claims 1-7, 16-17, and 22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that claim 1 of the '112 patent recites, *inter alia,* "an external charging device," "a sensor", and "a control circuit" and are silent on the physical arrangement of elements.  Medtronic does not dispute that claims 4, 5, 6, 7 and 22 depend from claim 1.  Axonics' statement is also immaterial.<br><br>Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 130. Medtronic contends that Claim 5 of the 112 Patent covers all possible physical arrangements of the following claim | Medtronic does not dispute that Axonics' CD infringes system claim 5, which is silent on the physical |

| | |
|---|---|
| elements: "external charging device," "sensor," "control circuit," and "primary coil."<br><br>112 Patent (Ex. MM), Claim 5; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | arrangement of elements.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 131. Medtronic contends that the claim elements "external charging device," "sensor," "control circuit," and "primary coil" for Claim 5 of the 112 Patent include within their scope single-enclosure chargers in which all of these elements are in close proximity to each other.<br><br>112 Patent (Ex. MM), Claim 5; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Axonics' CD infringes system claim 5, which is silent on the physical arrangement of elements.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 132. The claim elements "external charging device," "sensor," "control circuit," and "primary coil" for Claim 5 of the 112 Patent are not unclaimed features or improvements.<br><br>112 Patent (Ex. MM), Claims 5; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 732-43, | Medtronic does not dispute that claim 1 of the ''112 patent recites, *inter alia*, "an external charging device," "a sensor," "a control circuit," and is silent on the physical arrangement of elements.  Medtronic does not dispute that claim 5 depends on claim 1 and recites, *inter* |

11

| | |
|---|---|
| 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | *alia*, a "primary coil," and is silent on the physical arrangement of elements.  Axonics' statement is also immaterial. |
| | Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 133. Medtronic contends that the asserted claims of the 148 Patent cover all possible physical arrangements of the following claim elements: "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output."

148 Patent (Ex. KK), Claims 6, 12, 18; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Axonics' CD infringes system claims 6 and 12 of the '148 patent, which are silent on the physical arrangement of elements.  Medtronic disputes that it is possible to claim a physical arrangement of the limitations "wherein said external power source automatically varies..." and "said charging unit automatically varying…" Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |

| | |
|---|---|
| 134. Medtronic contends that the claim elements "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output" for the asserted claims of the 148 Patent include within their scope single-enclosure chargers in which all of these elements are in close proximity to each other.<br><br>148 Patent (Ex. KK), Claims 6, 12, 18; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that the Axonics CD infringes system claims 6, 12, and method claim 18 of the '148 patent, which are silent on the physical arrangement of elements. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 135. The claim elements "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output" are not unclaimed features or improvements.<br><br>148 Patent (Ex. KK), Claims 6, 12, 18; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that system claim 6 recites, *inter alia,* "an external power source", "primary coil," and "said external power source automatically varies its power output..." and is silent on the physical arrangement of elements. Medtronic does not dispute that system claim 12 recites, *inter alia,* "an external power unit," "primary coil," and "said external power source automatically varies its power |

| | |
|---|---|
| | output..." and is silent on the physical arrangement of elements. Medtronic does not dispute that method claim 18 recites, *inter alia,* "primary coil" and "said charging unit automatically varying its power output..." and is silent on the physical arrangement of elements. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| | Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3, '324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4, '112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 136. Medtronic contends that the asserted claims of the 758 Patent cover all possible physical arrangements of the following claim elements: "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output" | Medtronic does not dispute that Axonics' CD infringes system claims 1, 2, 4, apparatus claims 5, 6, 8, and method claims 9, 10, and 12 of the '758 patent, which are silent on the physical arrangement of elements.  Medtronic disputes that the scope of the claimed invention is |

14

| | |
|---|---|
| 758 Patent (Ex. JJ), Claims 1, 2, 4–6, 8–10, and 12; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 137. Medtronic contends that the claim elements "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output" for the asserted claims of the 758 Patent include within their scope single-enclosure chargers in which all of these elements are in close proximity to each other.<br><br>758 Patent (Ex. JJ), Claims 1, 2, 4–6, 8–10, and 12; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Axonics' CD infringes system claims 1, 2, 4, apparatus claims 5, 6, 8, and method claims 9, 10, and 12 of the '758 patent, which are silent on the physical arrangement of elements.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 138. The claim elements "external power source" or "external power unit" or "charging unit," "primary coil," and "automatically [varies/varying] . . . power output" for the asserted claims of the 758 Patent are not unclaimed features or improvements. | Medtronic does not dispute that system claims 1, 2, and 4 recite an "external power source", "primary coil," and "wherein said external power source automatically varies...," and is silent on the physical arrangement of elements. Medtronic does not dispute that |

| | |
|---|---|
| 758 Patent (Ex. JJ), Claims 1, 2, 4–6, 8–10, and 12; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | system claims 5, 6, and 8 recite an "externa power unit", "primary coil", and "wherein said external power source automatically varies...", and is silent on the physical arrangement of elements.  Medtronic does not dispute that method claims 9, 10, and 12 recite a "charging unit", "primary coil", and "said charging unit automatically varying its power output..." and is silent on the physical arrangement of elements.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| | Dkt. 28 ("FAC"), Exs. C (Dkt. 28-3,'324 patent) at Cls. 1–2, 4, 6–12, 14, 16, 17, 20, and 22–24; D (Dkt. 28-4,'112 Patent) at Cls. 1, 4–7, 16–17, and 22; E (Dkt. 28-5, '148 patent) at Cls. 6, 12, and 18; F (Dkt. 28-6, '758 patent) at Cls. 1, 2, 4–6, 8–10, and 12; G (Dkt. 28-7, '069 patent) at Cl. 7. |
| 139. Medtronic contends that the asserted claim of the 069 Patent covers all possible physical arrangements of the following claim elements: "external | Medtronic does not dispute that Axonics' CD infringes claim 7 of the '069 patent, which depends from claim 5.  Medtronic disputes that the |

| | |
|---|---|
| power source," "primary coil," and "automatically varies . . . power output."<br><br>069 Patent (Ex. II), Claim 7; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 140. Medtronic contends that the claim elements "external power source," "primary coil," and "automatically varies . . . power output" for the asserted claim of the 069 Patent include within their scope single- enclosure chargers in which all of these elements are in close proximity to each other.<br><br>069 Patent (Ex. II), Claim 7; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | Medtronic does not dispute that Axonics' CD infringes claim 7 of the '069 patent, which depends from claim 5.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 141. The claim elements "external power source," "primary coil," and "automatically varies . . . power output" for the asserted claim of the 069 Patent are not unclaimed features or improvements.<br><br>069 Patent (Ex. II), Claims 7; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) | Medtronic does not dispute that system claim 5 of the '069 patent recites "an external power source", "a primary coil", and "wherein said external power source automatically varies its power output..." and is silent on the physical arrangement of elements.  Medtronic disputes that |

17

| | |
|---|---|
| at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | the scope of the claimed invention is defined by Axonics' CD. Medtronic does not dispute that Axonics' CD infringes claim 7 of the '069 patent, which depends from claim 5. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. Axonics' statement is also immaterial. |
| 142. The 324, 112, 148, 758, and 069 Patents disclose how to make and use a single embodiment of the asserted claims in which the enclosure with the coil is separated from the enclosure with other electronic components by a length of cable.<br><br>324, 112, 148, 758, and 069 Patents (Exs. LL-II); Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 253-263 (and citations therein). | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. Axonics' statement is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 143. The 324, 112, 148, 758, and 069 Patents did not disclose how to make and use a single-enclosure charger in which there | Disputed. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger |

18

| | |
|---|---|
| is an enclosure containing the coil and all of the rest of the charger electronic components in close proximity.<br><br>324, 112, 148, 758, and 069 Patents (Exs. LL-II); Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 253-263 (and citations therein). | provided opinions that the 324, 112, 148, 758, and 069 Patents disclosed a single-enclosure charger embodiment.  Axonics' statement is also immaterial.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 144. The specification of the 324, 112, 148, 758, and 069 Patents does not contain a disclosure that would enable a person of ordinary skill in the art to make and use such a single-enclosure charging device without undue experimentation.  Therefore, if the claims were found to cover such a charging device, they would fail the enablement requirement because the specification would not enable a person of skill in the art to make and use the full scope of the claim.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 249. | Disputed.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents disclosed a single-enclosure charger embodiment.  Axonics' statement is also immaterial.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 145. Dr. Irazoqui opines that the full scope of the claims of the 324, 112, 148, 758, and 069 patents was not enabled because 324, 112, 148, 758, and 069 Patents do not contain a disclosure that would | Undisputed and immaterial that Dr. Irazoqui provided the recited opinions.  The claims do not recite any physical arrangement of elements. |

19

| | |
|---|---|
| enable a person of ordinary skill in the art to make and use such a single-enclosure charging device without undue experimentation.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 249. | |
| 146. The full scope of the claims of the 324, 112, 148, 758, and 069 patents was not enabled because 324, 112, 148, 758, and 069 Patents do not contain a disclosure that would enable a person of ordinary skill in the art to make and use such a single-enclosure charging device without undue experimentation.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 249. | Disputed and merely legal argument (not a factual statement).  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents disclosed a single-enclosure charger embodiment. Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 147. Medtronic contends that the asserted claims of the 324, 112, 148, 758, and 069 Patents include within their full scope more than the disclosure of a charger with multiple housings connected by a cable.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 249. | This argumentative statement, as phrased, is not comprehensible.  It is unclear what Axonics means for a patent claim to include "more than the disclosure" from (presumably) the specification.<br><br>Medtronic does not dispute that the Axonics CD infringes both the system and method claims of the '324, '112, '148, '758, and '069 |

| | |
|---|---|
| | patents, which are silent on any particular physical arrangement of the components.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 148. Medtronic contends that the asserted claims of the 324, 112, 148, 758, and 069 Patents broadly claim single-enclosure embodiments not enabled in the specification.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 249. | Medtronic does not dispute that the Axonics CD infringes both the system and method claims of the '324, '112, '148, '758, and '069 patents, which are silent on any particular physical arrangement of the components.  Medtronic disputes that single-enclosure embodiments are not enabled in the specification.  Axonics' statement is also immaterial.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1001. |
| 149. Dr. Irazoqui considered two specific examples of embodiments Medtronic contends are within in the scope of the claims, which have different form factors: the Medtronic wireless | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Medtronic does not dispute that Medtronic wireless |

| | |
|---|---|
| recharger and the Axonics wireless recharger.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 249-250, 306-348; e.g., Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | recharger and the Axonics wireless recharger practices one or more asserted claims.  Medtronic disputes that the scope of the claimed invention is defined by the Medtronic wireless recharger or Axonics' CD. |
| 150. The two examples of embodiments Medtronic contends are within the scope of the claims <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 250, 306-348. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Medtronic does not dispute that Medtronic wireless recharger and the Axonics wireless recharger practices one or more asserted claims.  Medtronic disputes that the scope of the claimed invention is defined by the Medtronic wireless recharger or Axonics' CD. |
| 151. Dr. Irazoqui was permitted to consider whether specific examples of actual chargers alleged to infringe or practice the asserted 324, 112, 148, 758, and 069 Patents and whether such chargers were enabled.<br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial. |

| | |
|---|---|
| Rpt.], ¶¶ 250, 306-348. | |
| 152. Dr. Irazoqui opined that it was his "opinion that the specification of the 324, 112, 148, 758, and 069 Patents does not contain a disclosure that would enable a person of ordinary skill in the art to make and use such a single-enclosure charging device without undue experimentation." Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 249-250, 306-348 . | Undisputed and immaterial that Dr. Irazoqui provided the recited opinions. The claims do not recite any physical arrangement of elements. |
| 153. The use of a "external antenna" is separately claimed in unasserted dependent claims 2-3 of the 112 Patent. 112 Patent (Ex. MM), Claims 1, 2-3. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts. It is also immaterial. Medtronic does not dispute that unasserted claim 2 of the '112 patent recites "the system of claim 1, wherein the external charging device comprises an external antenna and wherein the sensor is carried by the external antenna," and claim 3 recites "the system of claim 2, wherein the sensor is thermally-coupled to a surface of the external antenna to |

| | measure a temperature to which a patient is being exposed." |
|---|---|
| 154. Medtronic alleges that the scope of the asserted claims of the 324, 112, 148, 758, and 069 Patents include and are broader than chargers with an "external antenna."<br><br>Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | This argumentative statement, as phrased, is not comprehensible, as there are many asserted claims. Medtronic does not dispute that claim 1 of the '112 patent is broader than its dependent claims 2-3. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 155. Medtronic alleges that scope of the asserted claims of the 324, 112, 148, 758, and 069 Patents include and are broader than chargers with an "external antenna," including because they include within their scope single-embodiment chargers.<br><br>Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46. | This argumentative statement, as phrased, is not comprehensible, as there are many asserted claims. Medtronic does not dispute that claim 1 of the '112 patent is broader than its dependent claims 2-3. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  Axonics' statement is also immaterial. |
| 156. In the 324, 112, 148, 758, and 069 Patents, the "external antenna" contains the primary coil that is connected to the rest of the electronics by a cable: "In a preferred embodiment, external | Medtronic does not dispute that embodiments in the specification recite "In a preferred embodiment, external charging device 48 consists of charging unit 50 and external |

charging device 48 consists of charging unit 50 and external antenna 52. Charging unit 50 contains the electronics necessary to drive primary coil 54 with an oscillating current in order to induce current in secondary coil 34 when primary coil 54 is placed in the proximity of secondary coil 34. Charging unit 50 is operatively coupled to primary coil by cable 56."

antenna 52. Charging unit 50 contains the electronics necessary to drive primary coil 54 with an oscillating current in order to induce current in secondary coil 34 when primary coil 54 is placed in the proximity of secondary coil 34. Charging unit 50 is operatively coupled to primary coil by cable 56." Axonics' statement is also immaterial.



Fig. 3

324 Patent (Ex. LL), Fig. 3, 9:55-62; 112 Patent (Ex. MM), Fig. 3, 9:55-62; 148 Patent (Ex. KK), Fig. 3, 8:23-29; 758 Patent (Ex. JJ), Fig. 3, 8:21-27; and 069 Patent (Ex. II), Fig. 3, 8:6-12.

157. In the 324, 112, 148, 758, and 069 Patents, the temperature sensor is disclosed as adjacent to the coil in the external antenna: "In a preferred embodiment, external charging device 48 incorporates temperature sensor 87 in external antenna 52 and control circuitry

Medtronic does not dispute that the embodiments in the specification recite: "In a preferred embodiment, external charging device 48 incorporates temperature sensor 87 in external antenna 52 and control circuitry in charging unit 50 which

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in charging unit 50 which can ensure that external antenna 52 does not exceed acceptable temperatures, generally a maximum of thirty-eight degrees Centigrade (38° C.)."



Fig. 14

324 Patent (Ex. LL), Fig. 14, 20:4-9; 112 Patent (Ex. MM), Fig. 14, 20:6-11; 148 Patent (Ex. KK), Fig. 14, 18:24-28; 758 Patent (Ex. JJ), Fig. 14, 18:21-25; and 069 Patent (Ex. II), Fig. 14, 18:5-9.

can ensure that external antenna 52 does not exceed acceptable temperatures, generally a maximum of thirty-eight degrees Centigrade (38° C.)."  Axonics' statement is also immaterial.

---

158. Medtronic contends that asserted claims of the 324, 112, 148, 758, and 069 Patents cover more configurations of the claim elements than the specification enables one of skill in the art to make and use.

Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722-25, 1751-54, 1843-46.

Medtronic does not dispute that the Axonics CD infringes both the system and method claims of the '324, '112, '148, '758, and '069 patents, which are silent on any particular physical arrangement of the components.  Medtronic disputes that the specification fails to enable one of skill in the art to make and use single-enclosure chargers and charger housings made of low thermal conductivity materials.

26

|  |  |
|---|---|
|  | Axonics' statement is also immaterial.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 159. The specifications of the 324, 112, 148, 758, and 069 Patents mention but do not describe how to make and use "charging unit 50 and antenna 52 may be combined into a single unit."<br><br>324 Patent (Ex. LL), 9:61-62; 112 Patent (Ex. MM), 9:63-64; 148 Patent (Ex. KK), 8:31-32; 758 Patent (Ex. JJ), 8:28-29; and 069 Patent (Ex. II), 8:13-14. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.   The specifications each state: "In an alternative embodiment, charging unit **50** and antenna **52** may be combined into a single unit."  A person of ordinary skill in the art would understand how to describe how to make and use the alternative embodiment.<br><br>324 Patent (Dkt. 221-37), 9:60-62; 112 Patent (Dkt. 221-38), 9:62-64; 148 Patent (Dkt. 221-36), 8:30-31; 758 Patent (Dkt. 221-35), 8:28-29; and 069 Patent (Dkt.  221-34), 8:13-14.  Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 160. To create a single-enclosure charger with the coil in proximity to other | Disputed as incorrect, irrelevant, lacking foundation, conclusory, |

| | |
|---|---|
| electrical components, one would face a number of very difficult engineering challenges, including parasitic induction, parasitic flux losses, coil optimization and self- resonant frequency, heat management, and interactions between a circuit and the coil. | attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 264-305. | Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |
| 161. Work on ██████████████████ ████████████████████ ████████████████████ ██████ | Disputed as irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. |
| Ex. OO [Gaddam Dep.] at 111:1-12;  Ex. PP [Harper Dep.] at 12:24-13:1 ("████████ ████████████████████ ██████); Ex. QQ [Olson Dep.] at 33:3- 15; Ex. RR MDT-00200151; Ex. SS MDT-00199767 at MDT-00199800;   Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250. | Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 162. The embodiment described in the 324, 112, 148, 758, and 069 Patents is the Restore recharger with a cable connecting two enclosures. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Medtronic does not |
| Ex. QQ [Olson Dep.] at 140:18-24; | |

| | |
|---|---|
| 233:4-13, 239-240; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 307. | dispute that one embodiment described in the '324, '112, '148, '758, and '069 specifications has characteristics similar to the Restore recharger. |
| 163. Before releasing the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮ <br><br>Ex. NN (11/7/22 Mihran Rpt.) at ¶¶ 1083-96, 1280-83, 1497-1507, 1689-92, 1722-25, 1751-54, 1843-46; Ex. PP [Harper Dep.] at 42:5-18, 73:10-16; Ex. TT [Schulzetenberg Dep.] at 72:2-9.; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 308. | Disputed as irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 164. The cable in the Restore and Intellis chargers were ▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮ <br><br>Ex. TT [Schulzetenberg Dep.] at 189:12- 17; Ex. QQ [Olson Dep.] at 58:11-59:22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 309-12. | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. While not relevant to Medtronic's Motion for Summary Judgment, Mr. Schmeling provided other rationales for keeping the coil separate from the rest of the charger. Medtronic objects under FRE 402, 403, 602, 701, 702. |

Mr. Schmeling testified:

|  | Declaration of Brian Nisbet in support of Plaintiffs' Reply in support of Motion for Partial Summary Judgment ("Nisbet Decl."), Ex. 13 (Deposition Transcript of Andrew Schmeling) at 130:24-132:15 |
| --- | --- |
| 165. The named inventor on asserted patents, Mr. David Olson, testified that " ▮▮▮▮ | Undisputed, but immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. |

| | |
|---|---|
| Ex. QQ [Olson Dep.] at 58:11-59:22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 312. | |
| 166. Dr. Irazoqui opined that " | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 312. | |
| 167. The named inventor on asserted patents, Mr. David Olson, testified that | Undisputed but immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. |

Ex. QQ [Olson Dep.] at 235:16-236:1; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 313.

| | |
|---|---|
| 168. Dr. Irazoqui explained that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 314; Ex. QQ [Olson Dep.] at 59:23-60:15. | Undisputed that Dr. Irazoqui provided the recited opinions. Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Disputed as to Axonics' characterization as an "explanation." Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 169. The named inventor on asserted patents, Mr. David Olson, confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ |



| | |
|---|---|
| | Medtronic objects under FRE 402, 403, 602, 701, 702. |
| Ex. QQ [Olson Dep.] at 59:23-60:15; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 314. | |
| 170. Mr. Robert Schulzetenberg testified about | Disputed as to characterization of "significant."  Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Furthermore, Mr. Schulzenberger is a third-party who made it clear he did not have personal knowledge regarding this issue. <br><br> Medtronic objects under FRE 402, 403, 602, 701, 702. |

Ex. TT [Schulzetenberg Dep.] at 52:6-61:17; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 318.

| | |
|---|---|
| 171.Medtronic dedicated ███████ | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Furthermore, Mr. Schulzenberger is a third-party who made it clear he did not have personal knowledge regarding this issue. |
| Ex. TT [Schulzetenberg Dep.] at 52:6-61:17; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 320-21. | Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 172.Dr. Irazoqui opined that ███████ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also |

| | immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 325; Ex. TT [Schulzetenberg Dep.] at 98-99, 136:10-15, 201:5-201:23, 210:3-211:15; Ex. PP [Harper Dep.] at 102:9-104:21; Ex. UU MDT-00773676. | |
| 173. Dr. Irazoqui opined that | Undisputed that Dr. Irazoqui provided the recited opinions, but immaterial and irrelevant. |

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 326-27, 329-31; Ex. UU [Harper Dep. Ex. 5]; Ex. PP [Harper Dep.] at 177:19-178:2, 179:21-180:4. | |
| 174.Medtronic's ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 329; Ex. PP [Harper Dep.] at 176:24-177:1. | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 175.Dr. Irazoqui opined that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 332; Ex. VV [MDT-00740626]; Ex. TT [Schulzetenberg Dep.] at 97:19-110:5, 201:1-202:11; Ex. PP [Harper Dep.] at 44:11-58:21, 81:14-83:3, 169:8- 187:11; Ex. WW [Harper Ex. 10 (AX1179476, AX1179491, AX1179636)]; Ex. XX [Harper Ex. 4 (MDT-00741121)]. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 176.Medtronic's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth |

41

| | |
|---|---|
| ████████████████████<br>████████<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 332-40; Ex. VV MDT- 00740626; Ex. TT [Schulzetenberg Dep.] at 97:19-110:5, 201:1-202:11; Ex. PP [Harper Dep.] at 44:11-58:21, 81:14- 83:3, 169:8-187:11; Ex. WW [Harper Ex. 10 (AX1179476, AX1179491, AX1179636)]; Ex. XX [Harper Ex. 4 (MDT-00741121)]; Ex. OO [Gaddam Dep.] at 271-283. | uncontroverted facts, mischaracterizing the documents.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702.<br><br>Axonics warns, even today, that "use of the Axonics SNM Systems incur risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]"<br><br>Nisbet Decl., Exhibit 2 (Axonics website) |
| 177. Medtronic has known that its ██████<br>████████████████<br>████████████████████<br>████████████████████<br>████████████████<br>██████████<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 333; Ex. ZZ [Bombeck Dep.] 245:22-246:6, 247:3-6; Ex. AAA [Bombeck Ex. 23 (MDT-00528918)]; Ex. BBB [Bombeck Dep., Ex. 28]; Ex. CCC [Bombeck Dep., Ex. 29]. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702.<br><br>Axonics warns, even today, that "use of the Axonics SNM Systems incur |

| | |
|---|---|
| | risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]"<br><br>Nisbet Decl., Ex. 2 (Axonics website) |
| 178. Medtronic's employee Mr. Harper testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 334; Ex. PP [Harper Dep.] at 254:13-17, 250:11-22. | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702.<br><br>Axonics warns, even today, that "use of the Axonics SNM Systems incur risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]"<br><br>Nisbet Decl., Ex. 2 (Axonics website) |



| 179. Medtronic's former employee Mr. Bombeck testified stated in his deposition that in his view if the  <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 335; Ex. ZZ [Bombeck Dep.], 255:13-25, 256:2-8. | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony. It is also immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. <br><br> Axonics warns, even today, that "use of the Axonics SNM Systems incur risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]" Nisbet Decl., Ex. 2 (Axonics website) |
| 180. Dr. Irazoqui opined that his | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony and documents. It is also immaterial. Undisputed that Dr. Irazoqui |



provided the recited opinions, but immaterial and irrelevant.

Axonics warns, even today, that "use of the Axonics SNM Systems incur risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]"

Nisbet Decl., Ex. 2 (Axonics website)

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 335-337; Ex. PP [Harper Dep.] at 94:24-105:12, 104:12-21, 245:2- 246:21; Ex. DDD [Harper Dep., Ex. 12, MDT-00721095 at MDT-00721103, MDT-00721106-07, MDT-00721099]; Ex. EEE [Harper Dep. Ex. 11, MDT- 00721092]; Ex. FFF [AX1178452-AX1178887.

181.Medtronic has

Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 337; Ex. PP [Harper Dep.] at 251:10-24, 253:5-20; Ex. OO [Gaddam Dep.], 277:2-278:1, 275:22-276:5. | mischaracterizing testimony.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702.<br>Axonics warns, even today, that "use of the Axonics SNM Systems incur risks… [that] include, but are not limited to...change in sensation or magnitude of stimulation which has been described as uncomfortable (jolting or shocking) by some patients[.]"<br>Nisbet Decl., Ex. 2 (Axonics website) |
| 182. Dr. Irazoqui opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 342; Ex. GGG [AX0001118]; Ex. HHH [MDT-00650154]. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 183. Medtronic Patent Pub. No. 2021/0194289 stated "For example, U.S. | Undisputed that 2021/0194289 contains the text: "Current wireless |

Pat. No. 9,821,112 to Olson et al. (which is incorporated by reference into this disclosure) describes an example of an external charger having an external antenna with a primary coil separate from a charging unit having electronics and battery to drive the primary coil."

Ex. III [Schulzetenberg Dep., Ex. 16 (Pub. No. 2021/0194289)] ¶ 5.

power chargers may include multiple internal compartments to separate the primary coil from the electronic components and battery. For example, U.S. Pat. No. 9,821,112 to Olson et al. (which is incorporated by reference into this disclosure) describes an example of an external charger having an external antenna with a primary coil separate from a charging unit having electronics and battery to drive the primary coil. Additional components are used in the charger to separate the primary coil from the electronic components and battery, which increases costs and creates a more cumbersome wireless power charger. Simply combining all the elements into a single compartment, however, can create undesirable effects such as loading to the primary coil from conductive elements of printed circuit boards, such as a ground plane, that generates a reflected impedance on the primary coil. For instance, the introduction of a

| | |
|---|---|
| | ground plane in proximity with a primary coil may increase the resistance by a factor of ten leading to significant inefficiencies in power transfer that can increase the length of a recharge session and cause excessive heating of the primary recharger," but immaterial. |
| 184. Medtronic Patent Pub. No. 2021/0194289 stated that the design in the preceding statement "increases costs and creates a more cumbersome wireless power charger."<br><br>Ex. III [Schulzetenberg Dep., Ex. 16 (Pub. No. 2021/0194289)] ¶ 5. | Undisputed that 2021/0194289 contains the text:  "Current wireless power chargers may include multiple internal compartments to separate the primary coil from the electronic components and battery. For example, U.S. Pat. No. 9,821,112 to Olson et al. (which is incorporated by reference into this disclosure) describes an example of an external charger having an external antenna with a primary coil separate from a charging unit having electronics and battery to drive the primary coil. Additional components are used in the charger to separate the primary coil from the electronic components and battery, which increases costs and creates a more cumbersome |

| | wireless power charger. Simply combining all the elements into a single compartment, however, can create undesirable effects such as loading to the primary coil from conductive elements of printed circuit boards, such as a ground plane, that generates a reflected impedance on the primary coil. For instance, the introduction of a ground plane in proximity with a primary coil may increase the resistance by a factor of ten leading to significant inefficiencies in power transfer that can increase the length of a recharge session and cause excessive heating of the primary recharger," but immaterial. |
|---|---|
| 185.Medtronic Patent Pub. No. 2021/0194289 stated the known problems with a single-enclosure charger: "Simply combining all the elements into a single compartment, however, can create undesirable effects such as loading to the primary coil from conductive elements of printed circuit boards, such as a ground plane, that | Undisputed that 2021/0194289 contains the text: "Current wireless power chargers may include multiple internal compartments to separate the primary coil from the electronic components and battery. For example, U.S. Pat. No. 9,821,112 to Olson et al. (which is incorporated by reference into this disclosure) |

49

generates a reflected impedance on the primary coil. For instance, the introduction of a ground plane in proximity with a primary coil may increase the resistance by a factor often leading to significant inefficiencies in power transfer that can increase the length of a recharge session and cause excessive heating of the primary recharger."

Ex. III [Schulzetenberg Dep., Ex. 16 (Pub. No. 2021/0194289)] ¶ 5.

describes an example of an external charger having an external antenna with a primary coil separate from a charging unit having electronics and battery to drive the primary coil. Additional components are used in the charger to separate the primary coil from the electronic components and battery, which increases costs and creates a more cumbersome wireless power charger. Simply combining all the elements into a single compartment, however, can create undesirable effects such as loading to the primary coil from conductive elements of printed circuit boards, such as a ground plane, that generates a reflected impedance on the primary coil. For instance, the introduction of a ground plane in proximity with a primary coil may increase the resistance by a factor of ten leading to significant inefficiencies in power transfer that can increase the length of a recharge session and cause

PLAINTIFFS' REPLY TO DEFENDANT'S ADDITIONAL MATERIAL FACTS
CASE NO. 8:19-CV-02115-DOC-JDE

| | |
|---|---|
| | excessive heating of the primary recharger," but immaterial. |
| 186. Dr. Irazoqui opined regarding the Medtronic Patent Pub. No. 2021/0194289 "this describes how components on the ground plane can interfere and create impedance on the primary coil. This also explains that there can be increased heating, which can arise from the increased resistance on the coil. Additionally, the coil can also create eddy currents in the components on the ground plane, resulting in heating."<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 343. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 187. Medtronic Patent Pub. No. 2021/0194289 states "[t]he recharge coil assembly in the example includes a flat, careless recharge coil on a plastic or insulative bobbin with a flux guide such as a ferrite sheet disposed between the recharge coil and the printed circuit board assemblies" and "[t]he flux guide can include a ferrite sheet that is configured to reduce loading to the recharge coil assembly from the printed | Disputed.   2021/0194289 contains the text: "A disclosed external charger includes a primary coil within the same internal compartment as the electronics and battery. In one example, the charger includes a housing that defines an internal compartment that includes printed circuit board assemblies, a battery, and a recharge coil assembly. The recharge coil |

circuit board assemblies and to amplify magnetic flux towards the implantable medical device during a recharge session."

Ex. III [Schulzetenberg Dep., Ex. 16 (Pub. No. 2021/0194289)] ¶ 6.

assembly can operate as a primary coil to deliver magnetic energy to recharge an energy storage system on an implantable medical device with a corresponding secondary coil. The recharge coil assembly in the example includes a flat, **coreless** recharge coil on a plastic or insulative bobbin with a flux guide such as a ferrite sheet disposed between the recharge coil and the printed circuit board assemblies. The recharge coil assembly also includes a flat telemetry coil that is concentric and coplanar with the recharge coil and spaced-apart from the recharge coil. In one example, the telemetry coil is wound on the plastic bobbin around the outer diameter of the recharge coil. The telemetry coil can exchange communication with the implanted medical device via inductive telemetry using an inductive telemetry protocol such as Telemetry N. The flux guide can include a ferrite sheet that is configured to reduce loading to the

52

| | |
|---|---|
| | recharge coil assembly from the printed circuit board assemblies and to amplify magnetic flux towards the implantable medical device during a recharge session," but immaterial. |
| 188. Medtronic Patent Pub. No. 2021/0194289 states "In addition to the flux guide, the printed circuit board assemblies can be configured and stacked to reduce reflected impedance on the recharge coil assembly. Relays can be applied to the recharge coil and the inductive telemetry coil to decouple the respective tank circuits when inactive to eliminate magnetic coupling between the coils." <br><br> Ex. III [Schulzetenberg Dep., Ex. 16 (Pub. No. 2021/0194289)] ¶ 8. | Undisputed that 2021/0194289 contains the text: "In addition to the flux guide, the printed circuit board assemblies can be configured and stacked to reduce reflected impedance on the recharge coil assembly. Relays can be applied to the recharge coil and the inductive telemetry coil to decouple the respective tank circuits when inactive to eliminate magnetic coupling between the coils," but immaterial. |
| 189.  | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. |

| | |
|---|---|
| ████████████<br>████████████ | Medtronic objects under FRE 402, 403, 602, 701, 702. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 345; Ex. TT [Schulzetenberg Dep.] at 238:5-251:18; Ex. PP [Harper Dep.] at 238:19-244:19; Ex. OO [Gaddam Dep.] at 283:21-294:12 | |
| 190. Dr. Irazoqui opined ████████<br>████████████████████<br>████████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████████<br>████████████████<br>████████████████<br>████████████████<br>████████████████<br>████████████ <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 346. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 191. Mr. Schulzetenberg testified that ████<br>████████████<br>████████<br>████████<br>████████████<br>████████████████ | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |

Ex. TT [Schulzetenberg Dep.] at 249:13-22;
Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui
Rpt.], ¶ 320.

192. Dr. Irazoqui opined ▮▮▮▮▮▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions.

| | |
|---|---|
| ██████████ (redacted) | |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 321; Ex. JJJ [MDT-00152707 (Schulzetenberg Ex. 10)]; Ex. KKK [MDT-00152711]. | |
| 193. Dr. Irazoqui opined ██████████ (redacted) | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 322. | |

| 194. Axonics' charging device is a transcutaneous charger ▮▮▮  Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 348. | Undisputed, but irrelevant, lacking foundation, conclusory, attorney argument.  It is also immaterial. |
| --- | --- |
| 195. The technologies Axonics used in its development of its charging device include at least the following: ▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.<br><br>While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023. |



Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 348.

196. Axonics also ▓▓▓▓

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 348.

Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.

While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.

Dkt. 202-4 (Expert Report of Ronald Berger) ¶¶ 951-1023.

| | |
|---|---|
| 197. Dr. Irazoqui relied on Axonics charger was one example of a product in the alleged scope of the claims that supported his opinion that single-enclosure chargers were not enabled.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 348, 251-252. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.<br><br>This argumentative statement, as phrased, is not comprehensible.  It is unclear what Axonics means "Dr. Irazoqui relied on Axonics charger was one example of a product..."  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |
| 198. Dr. Irazoqui opined that <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 348. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 199. Dr. Irazoqui relied on | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also |

| | |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 251-252, 306. | immaterial.  This argumentative statement, as phrased, is not comprehensible.  It is unclear what Axonics means "Dr. Irazoqui relied on Medtronic's allegedly embodying Thor wireless recharger was one example of a product..."<br><br>Medtronic disputes that the scope of the claimed invention is defined by the Thor wireless recharger. |
| 200. Dr. Irazoqui opines "In my opinion, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 306. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 201. Dr. Irazoqui opined "It is my opinion that the degree of experimentation that would be necessary to make and use a singleenclosure recharger starting from the disclosures of the asserted patents would be excessive and unreasonable. The specifications provide no guidance on how to make and use such a charger. The problems that arise from packaging a primary inductive coil together with | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |

other components such as electronic circuitry and a battery, which I describe in detail below, are inherently unpredictable, and the research and experimentation that would be required to address such problems is far from routine. I support these opinions with my explanation of the scientific and engineering principles involved, and my opinions are further supported by ████████████████████████████████████████████████████████████████████████████████████████████ My opinions are further supported by my consideration and application of the Wands factors, which are also included below." And "I provide below examples from the evidence that I have reviewed and relied upon. I incorporate here the documents cited in Medtronic's response to Interrogatory No. 1 related to embodying products, the documents cited in response to Axonics' response to Interrogatory No. 7 related to invalidity, and the depositions of Venkat

| | |
|---|---|
| Gaddam, Jason Harper, David Olson, Andrew Schmeling, and Robert Schulzetenberg and the exhibits thereto." Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 251-252. | |
| 202. Dr. Irazoqui generally opined that the category of single-enclosure chargers were not enabled. Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 251-252, 306, 348. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Disputed as to "generally opined."  Undisputed that Dr. Irazoqui opined that the specification of the '324, '112, '148, '758, and '069 patents do not enable the Axonics CD and Thor wireless recharger. |
| 203. Dr. Irazoqui opined "As we can see, co-locating circuitry and coil in a single-enclosure is far more complicated than just stuffing two parts in one box." Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 302. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  Undisputed that Dr. Irazoqui provided the recited opinions. |
| 204. There are numerous complex problems that arise from co-locating circuitry and a coil in a single-enclosure. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth |

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 264-305. | uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 205. The quantity of experimentation that would be necessary in order to develop a single-enclosure charger as described above would be extensive.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 351. | Disputed and immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 206. Attempting to design a charger in which the components, including the coil, the battery, and the circuitry, are all contained within a single-enclosure, would implicate numerous technological and physical issues that would require extensive experimentation to solve.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 351; Axonics incorporates AMF 161-193. | Disputed and immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

63



| 207. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 352; Axonics incorporates AMF 161-193, 194-196. | Disputed and immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 208. Even with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 352; Axonics incorporates AMF 161-193. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 209. The experimentation to create a single-enclosure charger would not have been considered routine. <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 355; Axonics incorporates AMF 161-193, 194-196. | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger |

| | |
|---|---|
| | provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 210. Examples of the extensive nonroutine experimentation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 356; Axonics incorporates AMF 161-193. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.   While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 211. The specification of the 324, 112, 147, 758, and 069 Patents contain no guidance that tells a person of skill in the art how to make or use a charging device with all of the components, including the coil, the circuitry, and the battery all contained within a single-enclosure; there is no explanation as to what the challenges would even be, and there is no explanation of how to | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| overcome them; and the only descriptions in the specification relate specifically to embodiments in which the charging coil is separated from the battery and circuitry by a length of cable.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 357; Axonics incorporates AMF 157-159, 162-169. | |
| 212. The single mention of a "charging unit 50 and antenna 52 [that] may be combined into a single unit" does not provide any guidance or teaching as to the structure or arrangement of an embodiment in which the coil, circuitry, and battery are all within a single-enclosure, let alone anything about how to make such an embodiment so that it would actually function or could be made without undue experimentation.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 357; Axonics incorporates AMF 157-159, 162-169. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 213. The specification of the 324, 112, 147, 758, and 069 Patents contain no explanation as to how to design the circuit board, no explanation that one should use a ferrite flux guide, let alone | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.   While not relevant to |

| | |
|---|---|
| how to do so, and there is also no description of how to manage heating in the context of a single-enclosure design.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 357. | the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 214.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 358. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 215.The 324, 112, 148, 758, 069 patents do not provide any disclosure of any working example of a singleenclosure charger, and instead they only disclose a charger in which the coil is separated from the battery and circuitry by a length of wire cable, i.e. a wired design.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 359. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, |

| | 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
|---|---|
| 216. If the claims are found to include within their scope single-enclosure chargers, the nature of the invention shows there were numerous unpredictable problems that needed to be solved to develop a single-enclosure charger and the prior art lacked prevalent examples of single-enclosure chargers indicates.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 361. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 217. For one of ordinary skill, the number of problems that would arise in making a single-enclosure charger significant ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and the ordinary level of skill in the art would not prevent the necessity of undue experimentation.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 362; Axonics incorporates AMF 161-193. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 218. The design of a single-enclosure charger implicates multiple unpredictable factors arising from the varying factors affecting heating and magnetic and | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts.  It is also |

68

| | |
|---|---|
| electrical interference between the charging coil and the other components of the charger, and such unpredictability included the unpredictability of ferrite as a material as this unpredictability would apply to the use of ferrite as a flux guide.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 363; Axonics incorporates AMF 161-193. | immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 219. Medtronic contends that the asserted claims of the 324 Patent cover all possible ways there could be "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing," "providing, via a temperature sensor of the external device, output indicative of a temperature of the side of the housing," or "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing."<br><br>324 Patent (Ex. LL), Claims 1-17, 19-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 368. | Medtronic does not dispute that the Axonics CD infringes system claims 1, 2, 4, 6-11, 20, and 22-24 of the '324 patent, which are silent on the thermal conductivity of the housing material.  Medtronic does not dispute that Axonics' CD infringes method claims 12, 14, 16, 17, which are silent on the thermal conductivity of the housing material.  This is also immaterial. |
| 220. Medtronic contends that the asserted claims of the 112 Patent cover all possible ways there could be a "sensor | Medtronic does not dispute that the Axonics CD infringes system claims 1, 4, 5, 6, 7, and 22 of the '112 |

| | |
|---|---|
| configured to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device" or "sensing, via a sensor, a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device." <br><br> 112 Patent (Ex. MM), Claims 1-7, 16-17, and 22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 368; Medtronic Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | patent, which are silent on the thermal conductivity of the housing material.  Medtronic does not dispute that the Axonics CD infringes method claims 16 and 17 of the '112 patent, which are silent on the thermal conductivity of the housing material.  This is also immaterial. |
| 221. Medtronic contends that the claim elements "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing," "providing, via a temperature sensor of the external device, output indicative of a temperature of the side of the housing," and "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing" for the asserted claims of the 324 Patent include within their scope a temperature sensor to provide an output indicative of the temperature of the side | Medtronic does not dispute that the Axonics CD infringes system claims 1, 2, 4, 6-11, 20, and 22-24 of the '324 patent, which are silent on the thermal conductivity of the housing material.  Medtronic does not dispute that Axonics' CD infringes method claims 12, 14, 16, 17, which are silent on the thermal conductivity of the housing material.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD.  This is also immaterial. |

| | |
|---|---|
| of the housing of a charging device that does not involve the use of a thermally conductive material that is used for the patient contacting side of the device.<br><br>324 Patent (Ex. LL), Claims 1-17, 19-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409; Medtronic Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | |
| 222. Medtronic contends that the claim elements "sensor configured to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device" or "sensing, via a sensor, a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device" for the asserted claims of the 112 Patent include within their scope a temperature sensor to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device that does not involve the use of a thermally conductive material that is | Medtronic does not dispute that the Axonics CD infringes system claims 1, 4, 5, 6, 7, and 22 of the '112 patent, which are silent on the thermal conductivity of the housing material. Medtronic does not dispute that the Axonics CD infringes method claims 16 and 17 of the '112 patent, which are silent on the thermal conductivity of the housing material. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. This is also immaterial. |

| | |
|---|---|
| used for the patient contacting side of the device.<br><br>112 Patent (Ex. LL), Claims 1-7, 16-17, and 22; Medtronic Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | |
| 223. The claim elements "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing," "providing, via a temperature sensor of the external device, output indicative of a temperature of the side of the housing," and "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing" for the asserted claims of the 324 Patent are not unclaimed features or improvements.<br><br>324 Patent (Ex. LL), Claims 1-17, 19-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409; Medtronic Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | Medtronic does not dispute that system claims 1 and 20 of the ''324 patent recite, *inter alia,* "a temperature sensor adapted to provide an output indicative of a temperature of the side of the housing," and are silent on the material of the housing.  Medtronic does not dispute that method claim 12 of the '324 patent recites, *inter alia,* "providing, via a temperature sensor of the external device, output indicative of a temperature of the side of the housing" and is silent on the material of the housing.  This is also immaterial. |
| 224. The Special Master Report and Recommendation on Claim | Undisputed and immaterial. |

| | |
|---|---|
| Construction construes "indicative of" as "serving as a sign of," and the Special Master did not adopt Axonics' proposed construction is "'accurately measuring' the relevant temperature." Objections to the Special Master's Report and Recommendation have been filed, and the Court has not yet ruled on to the parties' objections.<br><br>Special Master Report and Recommendation on Claim Construction (Dkt. No. 163-1) at 41; Axonics' Objections to the Special Master Report and Recommendation on Claim Construction. | |
| 225. The claim elements "sensor configured to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device" or "sensing, via a sensor, a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device" for the asserted claims of the 112 Patent are not unclaimed features or improvements.<br><br>112 Patent (Ex. MM), Claims 1-7, 16-17, and 22. | Medtronic does not dispute that system claim 1 of the '112 patent recites, *inter alia,* "a sensor configured to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable medical device," and is silent on the material of the housing.  Medtronic does not dispute that method claim 8 recites, *inter alia,* "sensing, via a sensor, a temperature indicative of heat resulting from the transcutaneous transfer of energy to the implantable |

| | |
|---|---|
| | medical device," and is silent on the material of the housing.  This is also immaterial. |
| 226. Medtronic's former engineer Mr. Robert Schulzetenberg testified ███████ [redacted] | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 401; Ex. TT [Schulzetenberg Dep.] at 218:9-22. | |
| 227. Medtronic's former engineer Mr. Robert Schulzetenberg testified ███████ [redacted] | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 402; Ex. TT [Schulzetenberg Dep.] at 215:3-218:22.

| | |
|---|---|
| 228. The named inventor on the 324 and 112 Patents Mr. David Olson testified regarding Patent Number 10,971,943: | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It also cites an incorrect effective filing date for the '324 and '112 patents – the correct effective filing date is |



October 2, 2003.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 404; Ex. QQ [Olson Dep.] at 226:6-10, 226:17-23, 227:6-228:2, 228:24-229:7; Ex. LLL [Olson Ex. 12 (Patent Number 10,971,943)].

| | |
|---|---|
| 229. The named inventor on the 324 and 112 Patents Mr. David Olson testified | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony and documents.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 405; Ex. QQ [Olson Dep.] at 89:4-11. | |
| 230. The named inventor on the 324 and 112 Patents Mr. David Olson testified | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is |

also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 408; Ex. QQ [Olson Dep.] at 223:18-225:14.

231. The named inventor on the 324 and 112 Patents Mr. David Olson testified

Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702.

| | |
|---|---|
| Ex. QQ [Olson Dep.] at 219:13-24; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 384. | |
| 232. Dr. Irazoqui relied on ████████ ████████████████ ████████████ ████████████ ██████████████ ████████ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 371-72, 390. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |
| 233. Dr. Irazoqui opined ██████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided |

| | |
|---|---|
| <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 390. | opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Undisputed that Dr. Irazoqui provided the recited opinions. |
| 234. Dr. Irazoqui opined "In addition to the discussions that follow, these opinions are supported by my explanations above regarding the complex and unpredictable nature of external factors in determining the outer temperature of an insulative housing, including environmental factors generally and also in particular the dispersive behavior of | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided |

| | |
|---|---|
| human tissue when exposed to heat." and "I provide below examples from the evidence that I have reviewed and relied upon. I incorporate here the documents cited in Medtronic's response to Interrogatory No. 1 related to embodying products, the documents cited in response to Axonics' response to Interrogatory No. 7 related to invalidity, and the depositions of Venkat Gaddam, Jason Harper, David Olson, Andrew Schmeling, and Robert Schulzetenberg and the exhibits thereto."<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 371-72. | opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Undisputed that Dr. Irazoqui provided the recited opinions. |
| 235. Dr. Irazoqui generally opined that the category of uses of a temperature sensor without a thermally conductive side was not enabled.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 371-72, 390. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

| | |
|---|---|
| | and 069 Patents rebutting Dr. Irazoqui's opinions.<br>Undisputed that Dr. Irazoqui provided the recited opinions. |
| 236. The 324 and 112 Patents disclose how to make and use a temperature sensor with a thermally conductive side of the housing.<br><br>324 and 112 Patents (Exs. LL, MM); Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 372-81 (and citations therein). | Undisputed and immaterial. Medtronic disputes Dr. Irazoqui's opinions cited in support of AMF 236. |
| 237. The 324 and 112 Patents do not disclose how to make and use a temperature sensor without a thermally conductive side of the housing.<br><br>324 and 112 Patents (Exs. LL, MM); Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 372-81 (and citations therein). | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| 238. To whatever extent an asserted claim of the 324 or 112 Patent is found to encompass the use of a temperature sensor to provide an output indicative of the temperature of the side of the housing of a charging device or measure a temperature indicative of heat resulting from the transcutaneous transfer of energy that does not involve the use of a thermally conductive material that is used for the patient contacting side of the device, then the claims are not enabled. The specification does not enable the full scope of such a claim because there is no description in the specification that would enable a person of skill in the art to have a temperature sensor with an output indicative of the temperature of the side of the housing or configured to measure a temperature indicative of heat resulting from the transcutaneous transfer of energy absent the use of such a thermally conductive surface material.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 368. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| 239. Going beyond the use of temperature sensors used with a thermally conductive side of the housing was not disclosed by the 324 and 112 Patents and required undue experimentation.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 382. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 240. Medtronic contends that the asserted claims of the 324 and 112 Patents include within their full scope more than the use of temperature sensors used with a thermally conductive side of the housing.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 365-69; ; Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

85

|  | Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |
|---|---|
| 241. Medtronic contends that the asserted claims of the 324 and 112 Patents broadly claim the use of temperature sensors used with a thermally conductive side of the housing.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 365-69; ; Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.<br>Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |
| 242. The method that Medtronic disclosed in the 324 and 112 Patent was a well-known design that was easy and simplistic.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 383-84. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. |
| 243. One of the named inventors, Mr. Andrew Schmeling confirmed ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is |



also immaterial.  Medtronic objects
under FRE 402, 403, 602, 701, 702.

Ex. MMM [Schmeling Dep.] at 127:19-
128:18; Medtronic Ex. 13 [Nov. 7, 2022,
Irazoqui Rpt.], ¶ 384.

244.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui
Rpt.], ¶ 384.

Disputed as incorrect, irrelevant,
lacking foundation, conclusory,
attorney argument, not setting forth
uncontroverted facts,
mischaracterizing the documents.  It
is also immaterial. While not
relevant to the subject of

| | |
|---|---|
| | Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Undisputed that Dr. Irazoqui provided the recited opinions. |
| 245. A Medtronic internal document stated ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮ Ex. NNN [MDT-00078920 (▮▮▮▮ ▮▮▮▮▮▮); Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 384. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 246. There is no disclosure of what one of ordinary skill should do if the side of the housing is a thermal insulator instead of a thermal conductor. Medtronic's disclosure has no applicability in such a context. Medtronic's design would no | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not |

| | |
|---|---|
| longer work. Materials with low thermal conductivity will not conduct heat well.  the output of that temperature sensor would not indicate in any sense the temperature of the outside of the case. That is because the case is not thermally conductive. The heat on the outside of the case does not readily pass through to the inside of the case, and the heat from the inside of the case does not pass through to the outside of the case. The 324 and 112 Patents provide no guidance on what to do in that scenario. Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 385. | relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 247. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

and 069 Patents rebutting Dr. Irazoqui's opinions.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 385.

248.

Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 387.

| | |
|---|---|
| 249.  | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 387. | |
| 250. Any such estimation described in statement AMF 249 would have | Disputed as incorrect, irrelevant, lacking foundation, conclusory, |

| | |
|---|---|
| required significant and undue experimentation, and the results would be limited to the specific design and environmental conditions at most. There may be circumstances where the estimation would not work at all. There are a number of variables that would require testing, and there would need to be many different tests addressing different scenarios.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 389. | attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 251. Dr. Irazoqui considered a specific example of an embodiment Medtronic contends are within in the scope of the claims:<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br>Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| 252. The examples of an embodiment Medtronic contends is within the scope of the claims ████████ ████████████ ████████ ████████ ████████ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Medtronic disputes that the scope of the claimed invention is defined by Medtronic's wireless recharger. |
| 253. Dr. Irazoqui was permitted to consider whether specific examples of actual chargers alleged to practice the asserted 324 and 112 Patents and whether such chargers were enabled. Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

|  | Undisputed that Dr. Irazoqui provided the recited opinions. |
|---|---|
| 254. The use of "thermally conductive" is separately claimed in unasserted dependent claim 11 of the 324 Patent.<br><br>112 Patent (Ex. MM), Claim 11. | Medtronic does not dispute that unasserted claim 11 of the ''324 patent, which depends from claim 1, recites "the system of claim 1, wherein at least a portion of the side is thermally conductive."  This is also immaterial. |
| 255. [B118] Medtronic alleges that the scope of the asserted claims of the 324 and 112 Patents include and are broader than chargers with a "thermally conductive" side.<br><br>Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390- 409. Axonics incorporates AMF 233, 252, 258-276. | Medtronic does not dispute that Axonics' CD infringes the asserted claims of the '324 and '112 patents, which do not recite a thermal conductivity of the side of the housing.  Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |
| 256. Medtronic alleges that scope of the asserted claims of the 324 and 112 Patents include and are broader than chargers with a "thermally conductive" side, including because they include within their scope chargers without a thermally conductive side.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 368; Ex. 41 (2022-12-18 Irazoqui Rebuttal Rept.) at page 30; Medtronic Ex. 13 | Medtronic does not dispute that Axonics' CD infringes the asserted claims of the '324 and '112 patents, which do not recite a thermal conductivity of the side of the housing.<br>Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |

94

| | |
|---|---|
| [Nov. 7, 2022, Irazoqui Rpt.], ¶¶ 390-409. Axonics incorporates AMF 233, 252, 258-276. | |
| 257. Medtronic contends that asserted claims of the 324, 112, 148, 758, and 069 Patents cover more configurations of the claim elements than the specification enables one of skill in the art to make and use.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 250; *e.g.*, Ex. NN (11/7/22 Mihran Rpt.) at ¶ 52, 279-90, 436-47, 559-70, 732-43, 1083-96, 1689-92, 1722- 25, 1751-54, 1843-46. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.  While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Medtronic disputes that the scope of the claimed invention is defined by Axonics' CD. |
| 258.  | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

| | |
|---|---|
| ████████████ ████████████ ████████████ ████████████ Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 390; Ex. OOO [MDT-00004158 at MDT-00004183-84 (████████ ███████████]. | and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 259. ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 391; Ex. OOO [MDT-00004158 at MDT-00004183-84 █████████████ ██████████████████]. | |
| 260. █████████████████████ █████████████████████ █████████████████████ ████████████████ █████████████████████ █████████████████████ ████████████████ █████████████████████ ████████████ █████████████████████ ████████████ █████████████████████ ███████████████ █████████████████████ █████████████████ █████████████████████ █████████████████ ███████████████ █████████████████████ █████████████████████ █████████████████████ █████████████████████ ████████████████ █████████████████████ █████████████████████ █████████████████████ ████████████ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | | |
|---|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 391; Ex. OOO [MDT-00004158 at MDT-00004183-84 (███████████) | | |
| 261.████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 391; Ex. OOO [MDT-00004158 at MDT-00004183-84 (███████████ ████████████)]. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. | |
| 262.Medtronic's employee Mr. Venkat Gaddam testified: ████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.<br>Medtronic objects under FRE 402, 403, 602, 701, 702. | |



Ex. OO [Gaddam Dep.] at 46:22-47:23;
Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui
Rpt.], ¶ 392.

263.

Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui
Rpt.], ¶ 392.

Disputed as incorrect, irrelevant,
lacking foundation, conclusory,
attorney argument, not setting forth
uncontroverted facts,
mischaracterizing the documents.  It
is also immaterial. While not
relevant to the subject of
Medtronic's Motion for Summary
Judgment, Dr. Berger provided
opinions that the 324, 112, 148, 758,
and 069 Patents rebutting Dr.
Irazoqui's opinions.



| | |
|---|---|
| | Undisputed that Dr. Irazoqui provided the recited opinions. |
| 264. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 393. | |
| 265. Medtronic's employee Mr. Venkat Gaddam testified: <br><br>Ex. OO [Gaddam Dep.] at 67:19-68:2, 69:8-15; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 394. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 266. [B129]<br><br>Ex. OO [Gaddam Dep.] at 67:19-68:2, 69:8-15; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 395. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary |



| | |
|---|---|
| | Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 267. Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 395; Ex. PPP [MDT-00241513 (Schulzetenberg Ex. 7)]. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 268. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth |

| | |
|---|---|
|  Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 396. | uncontroverted facts, mischaracterizing the documents.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 269. Medtronic's former employee Mr. Schulzetenberg testified: <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 396; Ex. TT [Schulzetenberg Dep] at 167:6-11. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 270. <br><br> Ex. QQQ [MDT-00241515] at MDT-00241515-16; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 397. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.  Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 271. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth |



| | |
|---|---|
| | uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 398. | |
| 272. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |

| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 399. | |
|---|---|
| 273. A Medtronic emails stated:  | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. |

| | |
|---|---|
| Ex. RRR [MDT-00766654]; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 400. | |
| 274. <br><br>Ex. TT [Schulzetenberg Dep.] at 218:9-22; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 402. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 275.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 406. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br><br>Medtronic disputes that the scope of the claimed invention is defined by the Medtronic wireless recharger. |



| 276. ▮▮▮▮▮▮▮▮ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 407. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Medtronic disputes that the scope of the claimed invention is defined by the Medtronic wireless recharger. |
| 277. Medtronic's former engineer Mr. Schulzetenberg testified ▮▮▮▮▮▮▮▮ | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. Medtronic objects under FRE 402, 403, 602, 701, 702. |

Ex. TT [Schulzetenberg Dep.] at 190:4-193:4; Ex. JJJ [Schulzetenberg Dep. Ex. 10]; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 407.

| | |
|---|---|
| 278. A named inventor on the asserted patents Mr. David Olson testified | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents, improper lay witness opinion, and mischaracterizing testimony.  It is also immaterial. |



Medtronic objects under FRE 402, 403, 602, 701, 702.



Ex. QQ [Olson Dep.], 223:18-225:14;
Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui
Rpt.], ¶ 408.

279. Medtronic's former engineer Mr.

Schulzetenberg testified

Disputed as incorrect, irrelevant,
lacking foundation, conclusory,
attorney argument, not setting forth
uncontroverted facts,
mischaracterizing the documents,
improper lay witness opinion, and
mischaracterizing testimony.  It is
also immaterial.

Medtronic objects under FRE 402,
403, 602, 701, 702.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Ex. TT [Schulzetenberg Dep.] at 194:13-197:22; Ex. SSS [Schulzetenberg Dep. Ex. 11]; Ex. TTT [Schulzetenberg Dep. Ex. 12]; Ex. UUU [Schulzetenberg Dep. Ex. 13]; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 409. | |
| 280. <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 409. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 281. The quantity of experimentation that would be necessary in order to develop a way to use an internal temperature sensor to provide an output indicative of an outer surface temperature without a thermally conductive material between the two would be extensive.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 411. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

| | |
|---|---|
| | and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 282. If the goal was to replace the thermally conductive material actually disclosed in the 324 patent with a non-thermally conductive material and, ██████ ██████████████████ █████████████ ██████████████████ ████████████ ██████████ this would require study and experimentation in all reasonable operating conditions to determine a range of correlations between measured temperatures and external temperatures as a basis for the required estimation and to develop a thermal transfer function and even then there would be a high probability that it would not provide an indication of the temperature of the side of the housing in any meaningful sense. There is a wide range of different thermal conductivities that will complexly interact with the thermal output of a given charging device to create different, perhaps variable, and | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

perhaps unpredictable relationships between external temperature and internal temperature. These relationships are likely to be dynamic as a function of total heat and not merely instantaneous temperature readings. They are also likely to vary significantly with external environmental factors. While the general principles of thermal conductivity are known, the degree of experimentation to attempt to develop a reliable thermal transfer function would be very high. Not all materials and arrangements of components within a given charging device will be amenable to an accurate estimation that functions adequately in all operating conditions. Therefore, it is also apparent that even for a given design of charger, with a given arrangement of components, the thermal properties could be vastly different depending on the material under consideration. Each time a new candidate material is selected, the process of investigating whether a viable thermal transfer function could be derived would need to begin again.

115

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 411. | |
| 283.  | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 412; Axonics incorporates AMF 236-280, 161, 191. | |
| 284. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

| | |
|---|---|
| ███████████████ ███████████████ ███████████████ Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 412; Axonics incorporates AMF 236-280, 161, 191. | and 069 Patents rebutting Dr. Irazoqui's opinions. Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 285. In order to make and use a charging device using a temperature sensor whose output is indicative of the temperature of the side of the housing without using a thermally conductive material for the part of the enclosure that contacts the patient, even assuming this was possible at all, would require extensive amounts of experimentation and it would be highly likely to end in failure.  Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 413; Axonics incorporates AMF 236-280, 161, 191. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| 286. The experimentation described in statements AMF 281-285 would not have been considered routine.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 414. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 287. It would have been recognized that the degree and sort of experimentation necessary to create an accurate and reliable thermal model of a complex system like a medical implant charger such that the temperature measured inside the charger can accurately be used to help predict outer surface temperature is anything but routine. Even the process of designing a study that would allow an engineering team to characterize such a thermal system in order to determine whether a viable thermal transfer function for that | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

118

| | |
|---|---|
| measurement for that system exists would be highly specific to that exact system design.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 414. | |
| 288. "There are examples of the nonroutine nature of this problem found in <br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 415; Axonics incorporates AMF 236-280. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 289. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, |

| | |
|---|---|
| ████████████████<br>████████████████<br>████████████<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 416; Axonics incorporates AMF 236-280. | mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 290. "[T]he experimentation necessary to find a solution for one system design would not be expected to carry over to another system design. Therefore there would not be a "routine" form of experimentation that an engineering team could fall back on when attempting to characterize the thermal properties of a new system to design a useful thermal transfer function. Rather the characterization would be different and unique to each new candidate system design, with observed properties requiring explanatory hypotheses and tests of those hypotheses unique to the given system, as described above."<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 417. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| 291. The 324 patent specification provides "no guidance at all that tells a person of skill in the art how to make or use a charging device with a temperature sensor without a thermally conductive material that would still provide any indication as to the temperature of the side of the housing. There is no explanation as to what the challenges would even be, and there is no explanation of how to overcome them. The only descriptions in the specification relate specifically to the use of a thermally conductive material in order to allow the internal temperature sensor to accurately measure the temperature of the side of the housing.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 372-81, 418. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 292. The specifications of the 324 and 112 Patents do not describe any working examples of how to use a temperature sensor in a charging device to provide an indication of the temperature of the side of the housing without a thermally conductive material making up the | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of |

| | |
|---|---|
| enclosure wall. The specification's only actual example is a temperature sensor that is assumed to have an output equal to the outer surface temperature because of the thermally conductive nature of the enclosure wall. No example is given of how the temperature sensor could provide an indication of the temperature of the side of the housing without this use of a thermally conductive material, let alone a working example.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 372-81, 418. | Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 293. The problems that would arise— ▆▆▆▆▆ ▆▆▆▆▆▆▆▆—in attempting to develop a transcutaneous charger using a temperature sensor without the thermally conductive material were unpredictable, including with respect to the effects of different materials, different arrangements of design components, effects of time, and environmental and use factors (including also factors imposed by properties of the implant to be charged that are separate from the properties of the charger itself). | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 421; Axonics incorporates AMF 236-280. | |
| 294. While a person of ordinary skill in the art would unquestionably have had the idea to use thermally conductive material so that the output of an internal temperature sensor would provide an indication of the temperature of the side of the housing, performing the level of thermal modeling and experimentation required to implement a thermal transfer function for a given candidate design would be beyond the level of ordinary skill.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 422. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 295. The use of a temperature sensor to provide an output indicative of the temperature of the side of the housing without a way to conduct heat between the side of the housing and the temperature sensor implicates multiple unpredictable factors arising from the varying thermal conductivity of the materials, the thickness of the materials, the heat being generated within the | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, |

| | |
|---|---|
| system, the effect of time, the efficiency of power transfer through the materials both of the charger and of the implant, the environmental factors at play during the charging process, and the relative thermal properties and arrangement of the different components in the charging device.<br><br>Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 423. | and 069 Patents rebutting Dr. Irazoqui's opinions. |
| 296. Axonics proposed the construction for the term "value associated with said current" (148 Patent Claims 6, 12, 18); 758 Patent Claims 1, 2, 4, 5, 6, 8, 9, 10, 12): "Indefinite as applied by Plaintiff in its infringement contentions or 'value proportional to said current'"<br><br>Dkt. 111 [Axonics' Opening Claim Construction Brief] at 18. | Undisputed and immaterial. |
| 297. The specifications' only disclosure of any meaning of the term "value associated with said current" is "an alignment measurement may be made by measuring a value, e.g., current or voltage, *associated with, e.g., proportional to*, the current passing through rechargeable power source 24." | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. |

| | |
|---|---|
| 148 Patent (Ex. KK), 21:3-6; 758 Patent (Ex. JJ), 20:67-21:3; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 428. | |
| 298. Other than the portion of the specification quoted in statement AMF 297, there is no other explanation of what is associated and what is not.<br><br>148 Patent (Ex. KK), 21:3-6; 758 Patent (Ex. JJ), 20:67-21:3; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 428. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial.<br><br>During his deposition, Dr. Irazoqui opined ███████████████.<br><br>Nisbet Decl., Ex. 11, Irazoqui Dep. Tr. at 310:22-311:4 ██████ |

| | |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. *See also id*. at 323:11-324:3. |
| 299. The Special Master declined to construe the term "value associated with said current" and instead applied "plain meaning." <br><br> Dkt. No. 163-1 (R&R) at 74. | Disputed.  The Special Master additionally specifically rejected Axonics' construction of "proportional." |
| 300. Dr. Irazoqui opined in his report "[t]he term 'value associated with' is not a common or ordinarily used term among those that work with implants, in electrical engineering, or in biomedical engineering in my experience, including as of the alleged priority date of the asserted patents. Electrical values are typically—and were at the time of the asserted patents—specified with precision. For example, one of ordinary skill would understand what 'current passing through said internal battery' is. It is an electrical value on a circuit that can be measured. One of ordinary skill would also understand what a value proportional to a given current is. It is an | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| identifiable set of values. However, one of ordinary skill would not understand the scope of the term 'value associated with said current passing through said internal battery.' The boundaries of the term are undefined. There are no objective boundaries. No criteria are provided to distinguish an electrical value that is and that is not 'associated.'" Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 427. | |
| 301. Dr. Irazoqui opined in his report "[t]he claims, specification, and prosecution history do not inform one of ordinary skill with reasonable certainty what the scope of the invention is. Particularly as Medtronic appears to apply this limitation in its March 25, 2022, Disclosure of Infringement Contentions and Asserted Claims ("Plaintiffs' Second Amended Infringement Contentions"), one of ordinary skill cannot determine what the claims cover and what they do not." Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 426. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| 302. Dr. Irazoqui opined in his report "[i]f Axonics' construction of 'proportional' is rejected, the specification provides no meaningful guidance regarding the term 'associated' and its boundaries. The only relevant passage in the specification says: 'Alternatively, an alignment measurement may be made by measuring a value, e.g., current or voltage, associated with, e.g., proportional to, the current passing through rechargeable power source 24.' 148 Patent, 21:4-6. I am not aware of the applicants providing any other guidance or examples. Thus, if the terms used by the applicants in the specification cannot assist in delineating the boundaries of this term, it appears to have no defined boundaries. Instead, if 'e.g.' refers to a genus of potential associations including but not limited to proportional, there is no way to know what such a genus of associations contains." <br><br> 148 Patent (Ex. KK), 21:3-6; 758 Patent (Ex. JJ), 20:67-21:3; Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 428. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. <br><br> Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| 303. Dr. Irazoqui opined in his report "I also note that in the file history of the 069 Patent, which is a parent of the 148 and 758 Patents, the applicant amended claims to remove the term 'associated with' and replace it with the term 'through.' MDT-00000001 at MDT-00000412. The applicant stated: 'Independent claims have been amended solely to clarify the language of the current rather than being 'associated with' the internal power source to the more definite 'through' the internal power source.' Id. The prosecution history further supports my opinion that the claim term including 'associated with' in the context of electrical signals on an implant is indefinite because one of ordinary skill could not determine the scope of the claims. One of ordinary skill would understand the boundaries of a claim related to current 'through' a battery, by contrast." <br><br> Medtronic Ex. 13 [Nov. 7, 2022, Irazoqui Rpt.], ¶ 429; Ex. VVV [MDT-00000001, 069 Prosecution history] at MDT-00000412. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. <br> Undisputed that Dr. Irazoqui provided the recited opinions. |

| | |
|---|---|
| 304. Axonics' expert Dr. Irazoqui offered his opinion supporting Axonics' explanation of why "associated with said current" was indefinite if the one supported construction of "proportional" is not adopted.<br><br>Dkt. No. 113-1 [Confidential Irazoqui Cl. Constr. Decl.] ¶¶ 73-77. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.<br>Undisputed that Dr. Irazoqui provided the recited opinions. |
| 305. Dr. Irazoqui opined in his claim construction declaration "I have reviewed Medtronic's infringement contentions for the asserted claims of the 148 and 758 Patents and certain documents cited therein, and I understand that Medtronic identifies numerous different parameters in Axonics' systems that it contends are values 'associated with' the current passing through the internal battery, | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| ▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ See Ex. 8 (148 Patent, Claim 3); Ex. 24 (758 Patent, Claim 1). I understand Medtronic has now proposed that 'associated with' be construed as 'related to,' and thus would be contending— without explanation— that each of these data are 'related to' the current passing through the internal battery, in that their values have some relationship to the current passing through the internal battery current that is known." Dkt. No. 113-1 [Confidential Irazoqui Cl. Constr. Decl.] ¶ 74. | Undisputed that Dr. Irazoqui provided the recited opinions. |
| 306. Dr. Irazoqui opined in his claim construction declaration "However, in my opinion, under Medtronic's application of this term in its infringement contentions, one of ordinary skill would not have reasonable certainty regarding the scope of the alleged invention. Medtronic's infringement contentions identify a number of parameters, but no association to the current passing through the internal battery. Having | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions. |

| | |
|---|---|
| reviewed Medtronic's contentions, I am aware of no apparent association relating any of the parameters Medtronic identifies with the current passing through the internal battery. | Undisputed that Dr. Irazoqui provided the recited opinions. |





Dkt. No. 113-1 [Confidential Irazoqui Cl. Constr. Decl.] ¶ 75.

| | |
|---|---|
| 307. The opinions that Dr. Irazoqui offered in his report, including opinions in statements AMF 300- 303, are different from the opinions that Dr. Irazoqui offered during claim construction, including opinions in statements AMF 304-306.<br><br>Axonics incorporates AMF 300-306. | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents.  It is also immaterial. While not relevant to the subject of Medtronic's Motion for Summary Judgment, Dr. Berger provided opinions that the 324, 112, 148, 758, and 069 Patents rebutting Dr. Irazoqui's opinions.   Dr. Irazoqui incorporated by reference his claim construction declaration into his |

| | |
|---|---|
| | expert report, and therefore, the opinions are not different. |
| 308. Axonics objected to the Special Master's Report and Recommendation on Claim Construction.<br><br>Dkt. 165 at 19-25. | Undisputed and immaterial. |
| 309. Medtronic's expert Dr. Mihran offered the opinion that ▮▮▮▮▮ reflect heat dissipation caused by the charging current travelling through the battery."<br><br>Ex. NN 11/7/22 Mihran Rpt., ¶ 621. | Undisputed and immaterial. |
| 310. Medtronic's expert Dr. Mihran offered the opinion "there is at least a causal relationship between ▮▮▮▮▮ ▮▮▮▮▮ ."<br><br>Ex. NN [11/7/22 Mihran Rpt.], ¶ 587 (emphasis added). | Undisputed and immaterial. |
| 311. Medtronic's expert Dr. Mihran offered the opinion "▮▮▮▮▮ | Undisputed and immaterial. |

| | |
|---|---|
| ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ .” <br><br> Ex. NN [11/7/22 Mihran Rpt.], ¶ 579 (emphasis added). | |
| 312. Medtronic's expert Dr. Mihran offered the opinion ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ <br><br> Ex. NN [11/7/22 Mihran Rpt.], ¶ 619. | Undisputed and immaterial. |
| 313. Medtronic's expert Dr. Berger opposed indefiniteness at claim construction arguing that "a first value is 'associated with' a second value if the first value is related to the second value," and "[i]f a particular condition or state is determined in part by assessing the voltage or current flowing through the battery, whether or not it involves other measurements or conditional logic, it is 'related to' the current." <br><br> Dkt. No. 139-8 (Berger Declaration), ¶ 39. | Undisputed that Dr. Berger provided a non-limiting example to rebut Dr. Irazoqui's opinion that a binary value cannot be a "value associated with said current," stating: "Dr. Irazoqui's opinion appears to be that a particular binary condition or state (i.e., a condition with only two potential values) cannot be "associated with" the current flowing through an internal battery, and if it is, the term "associated with" has no ascertainable meaning. *Id*. ¶¶ 75. I disagree. A POSITA would have no difficulty understanding the scope of |

135

the term "associated with" in the context of the specification. Specifically, A POSITA reading the specification would understand that a first value is "associated with" a second value if the first value is related to the second value. If a particular condition or state is determined in part by assessing the voltage or current flowing through the battery, whether or not it involves other measurements or conditional logic, it is "related to" the current. The fact that it is set as a binary "state" or "bit" is of no consequence—the term "associated with" does not require a linear relationship, nor does it require that there is a unique value for any given current.

A POSITA reading the specification would understand that the term encompasses any value that is related to the current, including values that are related to the current, whether alone or in conjunction with other values. Thus setting a bit or

136

| | |
|---|---|
| | state based on assessing the voltage (which is related to the current and load of the circuit in normal operation—whether known a priori or measured) means the value of that bit or state is related to current. Put another way, a POSITA would not consider the current through the battery unassociated or disassociated with the binary state merely because the binary state is based on the voltage at the battery terminals." <br><br> Dkt. No. 139-8 (Berger Declaration), ¶ 39; *see also* Dkt. 214-1 (Medtronic's Opposition to Axonics' MSJ), 11; Dkt. 214-2 (Medtronic's Response to Axonics' SUF), SUF 14. |
| 314. The Special Master found Medtronic's expert Dr. Berger's preceding argument persuasive and relied upon it in the R&R on claim construction: "the opinion of Medtronic's expert is persuasive that setting a binary "state" or "bit" can be "associated with" a current . . . ." <br><br> Dkt. No. 163-1 ("R&R") at 71. | Undisputed, but the quote Axonics provided was cut off.  The Special Master found Dr. Berger's argument persuasive in rejecting Dr. Irazoqui's argument that "indicative of" cannot refer to a binary state or condition. The Special Master report and recommendation on claim |

| | |
|---|---|
| | construction stated: "Rather, the opinion of Medtronic's expert is persuasive that setting a binary 'state' or 'bit' can be 'associated with' a current because 'the term 'associated with' does not require a linear relationship, nor does it require that there is a unique value for any given current.'" (Dkt. 139-8, July 15, 2022 Berger Decl. at ¶ 39.)" |
| | Dkt. No. 163-1 ("R&R") at 71. |
| 315. In deposition Dr. Berger confirmed that the statement in AMF 313 was the only example he provided of the meaning of the term "associated" in the claim construction declaration, and when asked "It's the only example you give and it doesn't include temperature; correct?" he responded, "I suppose that's correct."<br><br>Ex. WWW (Berger Dep.) at 102:5-16, 103:24-104:1. | Disputed in that material context has been omitted from Dr. Berger's deposition transcript. Dr. Berger testified as follows:<br><br>"Q. Okay. You don't provide any other examples; right? You don't provide any example of a meaning of associated that does not involve what you describe as determining a state or condition in part by assessing the voltage or current through the battery; true? … **A: I'm not giving other examples there. Doesn't preclude other similar examples of, you know, for instance – I don't take that sentence to be limited to voltage or current.** … Q. In your claim construction declaration, you never suggest that temperature is a value associated with current through the battery; correct? **A. In my claims. construction document, I don't believe I specifically mention temperature. Again, this is going to what the term "associated** |

| | |
|---|---|
| | **with" means, not enumerating all the different things** that can be associated with all the **different things. I'm explaining what the term "associated with" means.** … Q. Again, I'm just asking what you opinions you provide. You don't offer that opinion in your claim construction declaration; true? … **A: I don't -- I don't list all the different things that could be associated with all the different things, but there's nothing in my claims construction that's limited to the example I give.** … Q. It's the only example you give and it doesn't include temperature; correct? **A. I suppose that's correct. I could have -- in explaining associated with, I surely could have picked terms, parameters that have nothing to do with batteries, currents, voltages, temperatures, but I picked two particular parameters as an example to explain the term "associated with."**<br><br>Dkt. 216-5 (Berger Dep. Tr.) at 101:16–104:7. |
| 316. Minutes later when Dr. Berger was asked "Do you know the answer to the question what it means for power level to be determined by assessing current through the battery or voltage?" he responded "I -- I believe determined by in part is a term that I don't understand. Okay," and then Dr. Berger followed up by stating "I'm not trying to be difficult here. You're introducing a term that I honestly don't understand." | Disputed in that material context has been omitted from Dr. Berger's deposition transcript. Dr. Berger testified as follows in response to questions from Axonics' counsel:<br><br>"Q. I'm asking you whether you're aware of any opinion that you provide where it is determined what the power level is, even in part, by assessing voltage or current through the battery? Do you understand my question? I'm not using the word "associated" in my question. I'm using the word "determined." Do you understand the difference? **A. No, I'm not sure I do because you say determined by in part. I don't know that I understand what that means, determined by in part. If that's --** |

| | |
|---|---|
| 1 | |
| 2 | Ex. WWW (Berger Dep.) at 108:19-109:2. |

**if that is to say, well, when one varies, the other varies in a way that they're associated, if that's what the determined by in part means, well, then I'm going to take that to mean same thing as associated with. But if you can define it as distinct from associated with, then you'll have to explain that to me.** Q. So you don't know what it means for -- you don't know what it would mean for power level to be determined in part by assessing voltage or current through the battery? … Q. Do you know -- do you know what that means? **A. No. No, I don't think so. If you're saying it's different from associated with, then I don't know what it means. I'm sorry.** Q. Do you know what it means, period? Do you know the answer to the question what it means for power level to be determined by assessing current through the battery or voltage? **A. I believe determined by in part is a term that I don't understand. Okay.** Q. Okay. **A. I'm not trying to be difficult here. You're introducing a term that I honestly don't understand.** Q. You don't -- you honestly don't understand -- you -- okay. **A. Well, the fact that we're distinguishing it from associated with, I don't understand that difference.** Q. I'm not distinguishing anything. I'm just asking you questions about your opinions. Do you offer an opinion -- I mean, I take it you do not offer the opinion that power level is determined in part or in whole by assessing current through the battery or voltage; is that fair? That's not your opinion? … **A: I think that the power level is related to the voltage and current on the battery and other factors as well. And if that's consistent with the definition of determined by, then, yes, I do -- I do believe that it's determined by, in part, the voltage and current on the battery.** Q. Do you believe that it's a determined - - do you offer the opinion – listen to my question carefully and include all the

140

|  |  |
|---|---|
|  | words, okay, in how you process your answer to it, okay. Do you offer the opinion in your expert report that power level is determined in part or in whole by assessing -- by assessing voltage or current flowing through the battery according to the asserted patents? … **A: I'm not sure I offer that opinion in the report if that's distinct from associated with.** Q. So, in your opinion, asserting that -- asserting that power level is determined in part by assessing voltage or by assessing current through the battery means the same thing as saying power level is associated with current through the battery; is that true? … **A: I was really asking you that question. You're introducing a term. You know, I think that associated with has a plain and ordinary meaning, but apparently that was something that was disputed, and there was a whole claims construction process where a special master had to provide an opinion. You're asking me if I think that 7 determined and part is something that's clear and clean. I think we would – I think we should go get that special master on the phone and ask him that question is that the same thing as associated with. I do not know what definition you have for that."** <br><br> Dkt. 216-5 (Berger Dep. Tr.) at 107:13–111:13. |
| 317. In deposition, Medtronic's expert Dr. Mihran stated "So, yeah, there are limits, but if you are asking me to try to articulate exactly what that boundary is, it's not something that I was asked to do or needed to do for this analysis." | Disputed in that material context has been omitted from Dr. Mihran's deposition transcript. Dr. Mihran testified as follows: <br><br> ██████████████████████ <br> ███████████████████ <br> ██████████████████████ |

| Ex. XXX [Mihran Dep.] at 333:4-23. | |
|---|---|
| | Dkt. 214-4 (Mihran Dep. Tr.) at 333:4–23. |
| 318. John Swoyer, a former executive at Greatbatch/Nuvectra who was the designer of the finned lead (and a named inventor on Medtronic's Tined Lead patents to which the finned lead is a non-infringing alternative), testified that the finned lead was "ready for approval by the FDA" and "suitable for its intended purpose."<br><br>Ex. B (Swoyer Dep. at 67-68, 89, 95-96) | Disputed as incorrect, irrelevant, lacking foundation, improper lay witness opinion, and mischaracterizing Mr. Swoyer's testimony.  It is also immaterial.<br><br>Mr. Swoyer testified:<br><br>Q.  Did you believe, as an engineer who had designed and developed the finned lead, that it was suitable and ready for approval by the FDA for use in sacral neuromodulation?<br>　　MR. MCNAIR:  Objection. Calls for expert testimony.  Vague.<br>　　THE WITNESS:  So as I stated, I -- I don't believe I saw the final submission, so I don't know exactly if everything was |

142

| | completed. But as far as I know, it was, and it was suitable for its intended use. |
|---|---|
| | Dkt. 222-4, (Swoyer Dep. Tr.) at 89:7-89:17. |
| | Medtronic objects under FRE 402, 403, 602, 701, 702. |
| 319. Studies performed by experienced physicians demonstrated that the finned lead would provide safe and effective fixation in tissue, superior to the Medtronic tined leads.<br><br>Exs. C (Swoyer Dep., Ex. 7) and D (Swoyer Dep., Ex. 8). | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial.<br><br>As explained in Medtronic's reply, these "studies" do not establish anything at all about the finned lead, let alone that they are superior to Medtronic's tined lead in anyway. Nisbet Decl., Ex. 9 (Davis Dep. Ex. 10); Nisbet Decl. Ex. 10 (Davis Dep Ex. 11). ███████████████ ███████████████ ███████████████ ███████████████<br><br>Nisbet Decl., Ex. 14 (AX0395905). |

| | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
|---|---|
| 320. ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ <br><br> Ex. E (MDT-00513785 at 788). | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the documents. It is also immaterial. <br><br> Dkt. 222-5 (MDT-00513785 at 788) ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪. Nisbet Decl., Ex. 4, Bombeck Dep. Tr. at (217:13-218:3) ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ |



| | Medtronic objects under FRE 402, 403, 602, 801, 802. |
|---|---|
| 321. In June 2014, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Ex. F (AX0872772) | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>As explained in Medtronic's reply, it is undisputed that the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Dkt. 222-2 at SUF 18-21.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 322. John Swoyer, a former executive at Greatbatch/Nuvectra who was the designer of the finned lead (and a named inventor on Medtronic's Tined Lead patents to which the finned lead is a non-infringing alternative), testified that | Disputed as incorrect, irrelevant, lacking foundation, conclusory, attorney argument, not setting forth uncontroverted facts, mischaracterizing the evidence. |

145

| | |
|---|---|
| he had no reason to believe that it would be too costly for Greatbatch to manufacture commercial quantities of the finned lead design for Axonics, and he was not "aware of any technical reason" Greatbatch would not have the manufacturing capabilities to manufacture the lead in commercial quantities.<br><br>Ex. B (Swoyer Dep.) at 90-91, 109-110. | As discussed in Medtronic's reply, Mr. Swoyer was not involved in the regulatory approval process for Nuvectra's finned lead device.<br><br>Further, Mr. Swoyer testified:<br><br>Q.  Okay.  Thinking back to the discussions between Greatbatch and Axonics in 2014, given the size of Greatbatch and its design, development and manufacturing capacities, do you have any reason to think that Greatbatch could not have supplied Axonics with your finned lead for sacral neuromodulation and the associated toolkit to implant it in commercial quantities?<br>A.  I am not aware of any technical reason why they couldn't have.  I have no idea what their manufacturing capacity was at the time.<br><br>Dkt. 222-4, (Swoyer Dep. Tr.) at 109:20-110:5.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 323. In its 2015 10- K report, Greatbatch stated that it manufactured medical device products and components including stimulation leads, for many "large multi-national OEMS and their subsidiaries," including Medtronic. | Disputed as irrelevant, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial. |

| | |
|---|---|
| Ex. I (Swoyer Dep., Ex. 9 ("Greatbatch, Inc. Form 10-K for the Fiscal Year Ended January 2, 2015")) at 7-8, 10. | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 324. As of 2015, Greatbatch had "high productivity manufacturing capabilities [located] . . . in Tijuana, Mexico, Beaverton, OR, Plymouth, MN, Minneapolis, MN, Ft. Wayne, IN, Indianapolis, IN, Alden, NY, Clarence, NY, Raynham, MA, Chaumont, France, and . . . Montevideo, Uruguay," and it had nearly 2000 employees devoted to manufacturing practices in the U.S.<br><br>Ex. I (Swoyer Dep., Ex. 9 ("Greatbatch, Inc. Form 10-K for the Fiscal Year Ended January 2, 2015")) at 9, 13 | Disputed as irrelevant, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 702, 801, 802. |
| 325. Medtronic's asserted damages period starts in December 2019, and Axonics made F15 actually available on the market during the damages period.<br><br>Ex. S (McDuff Dep.) at 154:22-155:10. | Disputed as incomplete.  The F15 became available in April 2022. |
| 326. In the first full quarter of sales, Q2 2022, the quantity of R15 systems Axonics sold is ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮<br><br>Ex. S (McDuff Dep.) at *Id.* at 165:23-166:12. | Disputed as irrelevant, and mischaracterizes the evidence. It is also immaterial.<br><br>For example, before Axonics launched its F15 product, Medtronic launched InterStim X, which is a |

| | |
|---|---|
| | competing, long lasting, recharge free product, that impacted InterStim Micro sales.  Dkt. 201-16 (12/16/22 Davis Rep.) at 25, 83.  Medtronic objects under FRE 402, 403, 602, 702, 801, 802. |
| 327. ██████████████ ██████████ ████████ ████████████████ ██  Ex. T (MDT-00106194) at 197. | Disputed as irrelevant, lacking foundation, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.  Dkt. 222-19 (MDT-00106194) at 197 is not a Medtronic statement, nor does it show Medtronic's knowledge that Axonics was developing F15 product.  Medtronic objects under FRE 402, 403, 602, 702, 801, 802. |
| 328. Axonics possessed the know-how, experience and materials to develop and obtain regulatory approval for F15 before December 2019. | Disputed as irrelevant, incorrect, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial. |

| | |
|---|---|
| Ex. M (Abdeen Decl.) at ¶ 10-16; Ex. G (12/16/22 Davis Rpt.) at 89, 132; Ex. J (12/16/2022 Irazoqui Rpt.), ¶¶ 81-85. | There is no record evidence that Axonics possessed the know-how, experience, and materials to develop and obtain regulatory approval for F15 before December 2019.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 (Abdeen Decl.) under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 329. By mid-2016, Axonics had developed its rechargeable device.<br><br>Ex. M (Abdeen Decl.) at ¶ 2; Abdeen Decl. Ex. A (AX0741336-340) and Ex. N (AX0949546-549). | Disputed as irrelevant and mischaracterizing the evidence.  It is also immaterial.<br><br>Axonics had no commercially available rechargeable device in mid-2016.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |

| | |
|---|---|
| | Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 330. The components that Axonics placed into F15 that are different than the components in the then existing rechargeable product in mid-2016 were available in mid-2016.<br><br>Ex. M (Abdeen Decl.) at ¶ 15; Ex. EE (AX1165713-AX1165746) (Titles: 2022 Seminar Series, Redefining Recharge-Free, The Axonics F15.pptx). | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.<br><br>There is no record evidence supporting Axonics' speculation. Dkt. 222-26 is a 2022 marketing document that does not show any components available in mid-2016. If anything it shows the opposite in describing its NexCore technology as "state of the art" in 2022.  Dkt. 222-26 at 19.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as |

150

| | |
|---|---|
| | being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 331. Had Axonics attempted to produce F15 before December 2019, it could have created a device with off the shelf battery and other components.<br><br>Abdeen Decl. ¶ 15; Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 81-84; Ex. X (AX5004513) at 515-517; Ex. G (12/16/22 Davis Rpt.) at 89, 132. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>There is no record evidence that Axonics could have created a device with off the shelf battery and other components.  Indeed, both Axonics and Medtronic did not release a small long-lasting, recharge free device until spring 2022.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |

| | |
|---|---|
| 332. Medtronic has not adduced a single fact that shows that Axonics was not able to develop F15 starting in mid-2016,<br><br>Medtronic's Motion for Partial Judgment passim. | Disputed as irrelevant, incorrect, incomplete, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>It is not Medtronic's burden to adduce facts that Axonics was not able to develop the F15 starting in mid-2016. Indeed, there is no evidence that Axonics could have developed the F15 starting in mid-2016.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 333. Medtronic did not ask any Axonics witness to confirm or deny whether Axonics had know-how, experience, or materials to develop F15 before December 2019.<br><br>Depositions of Axonics' witnesses; Medtronic's Motion for Partial Summary Judgement passim. | Disputed as irrelevant, incorrect, incomplete, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>Axonics did not produce a single technical or development document regarding the F15 and long maintained that the F15 was irrelevant to the case. Nisbet Decl., |

| | |
|---|---|
| | Ex. 7, 6/22/22 Axonics Resp. to Rog 1 at 10-11.  Axonics did not disclose its contention that it could have developed the F15 before December 2019 until after the close of fact discovery.  Nisbet Decl., Ex. 18, (10/17/22 Axonics Resp. to Rog. 8); Nisbet Decl., Ex. 8 (9/16/22 Axonics Resp. to ROG 13); Dkt. 201-16, (12/16/22 Davis Rep.) at 89. Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 334. In mid-2016, Axonics had only one product. Ex. M (Abdeen Decl.) at ¶ 2; Abdeen Decl. Ex. A (AX0741336-340) and Ex. N (AX0949546-549). | Disputed as irrelevant, incorrect, incomplete, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial. Axonics had no product on sale anywhere in the world in mid-2016. Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, |

| | |
|---|---|
| | 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 335. If Axonics had been told that it was not allowed to put on the market its one and only rechargeable product, Axonics would have been singularly focused on developing an alternative product rather than exit the market.<br><br>Ex. M (Abdeen Decl.) at ¶¶ 1-16. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>There is no record evidence to support Axonics' speculation.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 336. During F15 development, the company was also working on the existing rechargeable product improvements and sustaining projects.<br><br>Ex. M (Abdeen Decl.) at ¶ 10; Abdeen Decl. Ex. C (AX0744636, titled | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial. |

| | |
|---|---|
| "ProjectStatusDashboard 1-3-2019.xlsx New Projects tab"). | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 337. If Axonics could have focused on developing F15 only instead of working on additional projects in parallel, this would have sped up the development process significantly.<br><br>Ex. M (Abdeen Decl.) at ¶ 12. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>This is pure speculation and not supported by any record evidence.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |

| | |
|---|---|
| 338. Mr. Abdeen, one of Axonics' lead engineers who worked on the F15 development and who has been working as a software engineer at Axonics since 2014, confirmed that had Axonics started developing F15 in mid-2016, it would have developed it in time for, and likely even before, December 2019. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial. |
| Ex. M (Abdeen Decl.) at ¶ 11; Ex. J (12/16/22 Irazoqui Rpt.) at ¶ 84; Ex. X (AX5004513) at 515-517; Ex. G (12/16/22 Davis Rpt.) at 89, 132. | There is no record evidence to support this speculation.

There is no record evidence to support the speculative assertion that Axonics could have developed a product that it was not able to release in the real world until 2022, even before it launched the accused products in 2019.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |

| | |
|---|---|
| 339. Both Axonics' technical expert, Dr. Irazoqui, and damages expert, Ms. Davis, confirmed these facts with Mr. Abdeen in conversations that supported their opinions about F15 as an available alternative.<br><br>Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 81-84; Ex. G (12/16/22 Davis Rpt.) at 89, 132. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>The fact that Axonics' experts talked with Mr. Abdeen has no bearing on any issue in the case.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 340.  | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>There is no record evidence to support this speculation.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |



Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26.

Ex. M (Abdeen Decl.) at ¶¶ 8-9. Ex. J at ¶¶ 60-61, 79 (12/16/22 Irazoqui Rpt.) (

); Ex. G at 79-80 (12/16/22 Davis Rpt.)

); Ex. AA (1/5/2023 Irazoqui Rpt.), ¶¶ 159, 199.

341.

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.



Ex. M (Abdeen Decl.) at ¶ 9; Ex. K (12/12/2022 Abdeen Dep.) at 290:2-5; Ex. O (10/13/2022 Abdeen Dep.) at 6:5- 6; Ex. J at ¶¶ 60-61, 79 (12/16/22 Irazoqui Report) (▮▮▮▮▮▮▮▮▮▮▮); Ex. G at 79-80 (Davis Report 2022.12.16) (▮▮▮▮▮▮▮▮ Ex. AA (1/5/2023 Irazoqui Rpt.), ¶¶ 159, 199.

There is no record evidence to support this speculation.  The testimony cited in Dkt. 222-10 (Ex. K) and Dkt. 222-14 (Ex. O) only establish that Mr. Abdeen has been employed by Axonics since 2014 and was ▮▮▮▮▮▮ ▮▮▮▮ in 2022.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26.

342. ▮▮▮▮▮▮▮▮

Disputed as irrelevant, incorrect, incomplete, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.

| | |
|---|---|
| Ex. M (Abdeen Decl.) at ¶¶ 2, 9; Abdeen Decl. Ex. A (AX0741336-340) and Ex. N (AX0949546-549). | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 343. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.<br><br>Ex. R (AX1334204-208); Ex. BB AX5000200-201 (▮▮▮▮▮▮▮▮▮); Ex. YYY AX1309789-796 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.<br>Ex. AA (1/5/2023 Irazoqui Rpt.), ¶¶ 96-116. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>In its most recent correspondence, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Axonics, including information needed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 222-17.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |

160



344. ▮▮▮▮▮▮▮▮▮▮

$12,510,280 Axonics spent on R&D during 2016, ▮▮▮▮▮▮▮▮

Ex. G (12/16/2022 Davis Rpt.) at 80-81; Ex. Y, AX5002778 (Axonics' SEC Form-1) at 797.

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

345. ▮▮▮▮▮▮▮▮▮▮

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.

There is no record evidence these devices would have been available.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403,

| | |
|---|---|
| ████████████<br>████████████<br>████████████<br>████████████<br>████████<br><br>Ex. K (12/12/2022 Abdeen Dep.), at 334:5-7, 314:14-25, 315:1-8; Ex. M (Abdeen Decl.) at ¶¶ 4, 8; Ex. J (12/16/2022 Irazoqui Rpt.) at ¶¶ 60-61, 79. | 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 346. ████████████<br>████████████<br>████████.<br><br>Ex. M (Abdeen Decl.) at ¶ 8. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>Axonics had no commercially available product anywhere in the world.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |

| | |
|---|---|
| 347. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. M (Abdeen Decl.) at ¶ 8; Ex. J (12/16/22 Irazoqui Rpt.) at ¶ 60; Ex. G (12/16/22 Davis Rpt.) at 79. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.

There is no record evidence to support this speculation.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 348. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. M (Abdeen Decl.) at ¶¶ 6, 8; Ex. G (12/16/22 Davis Rpt.) at 81. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.

There is no record evidence to support this speculation. |

| | |
|---|---|
| | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 349. <br><br>Ex. M (Abdeen Decl.) at ¶ 8; Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 61, 79; Ex. G (12/16/22 Davis Rpt.) at 79. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 350. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth |

| | |
|---|---|
| Ex. M (Abdeen Decl.) at ¶ 8; Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 61, 79; Ex. G (12/16/22 Davis Rpt.) at 79-80. | uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>Axonics has no record evidence to support this speculation.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 351.<br><br>Ex. M (Abdeen Decl.) at ¶ 9. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, |

| | |
|---|---|
|  | 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 352. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.
|
| Ex. M (Abdeen Decl.) at ¶ 9; Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 61, 79. | There is no record evidence to support this speculation.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 353. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial. |

| | |
|---|---|
| ████████████████ ████████. Ex. M (Abdeen Decl.) at ¶ 6; Ex. G (12/16/22 Davis Rpt.) at 80. | Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 354. ████████████████ ████████████████ ██████████ ██████████ ████████████████ ██████████ Ex. M (Abdeen Decl.) at ¶ 9; Ex. J (12/16/22 Irazoqui Rpt.) at ¶¶ 61, 79; Ex. G (12/16/22 Davis Rpt.) at 79-80. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>There is no record evidence to support this speculation.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |

355. 

10/13/2022 Abdeen Dep., *passim*, and 12/12/2022 Abdeen Dep., *passim*.

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted, mischaracterizing the evidence. It is also immaterial.

Axonics did not disclose its contention that it █████████ ████████████████████████ ██████████ until after the close of fact discovery and after Mr. Abdeen had been deposed.  Nisbet Decl., Ex. 18, (10/17/22 Axonics Resp. to Rog. 8); Nisbet Decl., Ex. 8 (9/16/22 Axonics Resp. to ROG 13); Dkt. 201-16, (12/16/22 Davis Rep). at 79-80.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26.



356. [redacted]

Ex. M (Abdeen Decl.) at ¶ 6.

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.

These devices are not FDA approved and cannot be used anywhere in the United States.  Dkt. 222-17.

Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.

Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26.

357. [redacted]

Ex. M (Abdeen Decl.) at ¶ 7.

Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.

169

| | |
|---|---|
| | There is no record evidence to support this speculation.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 358. ▓▓▓▓▓▓▓▓▓▓<br><br>Ex. M (Abdeen Decl.) at ¶ 6. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>These devices are not FDA approved and cannot be used anywhere in the United States.  Dkt. 222-17.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802.<br><br>Specifically, Medtronic objects to Dkt. 222-12 under FRE 402, 403, |

170

| | |
|---|---|
| | 602, 701, 702, 801, 802, as well as being untimely and in violation of Federal Rule of Civil Procedure 26. |
| 359. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓<br><br>Ex. ZZZ, Defendant Axonics, Inc.'s Tenth Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories (Interrogatory No. 11) at 99-103. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓<br><br>Ex. ZZZ, Defendant Axonics, Inc.'s Tenth Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories (Interrogatory No. 11) at 99-103. | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence. It is also immaterial.<br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 361. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, |

| | |
|---|---|
| Ex. ZZZ, Defendant Axonics, Inc.'s Tenth Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories (Interrogatory No. 11) at 102:14-25. | mischaracterizing the evidence.  It is also immaterial.<br><br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| 362, ███████████ | Disputed as irrelevant, incorrect, incomplete, lacking foundation, hearsay, conclusory, not setting forth uncontroverted facts, mischaracterizing the evidence.  It is also immaterial.<br><br><br>Medtronic objects under FRE 402, 403, 602, 701, 702, 801, 802. |
| Ex. ZZZ, Defendant Axonics, Inc.'s Tenth Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories (Interrogatory No. 11) at 101:11-102:25, 99:1-2. | |

Dated:  February 20, 2023

WINSTON & STRAWN LLP

By:  /s/ *Nimalka Wickramasekera*

Nimalka Wickramasekera
George C. Lombardi
Brian Nisbet
J.R. McNair

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC
PUERTO RICO OPERATIONS CO.;
MEDTRONIC LOGISTICS, LLC;
MEDTRONIC USA, INC.