1  Nimalka Wickramasekera (SBN: 268518)
   NWickramasekera@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue
3  Los Angeles, CA 90071-1543
   Telephone:   (213) 615-1700
4  Facsimile:    (213) 615-1750

5
   George C. Lombardi (*pro hac vice*)
6  GLombard@winston.com
   Brian Nisbet (*pro hac vice*)
7  BNisbet@winston.com
   J.R. McNair (*pro hac vice*)
8  JMcNair@winston.com
   WINSTON & STRAWN LLP
9  35 W. Wacker Drive
   Chicago, IL 60601-9703
10 Telephone:   (312) 558-5600
   Facsimile:    (312) 558-5700
11
12
   Attorneys for Plaintiffs
13 MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.;
   MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.
14

15                UNITED STATES DISTRICT COURT

16        FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18 MEDTRONIC, INC.; MEDTRONIC          Case No. 8:19-cv-02115-DOC-JDE
   PUERTO RICO OPERATIONS CO.;
19 MEDTRONIC LOGISTICS, LLC;           **MEMORANDUM OF POINTS AND**
   MEDTRONIC USA, INC.,                **AUTHORITIES IN SUPPORT OF**
20                                     **PLAINTIFFS' MOTIONS *IN LIMINE***
              Plaintiffs,
21                                     **Judge: Hon. David O. Carter**
          v.                           **Courtroom: 10 A**
22                                     **Pretrial Conf.: Aug. 1, 2023**
   AXONICS MODULATION                  **Time: 8:30 a.m.**
23 TECHNOLOGIES, INC.,

24            Defendant.
                                       **REDACTED VERSION OF**
25                                     **DOCUMENT FILED**
                                       **CONDITIONALLY UNDER SEAL**
26

27

28

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...................................................................................... iii

I.      MIL 1: Any evidence and argument related to Axonics' antitrust complaint ......................... 1

II.     MIL 2: Any assertion that Medtronic is a "monopolist" or that it intentionally delayed incorporating its rechargeable technology into its SNM product ............................................... 2

III.    MIL 3: Any assertion that Axonics' product is clinically superior ......................................... 5

IV.     MIL 4: Any evidence or argument on Medtronic's motivation to file suit, or the consequences of a finding in Medtronic's favor ...................................................................... 6

V.      MIL 5: Any evidence or argument that Axonics does not infringe, or did not willfully infringe, because it has issued patents or licensed patents ........................................................ 8

VI.     MIL 6: Any evidence or argument relating to disclaimed opinion of counsel defense .......... 13

VII.    MIL 7: Any reference to Wells Fargo report on the strength of Medtronic's case ............... 14

VIII.   MIL 8: Evidence or argument that Medtronic's InterStim Shocks Patients .......................... 16

IX.     MIL 9: Evidence or argument that Medtronic copied Axonics' technology .......................... 17

X.      MIL 10: Any reference to the financial condition of either party ......................................... 18

XI.     MIL 11: Argument Concerning Equitable and Legal Defenses Decided by The Court ......... 19

XII.    MIL 12: Any Evidence or Argument Based on Inflammatory Statements in Medtronic Documents About Axonics ...................................................................................................... 20

XIII.   MIL 13: Evidence or argument based on documents produced after discovery ................... 21

XIV.    MIL 14: Evidence or argument that non-public or draft documents reflect the Precision, BION, or EON Systems ........................................................................................................... 22

XV.     MIL 15: Any evidence or argument that Axonics does not infringe because its product lacks features from the patent specification or Medtronic's embodying products ................ 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*999 v. C.I.T. Corp.*,
   776 F.2d 866 (9th Cir. 1985) ....................................................................19

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
   265 F.3d 1294 (Fed. Cir. 2001)...................................................................9

*Advanced Respiratory, Inc. v. Electromed, Inc.*,
   2003 WL 25674810 (D. Minn. June 27, 2003)..........................................12

*Apple Inc. v. Samsung Elecs. Co.*,
   258 F. Supp. 3d 1013 (N.D. Cal. 2017) .....................................................15

*Axonics, Inc. v. Medtronic, Inc., et al.*,
   Case No. 8:22-cv-00309-DOC-JDE (C.D. Cal.), Dkt. 65 (Order Staying
   Proceedings, entered July 7, 2022) ..............................................................1

*Barabin v. Albany Int'l Corp.*,
   2009 WL 10725367 (W.D. Wash. Sep. 18, 2009).......................................4

*In re Bard IVC Filters Prods. Liab. Litig.*,
   2018 WL 4279834 (D. Ariz. Sep. 7, 2018)..................................................8

*Belmont Textile Mach. Co. v. Superba, S.A.*,
   48 F. Supp. 2d 521 (W.D.N.C. 1999) ........................................................14

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996).....................................................................9

*Bombardier Rec. Prods. v. Arctic Cat Inc.*,
   785 Fed. App'x 858 (Fed. Cir. 2019)........................................................20

*Brown v. Sierra Nev. Mem'l Miners Hosp.*,
   849 F.2d 1186 (9th Cir. 1988) .....................................................................1

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   2020 U.S. Dist. LEXIS 206777 (C.D. Cal. Jan. 17, 2020) ........................19

*Cameco Indus., Inc. v. Louisiana. Cane Mfg., Inc.*,
   1995 WL 468234 (E.D. La. July 27, 1995) ..................................................9

*Candle Corp. v. Boole & Babbage*,
   1985 WL 1087794 (C.D. Cal. July 24, 1985) ..............................................3

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
    2021 U.S. Dist. LEXIS 252721 (C.D. Cal. Oct. 26, 2021) ...................................................15

*Checkpoint Sys. v. All-Tag Security S.A.*,
    858 F.3d 1371 (Fed. Cir. 2017) .........................................................................................7

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ...........................................................................................13

*Chiron Corp. v. Genentech, Inc.*,
    268 F. Supp. 2d 1126 (E.D. Cal. 2002) ..............................................................................23

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001) ...........................................................................................13

*Cottrell v. Greenwell*,
    2022 WL 288191 (W.D. Ky. Jan. 31, 2022) .......................................................................19

*Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*,
    2020 WL 7040643 (S.D. Ohio Dec. 1, 2020) ......................................................................1

*Custom Hardware Eng'g & Consulting, Inc. v. Dowell*,
    2013 WL 451649 (E.D. Mo. Feb. 6, 2013) .........................................................................2

*Doe v. Reddy*,
    2004 WL 5512966 (N.D. Cal. Mar. 24, 2004) .....................................................................24

*Droplets, Inc. v. Yahoo! Inc.*,
    2022 WL 2670188 (N.D. Cal. Feb. 28, 2022) .....................................................................9

*Dubric v. A Cab, LLC*,
    2017 WL 662487 (D. Nev. Feb. 16, 2017) ..........................................................................19

*Emblaze Ltd. v. Apple Inc.*,
    2015 WL 396010 (N.D. Cal. Jan. 29, 2015) ........................................................................9

*Farouk Sys. v. Chi Nail Franchises, LLC*,
    2015 WL 12781705 (C.D. Cal. Nov. 19, 2015) ...................................................................22

*Finjan, Inc. v. Sophos, Inc.*,
    2015 WL 7075573 (N.D. Cal. Nov. 13, 2015) .....................................................................7

*Freeman v. Ethicon, Inc.*,
    2022 WL 3147615 (C.D. Cal. Mar. 24, 2022) .....................................................................21

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    2008 WL 928496 (N.D. Cal. Apr. 4, 2008) .........................................................................7

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
    820 F.2d 1209 (Fed. Cir. 1987) .........................................................................................20

*Georges v. Novartis Pharm. Corp.*,
  2013 WL 5217198 (C.D. Cal. Apr. 4, 2013) ........................................................................8

*Glaxo Wellcome, Inc. v. Andrx Pharm., Inc.*,
  344 F.3d 1226 (Fed. Cir. 2003) ........................................................................................10

*GPNE Corp. v. Apple Inc.*,
  108 F. Supp. 3d 839 (N.D. Cal. 2015) ..............................................................................20

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*,
  1995 WL 338181 (N.D. Cal. Feb. 7, 1995) .........................................................................3

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ..........................................................................................21

*In re Indep. Serv. Orgs. Antitrust Litig.*,
  203 F.3d 1322 (Fed. Cir. 2000)...........................................................................................3

*Interactive Health LLC v. King Kong USA, Inc.*,
  2008 WL 8793640 (C.D. Cal. July 24, 2008) ...................................................................10

*Ioengine, LLC v. Paypal Holdings, Inc.*,
  2022 WL 2800911 (D. Del. June 15, 2022).......................................................................18

*Jamesbury Corp. v. Litton Indus. Prods., Inc.*,
  756 F.2d 1556 (Fed. Cir. 1985)...........................................................................................4

*United States ex rel. Ji v. Pac. Chem. Int'l*,
  2018 WL 6163114 (C.D. Cal. Sep. 24, 2018)...................................................................15

*Johnson & Johnson Assoc. Inc. v. R.E. Service Co., Inc.*,
  285 F.3d 1046 (Fed. Cir. 2002).................................................................................17, 25

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
  2015 WL 12683971 (C.D. Cal. June 25, 2015) ................................................................20

*Kimes v. Univ. of Scranton*,
  2016 WL 1274134 (M.D. Pa. Apr. 1, 2016) .......................................................................2

*In re Larsen*,
  10 F. App'x 890 (Fed. Cir. 2001) .....................................................................................20

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019)...........................................................................................7

*Marten v. Montana*,
  2019 WL 4753249 (D. Mont. Sep. 30, 2019) ...................................................................24

*Medical Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
  2011 WL 1898600 (S.D. Cal. May 19, 2011) ...................................................................16

*Miller Indus. Towing Equip., Inc. v. NRC Indus.*,
    582 F. Supp. 3d 199 (D.N.J. 2022) ........................................................................9

*Mitchell v. N.Y. Life Ins. Co.*,
    2021 WL 4535345 (C.D. Cal. June 23, 2021) ........................................................1

*Mooney v. Roller Bearing Co. of Am., Inc.*,
    601 F. Supp. 3d 881 (W.D. Wash. 2022) ...............................................................4

*Natural Pack, Inc. v. Syndicate Sales, Inc.*,
    2022 WL 4120164 (S.D. Ind. Sep. 9, 2022) ...........................................................4

*Negrete v. Allianz Life Ins. Co.*,
    2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) ..........................................................8

*Novo Nordisk A/S v. Becton Dickinson and Co.*,
    304 F.3d 1216 (Fed. Cir. 2002)...............................................................................4

*Ormco Corp. v. Align Tech.*,
    2009 WL 10668458 (C.D. Cal. May 12, 2009) .....................................................20

*Palantir Techs. Inc. v. Abramowitz*,
    2022 WL 16744377 (N.D. Cal. Nov. 7, 2022) ........................................................7

*Patent Holder, LLC v. Lone Wolf Distribs.*,
    2018 WL 4643059 (D. Idaho 2018).......................................................................20

*Peterson v. Evergreen Trans, Inc.*,
    2023 WL 1965691 (D. Nev. Feb. 13, 2023) .........................................................19

*Pinkette Clothing v. Cosmetic Warriors*,
    2017 WL 10434404 (C.D. Cal. Jan. 20, 2017) .....................................................22

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004, 1019 (Fed. Cir. 2008)...................................................................19

*Rebolledo v. Herr-Voss Corp.*,
    101 F. Supp. 2d 1034 (N.D. Ill. 2000) ...................................................................8

*Rock River Communs., Inc. v. Universal Music Grp., Inc.*,
    730 F.3d 1060 (9th Cir. 2013) ...............................................................................14

*Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*,
    884 F. Supp. 31 (D. Mass. 1995) ..........................................................................14

*Samsung Elecs. Co., Ltd. v. NVIDIA Corp.*,
    2016 WL 754547 (E.D. Va. Feb. 24, 2016)............................................................7

*SEC v. Goldstone*,
    2016 WL 3654273 (D.N.M. June 13, 2016) ..........................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
   2012 WL 3560811 (D. Mass. Aug. 17, 2012) ................................................................2

*St. Jude Med., Inc. v. Access Closure, Inc.*,
   2012 WL 12919321 (W.D. Ark. June 4, 2012) ...................................................8, 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003)................................................................................................19

*Sumrall v. Ensco Offshore Co.*,
   2018 WL 2224074 (S.D. Miss. May 15, 2018) .....................................................22

*Two-Way Media LLC v. AT&T Operations, Inc.*,
   No. SA-09-CA-00476-OLG, Dkt. 501 (W.D. Tex. Feb. 27, 2013).........................9

*Ultratec, Inc. v. Sorenson Communs., Inc.*,
   2014 WL 4829173 (W.D. Wis. Sep. 29, 2014)......................................................18

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
   2022 WL 15792838 (D. Or. Oct. 28, 2022) ............................................................2

*United States v. Carter*,
   2012 U.S. Dist. LEXIS 25611 (E.D. Cal. Feb. 28, 2012).......................................15

*United States v. Iruke*,
   544 Fed. Appx. 663 (9th Cir. 2013).........................................................................1

*Vargas v. Cty. of L.A.*,
   2023 WL 2266114 (C.D. Cal. Feb. 27, 2023)........................................................24

*Vital Pharm. v. PhD Mktg.*,
   2022 WL 2284544 (C.D. Cal. Apr. 15, 2022) .......................................................14

*Walker v. Charter Communs. LLC*,
   2019 WL 4601833 (D. Nev. Sep. 23, 2019) .........................................................18

*Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*,
   2011 WL 6300796 (D. Nev. Dec. 15, 2011).................................................1, 4, 17

*Yeu v. Kim*,
   1991 WL 142608 (Fed. Cir. 1991)..........................................................................13

*Zimmer Surgical v. Stryker Corp.*,
   2019 WL 9171205 (D. Del. Mar. 13, 2019) .........................................................18

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................21

Fed. R. Civ. P. 37 ............................................................................................................21

Fed. R. Evid. 401 ...............................................................................................6, 16, 18

Fed. R. Evid. 401(a)-(b) .........................................................................................20

Fed. R. Evid. 402 ........................................................................................... *passim*

Fed. R. Evid. 403 ........................................................................................... *passim*

Fed. R. Evid. 602 .............................................................................................14, 15, 23

Fed. R. Evid. 702 .......................................................................................14, 15, 16, 23

Fed. R. Evid. 802 ...........................................................................................14, 15, 16

https://ir.axonics.com/news-releases/news-release-details/axonicsr-responds-patent-
    action-medtronic ....................................................................................................3, 6, 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE

Medtronic respectfully moves *in limine* ("MIL")[1] to exclude the following at trial:

## I.    MIL 1: Any evidence and argument related to Axonics' antitrust complaint

Under Rules 402 and 403, Axonics should be precluded from mentioning the stayed[2] antitrust allegations contained in its Amended Answer and Counterclaims (Dkt. 80-2) to the jury. Axonics' stayed complaint alleges that Medtronic made false statements about Axonics' products and batteries, and unlawfully attempted to establish a monopoly in the market for sacral neuromodulation (SNM). Dkt. 80-2 ¶¶ 123-198. These allegations, and any evidence allegedly supporting them, are irrelevant to the issues the jury must decide and would unfairly prejudice Medtronic and confuse and mislead the jury. "Irrelevant evidence is not admissible" and should be excluded because it "has no 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" FRE 402; *United States v. Iruke*, 544 Fed. Appx. 663, 666 (9th Cir. 2013). Accordingly, "evidence of [a] claim should be excluded to the extent the evidence is irrelevant to [a party's] remaining claims." *Mitchell v. N.Y. Life Ins. Co.*, 2021 WL 4535345, at *2 (C.D. Cal. June 23, 2021); *see Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, 2020 WL 7040643, at *3 (S.D. Ohio Dec. 1, 2020) ("evidence offered to support a claim not at issue is irrelevant"). Even if relevant, it may be excluded "if its probative value is substantially outweighed by the danger of . . . confusing the issues, misleading the jury, [or] undue delay[.]" FRE 403. A court may also exclude evidence "that 'was only slightly relevant, if at all, [if] that was clearly collateral to the central issues of the trial.'" *Brown v. Sierra Nev. Mem'l Miners Hosp.*, 849 F.2d 1186, 1191 (9th Cir. 1988).

Axonics alleges, for example, that Medtronic made "false and misleading statements about the safety and reliability of the Axonics System's rechargeable battery and the prevalence and likelihood of patients needing to have the Axonics System explanted." Dkt. 80-2 ¶ 140, *id.* ¶ 64. Even if true, which they are not, Axonics' assertions would not tend to prove or disprove any claim or defense and should be excluded. "Courts in the Ninth Circuit routinely grant motions *in limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *Wells Fargo Bank, N.A. v. LaSalle*

---

[1] All exhibits are to the Declaration of Brian J. Nisbet filed concurrently herewith. Unless noted, all emphasis is added and internal citations and quotations omitted.

[2] *See Axonics, Inc. v. Medtronic, Inc., et al.*, Case No. 8:22-cv-00309-DOC-JDE (C.D. Cal.), Dkt. 65 (Order Staying Proceedings, entered July 7, 2022).

1  *Bank Nat'l Ass'n*, 2011 WL 6300796, at *1 (D. Nev. Dec. 15, 2011). Further, Axonics' counterclaims

2  are currently stayed, so mentioning Axonics' unsupported arguments, and any evidence in support,

3  would waste time and confuse the jury. *See Kimes v. Univ. of Scranton*, 2016 WL 1274134, at *2

4  (M.D. Pa. Apr. 1, 2016) (excluding evidence regarding previously dismissed claims under FRE 403

5  in part because such evidence was "apt to confuse the jury"). Courts routinely exclude evidence that

6  only supports stayed or dismissed claims that are no longer relevant to the litigation. *See Unigestion*

7  *Holding, S.A. v. UPM Tech., Inc.*, 2022 WL 15792838, at *4 (D. Or. Oct. 28, 2022) (excluding

8  evidence only relevant to stayed counterclaims); *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 2012

9  WL 3560811, at *1 (D. Mass. Aug. 17, 2012) (excluding evidence or argument relevant only to

10  dismissed counterclaims); *Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, 2013 WL 451649,

11  at *3 (E.D. Mo. Feb. 6, 2013) ("Defendants shall neither argue nor present any evidence in opening

12  statement or at any other time throughout the proceedings that relates to the dismissed

13  Counterclaims."). Accordingly, Axonics should be barred from referring to its antitrust counterclaim

14  and any evidence allegedly supporting such assertions.

15  **II.    MIL 2: Any assertion that Medtronic is a "monopolist" or that it intentionally delayed incorporating its rechargeable technology into its SNM product**

16

17  As it did in its stayed antitrust complaint (*see* fn.2, *supra*), Axonics suggested during summary

18  judgment (*see* Dkt. 222) that it will tell the jury that Medtronic is a monopolist, and that Medtronic

19  deliberately failed to innovate because it received recurring revenue from its SNM products without

20  needing to improve them. *See* Dkt. 222-1, at 6. These assertions, and any evidence allegedly supporting

21  them, are irrelevant, unduly prejudicial, and legally and factually wrong. Under Rules 402 and 403,

22  this Court should exclude any assertion by Axonics that Medtronic is an unlawful "monopolist" or

23  delayed incorporating its rechargeable technology into SNM as part of a nefarious business strategy.

24  Axonics has accused Medtronic of holding an unlawful monopoly and failing to innovate as a

25  result. In response to Medtronic filing its complaint in 2019, Axonics CEO Raymond Cohen publicly

26  stated that "[i]t is ironic that the largest medical device company in the world, with over a 20-year

27  long monopoly in the SNM market, failed to introduce any meaningful innovation for the sake of

28

patients or their physician customers."[3] Axonics alleged the same in briefing. In its Opposition to Medtronic's Motion for Partial Summary Judgment, Axonics stated, citing no record evidence, that "Medtronic enjoyed a monopoly for years while its patients . . . were forced to get needless surgery after needless surgery because Medtronic offered only non-rechargeable SNM implants that were not compatible with certain MRI scans." Dkt. 222-1, at 6. Axonics' witnesses made similar claims in depositions, including Mr. Cohen and Axonics' CFO, Dan Dearen, both of whom will be trial witnesses. *See*, *e.g.*, Ex. 1, Cohen Dep. Tr. at 170:20-172:13; Ex. 2, Dearen Dep. Tr. at 49:13-20; 59:2-6; 69:12-18; 96:7-9; 97:22-98:9; 109:23-110:4; 131:18-132:1; 147:18-23; 152:4-9; 154:9-13; 158:25-159:3; 181:1-7; 255:15-22. These baseless claims are irrelevant and should not be permitted at trial. *See Candle Corp. v. Boole & Babbage*, 1985 WL 1087794, at *3 (C.D. Cal. July 24, 1985) ("Although the term 'patent monopoly' has found its way into legal parlance, it has been recognized that such a description 'is irrelevant when considering patent questions.'").

It is fundamental that "[a] patent gives the owner of the patent the right to exclude others from making, selling, or using an item within the scope of that patent." *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*, 1995 WL 338181, at *5 (N.D. Cal. Feb. 7, 1995). The right holds even in the face of antitrust laws. *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1325 (Fed. Cir. 2000). ("[A]ntitrust laws do not negate the patentee's right to exclude others from patent property."). Thus, any hint that Medtronic maintained an ***illegal*** monopoly when it had enforceable patent rights should not be allowed at trial. *Id*. ("The commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist."). Further, Axonics' baseless claims, if made in front of a jury, would unduly prejudice Medtronic. *Candle Corp.*, 1985 WL 1087794, at *3. Both this Court and the Federal Circuit recognize the prejudicial impact of the word "monopoly" in patent cases. *Id.* ("The Federal Circuit has also recognized that use of 'monopoly' in the context of patent disputes has the potential to exert a prejudicial effect because of the pejorative connotations associated with the term."). Indeed, words like "monopoly" and "monopolist" are confusing and inflammatory, as they improperly suggest wrongdoing by Medtronic

---

[3] https://ir.axonics.com/news-releases/news-release-details/axonicsr-responds-patent-action-medtronic

1    in enforcing its rightfully obtained patent privileges. For this reason, "[the Federal Circuit] has

2    disapproved of a challenger's characterization of a patentee by the term 'monopolist,' which is

3    commonly regarded as pejorative." *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1559

4    (Fed. Cir. 1985) (noting the Federal Circuit's disapproval extends even to bench trials).

5         Axonics also baselessly claims that Medtronic, due to its monopoly, failed to incorporate its

6    rechargeable technology into its SNM product to drive revenue by "forc[ing patients] to get needless

7    surgery." Dkt. 222-1, at 6. Axonics intends to inflame the jury by alleging that Medtronic's alleged

8    monopolistic bad acts harmed "largely women, middle-aged and older, suffering from incontinence."

9    Dkt. 222-1, at 6. This is unsupported, inflammatory, and irrelevant. This allegation, divorced from the

10   facts, has no bearing on whether Axonics infringed the asserted patents, whether the asserted patents

11   are valid, or whether Medtronic has been damaged. "Courts in the Ninth Circuit routinely grant

12   motions in *limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue."

13   *LaSalle Bank*, 2011 WL 6300796, at *1. Such comments that bear no relevance to the present patent

14   dispute are widely disapproved. *See*, *e.g.*, *Barabin v. Albany Int'l Corp.*, 2009 WL 10725367, at *12

15   (W.D. Wash. Sep. 18, 2009) (excluding "comments designed to inflame the jury"); *Mooney v. Roller

16   Bearing Co. of Am., Inc.*, 601 F. Supp. 3d 881, 889 (W.D. Wash. 2022) (admonishing counsel to avoid

17   "impermissible comment calculated to incite the jury"); *Natural Pack, Inc. v. Syndicate Sales, Inc.*,

18   2022 WL 4120164, at *2 (S.D. Ind. Sep. 9, 2022) (excluding statements that "inflame the jury and

19   appeal to the emotions, prejudices, and biases of jurors."). The Federal Circuit has long recognized

20   that such highly prejudicial language must be excluded. *See Novo Nordisk A/S v. Becton Dickinson

21   and Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) ("Inflammatory insinuations . . . are improper[.]").

22        To allow Axonics to introduce these allegations and arguments—as it has done repeatedly in

23   depositions, including two weeks ago—would force Medtronic to explain how and why Medtronic's

24   business units are structured and funded, how it allocates resources among business units, and how

25   the neuromodulation business unit responsible for SNM, among other therapies, had to re-allocate

26   resources

27

28

4



10    Not only is this inflammatory, but it is also a

11    waste of time and irrelevant to the issue of Axonics taking Medtronic's patented rechargeable

12    technology and incorporating it into its SNM device. At bottom, Axonics' "monopoly" or "failure to

13    innovate" arguments are contrary to law, do not tie to resolving the issues relevant to the jury, will

14    confuse the jury, waste time, and are prejudicial.

15    **III.    MIL 3: Any assertion that Axonics' product is clinically superior**

16    Under Rules 402 and 403, this Court should exclude any assertion by Axonics that its SNM

17    products are clinically superior to Medtronic's InterStim products, which Axonics has done using

18    unsupported fact and expert opinion testimony. For example, Axonics damages expert Dr. Julie Davis,

19    who has no technical qualifications (Dkt. 185-8, at 24), opined: "[n]ot only do the accused products

20    offer features and benefits that were not previously available to consumers, but it appears that the

21    accused products have better efficacy as well." Ex. 11, 12/16/22 Davis Rpt. at 63 (citing the

22    unsupported and unqualified "personal opinion" of Axonics fact witness Prabodh Mathur who could

23    point to no "document that shows that Axonics is superior to the Medtronic InterStim"); Ex. 4, 8/19/22

24    Mathur Dep. Tr. 184:12-186:25. Axonics' CFO Dan Dearen, who also has no technical qualifications,[4]

25    similarly provided the unqualified opinion that "if [Axonics'] product was not superior or was not seen

26    as superior in its features and benefits by physicians, we would have zero sales." Ex. 2, Dearen Dep.

27    Tr. at 173:2-4. And Axonics' expert Mr. Benjamin Pless opined that there is "substantial evidence that

28    ---
[4] Ex. 2, Dearen Dep Tr. at 14:9-20

Axonics sought, in its development of its lead, to overcome known shortcomings of the Medtronic tined lead, particularly around evidence that the lead was prone to fracture," but provided no reliable evidence that the Axonics device did, in fact, overcome any alleged shortcomings. Ex. 12, 12/16/22 Pless Rpt. ¶ 55. These unqualified, unsupported, and unreliable statements are substantially more prejudicial than probative, and will confuse and mislead the jury. Moreover, whether Axonics' product is clinically superior to or an improvement over Medtronic's product does not excuse infringement. FRE 401, 402, 403.

Further, Axonics has no evidence to support any assertion that its products are, in fact, improvements: Axonics' SNM products are not indicated as superior to Medtronic's; there has never been a head-to-head clinical trial between Axonics' product and Medtronic's products; and there is otherwise no scientific basis to support any suggestion that Axonics' accused product is superior to Medtronic's products. *See* Ex. 5, Noblett Dep. Tr. at 114:19-115:19, 116:23-122:4. Nor is there any merit to the suggestion made by Axonics' CFO that simply because there are sales of the accused product, it must be superior. If that were the case, every product accused of patent infringement that competes with the patentee's product would be superior. That is clearly not true, and allowing Axonics to provide these unqualified opinions and inferences through its fact and expert witnesses would confuse and mislead the jury, and unfairly prejudice Medtronic.

## IV. MIL 4: Any evidence or argument on Medtronic's motivation to file suit, or the consequences of a finding in Medtronic's favor

Under Rules 402 and 403, this Court should exclude any assertion by Axonics concerning Medtronic's motivation to file suit, including any claim that Medtronic is weaponizing its intellectual property to stifle competition, and the consequences of a verdict in Medtronic's favor.

From the beginning, Axonics has claimed Medtronic weaponized its patents and brought this lawsuit to intimidate Axonics, extend its monopoly, avoid innovating, and to otherwise engage in anticompetitive behavior. Shortly after Medtronic filed suit in 2019, Mr. Cohen stated "Axonics believes that this lawsuit is the kind of response that is all too predictable from Medtronic signaling that it is lacking the wherewithal to compete fairly."[5] Mr. Cohen also proclaimed "[i]t should be

---

[5] https://ir.axonics.com/news-releases/news-release-details/axonicsr-responds-patent-action-medtronic

obvious, to even the most casual observer, that this is an attempt to use legal tactics to slow down competition, and deny patients and physicians the innovative new technology they desire."[6] These types of unfounded and irrelevant characterizations are routinely excluded in patent infringement cases, where patentees have constitutionally protected property rights.

Any evidence or argument that Medtronic's suit is improper would be substantially more prejudicial than probative, and would contravene the most fundamental principle of patent law: "Title 35 allows a 'patentee' to bring a civil action for patent infringement." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928496, at *5 (N.D. Cal. Apr. 4, 2008) ("Inherent in the patent right is the right to exclude others from violating the patent during its term."). Simply put, "patent infringement is a strict liability offense." *Finjan, Inc. v. Sophos, Inc.*, 2015 WL 7075573, at *3 (N.D. Cal. Nov. 13, 2015). Axonics either infringes the asserted patents or it does not—Medtronic's motive to sue does not bear on those issues. Indeed, it is well-settled that a party's motivation to bring a patent infringement suit is irrelevant without some underlying violation or impropriety, like patent misuse. *Samsung Elecs. Co., Ltd. v. NVIDIA Corp.*, 2016 WL 754547, at *2-3 (E.D. Va. Feb. 24, 2016) (ruling that "Motive Is Irrelevant In Patent Cases, Absent Violation Of Fed. R. Civ. P. 11 Or Patent Misuse" and that "as a general matter, bringing an infringement action is not the sort of bad faith that makes motive relevant"); *see supra* fn. 2, at 5 ("Where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws.") (quoting *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981)); *Checkpoint Sys. v. All-Tag Security S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) ("[M]otivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive."). Axonics does not assert a patent misuse defense—any evidence or argument on Medtronic's motivation to sue should be precluded as irrelevant and unduly prejudicial. *Palantir Techs. Inc. v. Abramowitz*, 2022 WL 16744377, at *3 (N.D. Cal. Nov. 7, 2022) ("[m]otive to sue is irrelevant" where no issues in the case implicate patent-related misconduct).

Relatedly, Axonics cannot argue at trial that a verdict in favor of Medtronic would cause an

---

[6] *Id.*

adverse impact on Axonics, the SNM market, or on patients. *See* Ex. 6, Hultgren Dep. Tr. at 218:19-224:5. Such evidence "would run afoul of the well-established principle that a jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict." *See Negrete v. Allianz Life Ins. Co.*, 2013 WL 6535164, at *2 (C.D. Cal. Dec. 9, 2013) (quoting *Shannon v. United States*, 512 U.S. 573, 576 (1994)). Courts have made clear that evidence or argument that a verdict for plaintiff would result in a financial burden on "the defendant, the jury, or any other person or entity" are "not relevant and would only appeal to the sympathy of the jury." *Rebolledo v. Herr-Voss Corp.*, 101 F. Supp. 2d 1034, 1036 (N.D. Ill. 2000). For this reason, "evidence or argument that explicitly states that a judgment in favor of plaintiff would financially harm the defendant is inadmissible." *Id.* Courts routinely grant these motions with respect to other consequences as well. *See In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 4279834, at *12 (D. Ariz. Sep. 7, 2018) (excluding "evidence and argument that a verdict against Defendants will have an adverse impact on the medical community, further medical device research or costs, and the availability of medical care"); *Georges v. Novartis Pharm. Corp.*, 2013 WL 5217198, at *3 (C.D. Cal. Apr. 4, 2013) (excluding "evidence or argument that a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive or ability to develop new medications").

## V.    MIL 5: Any evidence or argument that Axonics does not infringe, or did not willfully infringe, because it has issued patents or licensed patents

Under Rules 402 and 403, this Court should exclude any evidence, argument, or testimony from Axonics that it does not infringe, or did not willfully infringe, Medtronic's patents because Axonics licensed patents from the Alfred Mann Foundation, or because it was able to obtain its own patents. The Alfred Mann and Axonics patents are irrelevant to whether Axonics infringed Medtronic's patents, willfully or otherwise, and will only confuse and mislead the jury by creating a trial within a trial. *St. Jude Med., Inc. v. Access Closure, Inc.*, 2012 WL 12919321, at *3 (W.D. Ark. June 4, 2012) (affirming the court's decision "under Federal Rules of Evidence 402 and 403, preclud[ing] ACI from referencing its own intellectual property" because "admitting this evidence would have been confusing to the jury and could have resulted in mini trials regarding ACI's patents because the claims of ACI's patents would have to be construed").

Axonics' witnesses have testified that Axonics' patent ownership is proof that it does not infringe the asserted patents. Axonics' CFO Mr. Dearen testified that one reason why he believed that the accused products did not infringe Medtronic's patents was because "we filed our patent application with the Patent and Trademark Office, cited the Medtronic patent as prior art, and later received our own issued patent on our own proprietary patent design." Ex. 2, Dearen Dep. Tr. at 196:4-197:8. When asked whether he, and Axonics, believed that "by getting a patent that means you're not infringing other patents," Mr. Dearen testified that "receiving an issued patent where you cited another company's patent as prior art means that you diligently tried to make the Patent and Trademark Office aware that you were looking at things and the receiving your own patent provides some level of comfort." *Id.* at 197:20-200:13. This is not the law.

It is well settled that an accused infringer's patents (licensed or otherwise) are not evidence of non-infringement. "[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right *to exclude others* and confers no right on its holder to make, use, or sell." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *Miller Indus. Towing Equip., Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 205 n.3 (D.N.J. 2022) (citing *Bio-Tech* as "the general principle of patent law"); *Emblaze Ltd. v. Apple Inc.*, 2015 WL 396010, at *8, n.68 (N.D. Cal. Jan. 29, 2015) (citing *Bio-Tech* with approval). Any suggestion otherwise is therefore irrelevant as a matter of law, and will only confuse and mislead the jury on the issues. For this reason, courts routinely grant motions to exclude evidence of an accused infringer's patents. *See Droplets, Inc. v. Yahoo! Inc.*, 2022 WL 2670188, at *1 (N.D. Cal. Feb. 28, 2022) (excluding testimony, evidence, and discussion of defendant's patents); *Two-Way Media LLC v. AT&T Operations, Inc.,* No. SA-09-CA-00476-OLG, Dkt. 501 (W.D. Tex. Feb. 27, 2013) (same); *Cameco Indus., Inc. v. Louisiana. Cane Mfg., Inc.*, 1995 WL 468234, at *6 (E.D. La. July 27, 1995) ("[A]dmission of the patent or patent application would be unfairly prejudicial to the plaintiff, as this evidence is likely to give the jury the false impression that a patent on the accused machine means that it is substantially different from the machine claimed in plaintiff's patent."); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that [the accused infringer's] patent might read on [the accused device] is totally irrelevant to the question of whether

1  [the accused infringer] willfully infringed another patent.”).

2          Nor does simply asserting infringement under the doctrine of equivalents make Axonics’

3  arguments or evidence that it does not infringe because it licensed or obtained patents relevant or

4  admissible. *See Interactive Health LLC v. King Kong USA, Inc.*, 2008 WL 8793640, at *6 (C.D. Cal.

5  July 24, 2008) (tentatively denying motion *in limine* with respect to evidence of other patents “on the

6  grounds that such evidence is ***potentially*** relevant to infringement under the doctrine of equivalents”)

7  (citing *Glaxo Wellcome, Inc. v. Andrx Pharm., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003)). But as the

8  Federal Circuit stated in *Glaxo*, “although [the fact that the accused product may be separately

9  patented] may be weighed by the district court … separate patentability does not automatically negate

10  infringement.” *Id.* (citing *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580

11  (Fed. Cir. 1984) (“where defendant has appropriated the material features of the patent in suit,

12  infringement will be found ‘even when those features have been supplemented and modified to such

13  an extent that the defendant may be entitled to a patent for the improvement’”)). Thus, “[w]hether the

14  improvement or modification [in another patent] avoids infringement”—and thus is relevant and

15  admissible—“depends on the particular facts.” *Glaxo*, 344 F.3d at 1233-34.

16          Here, Axonics has no facts to demonstrate that its licensed or issued patents are relevant to any

17  issue regarding its infringement, literally or under the doctrine of equivalents. Allowing this evidence

18  would unduly prejudice Medtronic and confuse and mislead the jury into concluding that a patent on

19  the accused device means that it is substantially different from the claimed device. For example, in his

20  rebuttal report regarding infringement, Axonics’ expert, Mr. Benjamin Pless, opined that “Axonics’

21  patents on its helical anchor demonstrate that the anchor is substantially different than a ‘plurality of

22  tine elements’” of the asserted ’314 and ’756 patents. Ex. 12, 12/16/22 Pless Rpt. ¶¶ 172-178. Mr.

23  Pless lists four Axonics patents he dubs the “Axonics Helical Anchor Patents (U.S. Patent Nos.

24  9,427,574; 9,802,038; 10,478,619; and 11,213,675),” which he contends claim “aspects of the Axonics

25  helical structure” that, according to him, “the Patent Office deemed inventive.” *Id.* ¶ 172. But despite

26  listing four patents, Mr. Pless opines only that claim 10 of the Axonics ’675 patent is embodied by the

27  Axonics accused product. *Id.* ¶ 173. Mr. Pless then opines—and intends to tell the jury—that simply

28  because the Patent Office issued the’675 patent, which claims, among other things, a “plurality of

tines," over the asserted '314 and '756 patents, which claim a "plurality of tine elements," that the Patent Office concluded that the "helical anchor of the Accused Axonics Products is substantially different than a plurality of tine elements – patentably different." *Id.* ¶¶ 174-178.

But that is not what the record shows. Instead, the file history for the Axonics '675 patent— which Mr. Pless ignores—demonstrates that its issuance was entirely unrelated to whether the claimed "helical anchor" is "substantially different than a plurality of tine elements." Specifically, Axonics' claimed "helical anchor" was rejected as obvious (Ex. 15, '675 patent file history, at 1777-1784 (3/25/21 Non-Final Rejection)) until Axonics amended the claims to add the requirement "wherein the anchor is molded from polyurethane based material having a shore hardness in a range between 50A and 80D" (*id.* at 1865-1874 (6/25/21 Amendment/Request for Reconsideration After Non-Final Rejection), 1867 (amendment to pending claim 11, now issued claim 10 of the '675 patent)). Mr. Pless, however, opines that claim 10 of the Axonics '675 patent is ***not*** "limited by this material hardness range" in order to provide the false conclusion that "Axonics' ability to obtain patent protection for its helical anchor even though the Patent Office had been made aware of the 314 and 756 Patents is ***significant evidence*** the helical anchor of the Accused Axonics Products is different than the 'plurality of tine elements' in those patents. In fact, ***it [i.e., the claimed helical anchor] was deemed an invention*** in view of those patents' recitation of a 'plurality of tine elements.'" Ex. 12, 12/16/22 Pless Rpt. ¶¶ 178, 175. Not only does Mr. Pless' argument directly contradict the express record (both the language of the Axonics' patent claims as well as the file history), but Mr. Pless also conceded during his deposition that he could not tell the jury "***why*** the Patent Office allowed these claims" because he "[hasn't] been asked to do that" and did not "study that and come to an opinion." Ex. 7, Pless Tr. 209:22-210:3. In fact, Mr. Pless repeatedly confirmed over nearly twenty pages of testimony that he did not review the entire file history for the '675 patent and could not state why the claims issued. *Id*. at 198:9-215:9. Axonics named inventor Mr. Henry Lee similarly confirmed that other Axonics patents, for example, the '038 patent, issued only after the Patent Office required several limitations be added, none of which demonstrate that the Patent Office considered Axonics' helical tines novel. Ex. 8, Lee Dep. Tr. 299:3-312:25 (Patent Office required limitations in the '038 patent "wherein the helical body attaches to the lead body in a recessed portion thereof so as to allow for reduced delivery

1  profile," a "strain relief member," and "twisting the lead body in one direction"). Several of these

2  limitations are not even performed by Axonics. *Id.* at 301:6-302:13. Mr. Lee also testified that he did

3  not know what the Patent Office found novel about the claims. *Id.* at 312:15-25; *Id*. at 321:5-12.

4  Allowing Axonics to present evidence or argument that it does not infringe the Medtronic patents

5  because it licensed or obtained patents would mislead the jury and provide the false impression that

6  Axonics' patents are substantially different from the claimed plurality of tine elements. To rebut such

7  argument, Medtronic would be forced to wade through at least four Axonics patents and their lengthy

8  file histories with the jury, which neither Axonics nor its experts even considered, creating mini-trials

9  on each of these patents to explain why they issued and how each are not relevant to the infringement

10  issue here. This would be highly prejudicial to Medtronic, waste time, and only confuse the jury.

11  Neither Axonics' inventors nor its experts can testify that the issuance of any Axonics' patent

12  (licensed or otherwise) is tied to the relevant features of the accused products. Thus, even though

13  Courts have permitted evidence of a defendant's patents to counter equivalence claims under certain

14  facts, Axonics' patents are not probative of the limitations relevant to Medtronic's infringement

15  claims. *See St. Jude Med., Inc.*, 2012 WL 12919321, at *3 (no error excluding defendant's patents as

16  doctrine of equivalents defense because, among other reasons, "ACI never established that any of its

17  own patents are relevant to the 'ejecting mechanism' limitation . . ."). For the same reasons, Axonics'

18  patents are irrelevant to willfulness, and this evidence is far more prejudicial than probative. Any

19  answer to whether Axonics' patents raise a reasonable belief of non-infringement will require the

20  claims of Axonics' patents to be litigated and construed. *See Advanced Respiratory, Inc. v.*

21  *Electromed, Inc.*, 2003 WL 25674810, at *1 (D. Minn. June 27, 2003) (finding that "even if

22  [defendant's patent] was relevant to the issue of willfulness . . . the introduction of the '749 Patent to

23  the jury would merely cause confusion for the jury and thereby prejudice the Plaintiff. Indeed,

24  introduction of the '749 Patent, the claims of which have not yet been construed, would result in a

25  mini-trial on that patent's claim construction").

26  Axonics' patents are irrelevant to whether it infringed or copied Medtronic's patents.

27  Presenting such evidence at trial would only prejudice Medtronic and mislead and confuse the jury.

28

### VI.  MIL 6: Any evidence or argument relating to disclaimed opinion of counsel defense

Under Rules 402 and 403, this Court should preclude Axonics from asserting what amounts to an improper and previously disavowed "advice of counsel" defense. Axonics expressly disclaimed the advice of counsel defense to Medtronic's claims of willful infringement and repeatedly invoked the attorney-client privilege to withhold information relevant to whether it knowingly infringed Medtronic's patents. Ex. 16, 5/9/22 Axonics Resp. to Rog. 14; *see* Ex. 2, Dearen Dep. Tr. at 194:11-17, 204:3-23; Ex. 9, Woock Dep. Tr. at 145:18-146:2. Yet, Axonics witnesses repeatedly testified that Axonics believed it was not infringing because it relied on the opinion of its intellectual property lawyers. Ex. 2, Dearen Dep. Tr. at 194:11-195:1[7]; *id.* at 119:21-120:18. Indeed, Axonics' CEO, Ray Cohen, confirmed that he had "lawyers, independent lawyers, review Medtronic patents prior to launching [Axonics'] products" and that he has "made public statements that the company was very careful and the company reviewed many patents in the field prior to launching [Axonics'] products." Ex. 1, Cohen Dep. Tr. at 123:15-124:24 (identifying Kilpatrick Townsend as the "outside law firm to conduct these reviews"); 125:22-126:9 (withholding as privileged whether Kilpatrick Townsend provided written opinions underlying Axonics' public statements that it "was very careful" and "reviewed many patents"). Axonics cannot have it both ways.

A defendant may present a "good-faith reliance on competent advice of counsel [a]s a defense to a charge of willful infringement." *Yeu v. Kim*, 1991 WL 142608, at *4 (Fed. Cir. 1991). But a party may not invoke the advice of counsel defense while also asserting privilege because the defense requires disclosing otherwise privileged communications with counsel. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (precluding advice of counsel defense where defendant "sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the 'eleventh hour'"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (holding that the defendant implicitly waived the attorney-client privilege

---

[7] "Q: Can you identify for me all of the great pains that were taken to ensure you did not infringe the patents asserted in this case? A: . . . the company has had an extensive process and **spent millions of dollars on intellectual property counsel** and on designing and developing our own proprietary products and making sure that we are good corporate citizens."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE

because it relied on an advice-of-counsel defense).Contrary to this law, Axonics has barred access to relevant evidence protected by the attorney-client privilege while simultaneously asserting that it "spent millions of dollars on intellectual property counsel" whose advice spares Axonics from willful infringement liability. This is improper and should be prohibited at trial. "The attorney-client privilege may not be used as both a sword and shield."*Rock River Communs., Inc. v. Universal Music Grp., Inc.*, 730 F.3d 1060, 1069 (9th Cir. 2013); *See Belmont Textile Mach. Co. v. Superba, S.A.*, 48 F. Supp. 2d 521, 527 (W.D.N.C. 1999) ("Court requires Superba to elect whether to produce privileged opinions of counsel relating to infringement or be precluded from relying on the advice-of-counsel defense."); *Vital Pharm. v. PhD Mktg.*, 2022 WL 2284544, at *3 (C.D. Cal. Apr. 15, 2022) ("[I]t would be unfair to allow Defendant to present new evidence in support of an advice of counsel defense when it has prevented Plaintiffs from discovering what that advice was, or any other information regarding relevant attorney-client communications.").

Medtronic will be unduly prejudiced if this Court permits Axonics to tell the jury it was "very careful," "reviewed many patents in the field prior to launching," or "spent millions on intellectual property counsel" after it disclaimed the defense and asserted attorney-client privilege to prevent discovery related to willful infringement. *Saint-Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*, 884 F. Supp. 31, 33 (D. Mass. 1995) ("[I]t would be fundamentally unfair to allow a party to disclose opinions which support its position, and simultaneously conceal those which are adverse."). This Court should preclude Axonics from citing, invoking, or hinting at the advice of counsel defense.

**VII.    MIL 7: Any reference to Wells Fargo report on the strength of Medtronic's case**

Axonics cites an analyst report by an anonymous Wells Fargo "patent consultant" issued ***after*** this suit was filed to argue that it did not willfully infringe Medtronic's patents. *See* Dkt. 241-5 (expert report of Julie Davis); Ex. 18 (AX0211924). This anonymous report states, in pertinent part, that "Medtronic's case was 'relatively weak' and that "the Tined Lead patents and the Temperature Sensor patents...'all cover relatively minor points and...are likely invalid due to obviousness.'" *Id*. at 16 (quoting Wells Fargo report). This report and any similar third-party opinions—which have not been and cannot be subject to cross-examination—are not relevant to any issue the jury must decide and should be excluded. FRE 402, 403, 602, 702, and 802.

1    Axonics relies on the Wells Fargo report to support its claim that it did not willfully infringe.

2    Ex. 17, 10/17/22 Axonics Resp. to Rog. 12, at 25. ("Wells Fargo reports support the reasonableness

3    of Axonics' belief that it did not infringe . . ."); Dkt. 241-5 at 16. But notwithstanding its flaws on the

4    merits, this report, which issued in 2019 after the lawsuit was filed, cannot be probative of Axonics'

5    state of mind at the time of its infringement, which Axonics contends started in 2016. *Apple Inc. v.*

6    *Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017) (willfulness is assessed at the time

7    of infringement). This should be excluded under Rules 402 and 403.

8    Moreover, Axonics' damages expert Ms. Davis wishes to rely on statements in the Wells Fargo

9    report that Medtronic's patents are "very narrow" and that Axonics' noninfringement defenses are

10   "very plausible" for the truth of the matter asserted. Dkt. 241-5 at 16. This untested and unqualified

11   post-hoc assessment is impermissible double hearsay. Under Rule 802, the Court may not admit a

12   statement made out of court and offered for the truth of the matter asserted therein unless the evidence

13   satisfies a hearsay exception. *Id.* No exception applies. The Wells Fargo report must, therefore, be

14   excluded. *United States v. Carter*, 2012 U.S. Dist. LEXIS 25611, at *1 (E.D. Cal. Feb. 28, 2012)

15   (granting "Motion in Limine to Exclude Hearsay Statements"). And while experts may rely on hearsay

16   evidence to form their opinions, *United States ex rel. Ji v. Pac. Chem. Int'l*, 2018 WL 6163114, at *2

17   (C.D. Cal. Sep. 24, 2018), this rule applies only when "experts in the particular field would reasonably

18   rely on those kinds of facts or data in forming an opinion on the subject[.]". *Id.* he Wells Fargo report

19   was drafted "soon after this lawsuit was filed," so its opinions would not have been considered by

20   either party in a hypothetical negotiation. *See* Ex. 11, 12/16/22 Davis Rpt. at 67; *Ceiva Logic, Inc. v.*

21   *Amazon.com, Inc.*, 2021 U.S. Dist. LEXIS 252721, at *60 (C.D. Cal. Oct. 26, 2021) ("[T]he

22   hypothetical negotiation upon which the reasonable royalty is determined is one that occurs at the time

23   infringement began."). Indeed, Davis merely uses the report to bolster her arguments but never opines

24   that the hypothetical negotiators would have relied on these statements, confirming the report is not

25   probative of damages.

26   Finally, the Wells Fargo report should be excluded under Rules 602 and 702 for lack of

27   personal knowledge and improper expert testimony. The unknown "patent consultant" referred to in

28   the Wells Fargo report is not a percipient witness, not a qualified expert, and has not been cross

examined in this case. Yet Axonics seeks to rely on the document as corroborating and independent expert testimony. This is improper. *Medical Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, 2011 WL 1898600 at *6 (S.D. Cal. May 19, 2011) (excluding witness testimony "For Lack Of Personal Knowledge, As Inadmissible Hearsay, And For Lack Of Expert Designation…[the witness] may testify about his knowledge...but may not offer opinion testimony regarding general industry practices"). Thus, even if the Court finds the report is minimally relevant, the Wells Fargo report is substantially more prejudicial than probative because Medtronic has no opportunity cross examine the report's author or the anonymous patent lawyer on which it relies.

## VIII.    MIL 8: Evidence or argument that Medtronic's InterStim Shocks Patients

Axonics intends to tell the jury that Medtronic's InterStim devices supposedly malfunction and painfully shock or jolt patients after the product is implanted.[8] This was a favorite theme for Axonics at depositions and it even had one of its experts, Dr. Butrick, offer an opinion on the subject. Dr. Butrick, for example, states that "[s]ome patients would report complaints of electric shock or jolt sensation with the indwelling lead which we felt may be related to lead breakage, migration, or connections with the battery." Dkt. 185-9, ¶ 26. This sideshow has one goal: to disparage Medtronic's product and improperly suggest that Axonics' willful infringement is somehow excusable. But it is entirely baseless, irrelevant, and substantially more prejudicial than probative. Claims like this should be prohibited under Federal Rules of Evidence 402, 403, 702, and 802.

As a threshold matter, anecdotal hearsay testimony about patients experiencing shocking or jolting sensations is inadmissible. FRE 802. It is also irrelevant—shocking or jolting sensations from a *Medtronic device* is not probative of whether *Axonics' device* infringes Medtronic's patents—the issue the jury must decide. FRE 401, 402. Nor should Axonics be allowed to backdoor this legally irrelevant, highly prejudicial evidence through Dr. Butrick, who has no qualified opinion on these matters. FRE 702.  Dr. Butrick is a physician who is an expert in pelvic floor medicine, but has no specialty or experience related to the technical workings of the SNM devices he has used, including their development, manufacture, or repair. Dkt. 185-5 at 15:21-16:20. Critically, as Medtronic

---

[8] This is a common adverse event reported by Axonics as well and its safety information indicates that patients have described "jolting or shocking" sensations with the accused product. Trial Ex. 3301.

explained in its *Daubert* briefing, Dr. Butrick "provides no cause, analysis, or explanation for the jolting sensations, other than the [alleged] hearsay, second-hand reports from patients about what they felt." Dkt. 241-1 at 27; *see also* Dkt. 185-1 at 26-27. This cannot lend any reliable support to Axonics' litigation-driven "shocking" or "jolting" allegations.

Further, even if those allegations were somehow minimally relevant to Axonics' willful infringement—they are not—they should be excluded because an unnecessary mini-trial over "shocking" or "jolting" will result, which will confuse the issues and waste time. FRE 403. Axonics' accused device too has been reported to cause electric shock to patients. *E.g.*, Trial Ex. 3246. And Dr. Butrick even admitted that Axonics did not eliminate the risk of shocking or jolting. Dkt. 185-1 at 27; Dkt. 185-5 at 59:6-10. Should Axonics be permitted to introduce irrelevant evidence related to Medtronic's device allegedly causing shocking or jolting sensations, Medtronic will be forced to not only take the time to put the alleged patient complaints in proper context but also explain to the jury (and introduce additional evidence) that Axonics' accused device suffers the same events. It will be a confusing and irrelevant waste of the jury's time, all so Axonics can disparage Medtronic. Evidence or argument that Medtronic's InterStim device shocks patients should be excluded.

## IX.    MIL 9: Evidence or argument that Medtronic copied Axonics' technology

Under Rules 402 and 403, this Court should exclude evidence or argument by Axonics that Medtronic copied Axonics' technology after a meeting between the companies in September 2016. Axonics does not assert any patent infringement, trade secret misappropriation, or breach of contract claims against Medtronic, therefore, Medtronic's prior access to Axonics' (incomplete) product is not relevant to any claim or defense. "Courts in the Ninth Circuit routinely grant motions *in limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *LaSalle Bank*, 2011 WL 6300796, at *1. This case is about Axonics' infringement of Medtronic's patents. Thus, whether Medtronic copied any aspect of Axonics' products, which it did not, is irrelevant. *Johnson & Johnson Assoc. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("The law of infringement compares the accused product with the claims as construed by the court.").

Such a claim is also unduly prejudicial. The baseless insinuation that Medtronic copied or stole Axonics' technology will only inflame and confuse the jury. Axonics has never alleged—let alone

shown—that any of its technology is incorporated in any Medtronic product. None of the individuals that attended the meeting developed Medtronic's InterStim Micro product. And all were expressly prohibited by the parties' Confidential Disclosure Agreement from misusing any Axonics' confidential information. *See* Dkt. 244-1 at 9. There is thus no legal support for Axonics' suggestion, so it will only mislead the jury. Courts frequently exclude such evidence. *Zimmer Surgical, Inc. v. Stryker Corp.,* 2019 WL 9171205, *1-2 (D. Del. Mar. 13, 2019) (excluding evidence that patentee copied accused product as irrelevant to damages, obviousness and secondary considerations, and willful infringement). *Ultratec, Inc. v. Sorenson Communs., Inc.*, 2014 WL 4829173, at *9 (W.D. Wis. Sep. 29, 2014) ("Even if plaintiffs were copying some of the nonpatented features of defendants' products, the copying sheds no light on whether defendants were copying other, patented features of plaintiffs' products."). The result should be the same here. If the Court permits Axonics to introduce the contested evidence, Medtronic will be required to defend itself before the jury, which will create a mini trial on a prejudicial and irrelevant matter. This distraction will waste time, confuse the jury, and unduly prejudice Medtronic.

## X.     MIL 10: Any reference to the financial condition of either party

Under Rules 402 and 403, this Court should preclude Axonics from introducing evidence of the parties' financial conditions (profits, revenue, or net worth). Medtronic anticipates that Axonics will highlight Medtronic's larger size, profit, and value, and introduce similar evidence of its own financial condition to portray itself as a smaller and more sympathetic entity. David versus Goliath. Axonics should not be permitted to discuss the financial condition of either party to inflame the jury or distract from the relevant issues. *Walker v. Charter Commc'n LLC*, 2019 WL 4601833, at *2 (D. Nev. Sep. 23, 2019) (excluding "irrelevant characterizations of a party as wealthy or the like [that] may inappropriately cause bias in a jury").

Evidence of the parties' relative financial strength would be highly prejudicial and would not tend to make more or less probable any fact consequential to infringement. FRE 401, 402. This type of evidence is routinely excluded, especially because it disadvantages the larger, more valuable party. *Ioengine, LLC v. Paypal Holdings, Inc.*, 2022 WL 2800911, at *7 (D. Del. June 27, 2022) (excluding with respect to both parties because "evidence regarding Ingenico or PayPal's overall size, net worth,

or revenues is not relevant to either [infringement] liability or damages."); *Cottrell v. Greenwell*, 2022 WL 288191, at *2 (W.D. Ky. Jan. 31, 2022) (excluding "evidence of the financial condition or status of either party"); *Peterson v. Evergreen Trans, Inc.*, 2023 WL 1965691, at *3 (D. Nev. Feb. 13, 2023) (excluding as irrelevant the parties' financial conditions). The Supreme Court has warned against this exact issue. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (noting that evidence of a large company's net worth "creates the potential that juries will use their verdicts to express biases against big businesses . . ."). If the Court denies this motion, the jury may find that Medtronic's financial health, and Axonics' lack of profitability, makes Medtronic less worthy or less in need of the full recovery to which it is entitled.

Axonics will also confuse the jury by putting much focus on the parties' relative size. This distraction will prevent the case from being decided on the merits. For this additional reason, courts find that, "[a]s a general rule, it is error to admit evidence of a party's financial condition unless necessary to determine the damages sustained." *SEC v. Goldstone*, 2016 WL 3654273, at *15 (D.N.M. June 13, 2016). And it is not a harmless error. *Dubric v. A Cab, LLC*, 2017 WL 662487, at *4 (D. Nev. Feb. 16, 2017) (net worth evidence is "distracting and prejudicial") (citing *999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985), ruling that "improper introduction of net worth evidence is reversible error").

## XI.    MIL 11: Argument Concerning Equitable and Legal Defenses Decided by The Court

This Court should preclude Axonics from introducing any evidence or argument regarding its equitable and legal defenses that are to be decided by the Court and not the jury. Based on its Amended Answer and Counterclaims, Axonics intends to rely on several equitable and legal defenses to Medtronic's claims of infringement, including prosecution history estoppel, estoppel/waiver, and indefiniteness. *See* Dkt. 80-2. These defenses present legal questions that are solely within the Court's consideration. *Cal. Inst. of Tech. v. Broadcom Ltd.*, 2020 U.S. Dist. LEXIS 206777, at *3 (C.D. Cal. Jan. 17, 2020) (precluding "defendants from presenting legal issues reserved for the court" in part because indefiniteness and prosecution history estoppel are "legal issues reserved for determination by the Court."); *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019 (Fed. Cir. 2008) (finding waiver is an equitable defense committed to the sound discretion of the trial judge); *In re Larsen*, 10

F. App'x 890, 891 (Fed. Cir. 2001) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."). Thus, courts routinely find that any evidence or argument on equitable defenses before the jury is inappropriate. *Kaneka Corp. v. SKC Kolon PI, Inc.*, 2015 WL 12683971, at \*3 (C.D. Cal. June 25, 2015) ("The Federal Circuit has found that there is no right to have a jury decide an equitable defense to patent infringement.") (citing *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993); *Ormco Corp. v. Align Tech.*, 2009 WL 10668458, at \*13 (C.D. Cal. May 12, 2009); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987); *Patent Holder, LLC v. Lone Wolf Distribs.,* 2018 WL 4643059, \*2 (D. Idaho 2018) ("The Federal Circuit has made clear that indefiniteness is a legal question that district courts may decide prior to trial."); *GPNE Corp. v. Apple Inc.*, 108 F. Supp. 3d 839, 872 (N.D. Cal. 2015) ("any indefiniteness issues will be decided by the Court, and not tried to the jury.").[9] Axonics is not permitted to argue to the jury defenses that are solely within the Court's consideration, and these should be excluded from the jury trial.

## XII.   MIL 12: Any Evidence or Argument Based on Inflammatory Statements in Medtronic Documents About Axonics

Under Rules 402 and 403, this Court should preclude Axonics from introducing any evidence or argument based on competitive, but inflammatory statements made by Medtronic employees. Only relevant evidence is admissible (FRE 402), and the proffered "evidence" here is not relevant—it does not make more or less probable any fact of consequence in deciding Medtronic's claims. *Id.* 401(a)-(b). Instead, the contested communications merely prejudice Medtronic by painting it in a bad light in front of the jury. Specifically, Axonics will try to sully the jury's view of Medtronic by introducing internal Medtronic documents containing disparaging remarks toward Axonics—often made to motivate the sales team, in jest, or in response to certain actions taken by Axonics that Medtronic believed to be in violation of regulatory restrictions and the law. For example, Axonics has on its exhibit list a Medtronic email in which an employee states that

---

[9] Though an exception to this rule may arise with respect to certain equitable defenses for which there are unresolved underlying factual questions, no such exception applies here. *See, e.g., Bombardier Rec. Prods. v. Arctic Cat Inc.*, 785 Fed. App'x 858, 867 (Fed. Cir. 2019) ("indefiniteness is amenable to resolution by the jury where the issues are factual in nature" like when "a question about the state of the knowledge of a skilled artisan is a question of fact.").

1    ████████████████████████████████████████ Ex. 19 (Trial Ex. 7268). Axonics

2    may also use other similarly "inflammatory" statements made by Medtronic employees to taint the

3    jury and create a false narrative. These types of comments are not relevant to any claim or defense at

4    issue, will force Medtronic to waste time explaining the inappropriate Axonics' actions that

5    precipitated them, and can only serve to unduly prejudice Medtronic. Whether, for example, the

6    Medtronic employee made the statement above because she believed Axonics to be engaging in

7    unlawful promotion of the accused product before obtaining FDA approval does not bear on

8    infringement, validity, or damages. To the extent certain off-color emails are relevant, they are relevant

9    only to Axonics' allegations in its stayed antitrust complaint. *See* fn.2, *supra*. Whatever attenuated

10    probative value the documents may have to this matter is substantially outweighed by the

11    overwhelming prejudicial effect. This Court has previously excluded similar evidence for the same

12    reason. *Freeman v. Ethicon, Inc.*, 2022 WL 3147615, at *1 (C.D. Cal. Mar. 24, 2022) (excluding an

13    email chain including an "off-color" exchange in which two doctors joked about women injured by

14    faulty mesh because "the comment, albeit in poor taste, were [sic] stated in a joking matter and offer

15    little probative value"). Any evidence or argument regarding highly competitive but inflammatory

16    statements will only confuse and mislead the jury and prejudice Medtronic by creating the false

17    impression that Medtronic and its employees are bad people with illegitimate reasons for bringing the

18    disputed claim and otherwise have no right to aggressively compete in the marketplace. The Court

19    should exclude this evidence.

20    **XIII.  MIL 13: Evidence or argument based on documents produced after discovery**

21            Under Federal Rules of Civil Procedure 26 and 37, this Court should preclude Axonics from

22    introducing at trial any evidence, testimony, or argument based on documents regarding its design-

23    around produced after the date set by the Special Master and depositions of relevant witnesses.

24    *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). Medtronic filed suit

25    on November 4, 2019. The trial, through no fault of Medtronic, has been delayed several times. Most

26    recently, when the Court continued the April 2023 trial date to August 2023 exclusively to

27    accommodate ██████████████████████████████, it issued an Order confirming that

28    fact discovery is closed and that "[n]o further discovery or supplementation of the record is permitted

21

unless already allowed by the Court of the Special Master." Dkt. 265. Axonics has violated this Court's order. Specifically, Axonics produced correspondence showing that pursuant to unreported interviews that occurred after the production date set by the Special Master, it has obtained FDA approval for a redesigned charger. This is to Medtronic's prejudice, and exactly the concern Medtronic had in moving the trial at Axonics' request to August 2023. Axonics moved the trial date and now seeks to benefit from facts it developed long after the trial should have been over, when Axonics alone is responsible for the prejudicial delay. *See Pinkette Clothing v. Cosmetic Warriors*, 2017 WL 10434404, at *6 (C.D. Cal. Jan. 20, 2017) (excluding documents because, *inter alia*, "CWL has not met its burden of establishing that the late production was not substantially justified or harmless); *Sumrall v. Ensco Offshore Co.*, 2018 WL 2224074, at *3 (S.D. Miss. May 15, 2018) (emails "not properly disclosed during discovery [] may not be used during trial"). Axonics suggests that the post-discovery production of FDA correspondence was "already allowed" by the Special Master, but that's wrong. As a sanction for concealing ███████████████ during discovery, Axonics was ordered to produce additional documents, have its witnesses be re-deposed, and pay Medtronic's costs for the re-depositions. *See* SM-18 at 20. As part of the additional discovery, Axonics was to produce "additional documents related to Axonics's ███████████████████████" SM-19 at 5. The Special Master ordered that the "production of documents … ordered by SM-18 and SM-19" be ***completed*** by December 2, 2022. SM-20 at 5. Axonics was never "allowed" to continue to produce documents months later, after the re-depositions were complete, to Medtronic's extreme prejudice. If allowed to rely on its untimely disclosed evidence, Medtronic would be prejudicially disadvantaged because it has not had an opportunity to investigate this evidence or cross examine Axonics' witnesses on them in discovery. *Farouk Sys. v. Chi Nail Franchises, LLC*, 2015 WL 12781705, at *5 (C.D. Cal. Nov. 19, 2015) (excluding post-discovery documents where "the untimely disclosure of documents potentially impacts decisions already made [] during the course of the litigation"). Axonics' prejudicially late produced evidence—and any testimony about them—should be excluded.

## XIV.  MIL 14: Evidence or argument that non-public or draft documents reflect the Precision, BION, or EON Systems

Under Rules 402, 403, 602, and 702 this Court should preclude Axonics from introducing

evidence or argument that non-public or draft documents describe the design or operation of the Advanced Bionics/Boston Scientific Precision, BION, or Abbott/St. Jude EON Systems that Axonics alleges were known, used, sold, or offered for sale in the United States. Axonics' expert Dr. Irazoqui cites documents from Advanced Bionics (produced by Boston Scientific), and Advanced Neuromodulation Systems (produced by Abbott) in his invalidity opinions. Axonics does not contend these documents are prior art—each is prominently marked "CONFIDENTIAL" or "proprietary and confidential". *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1126, 1135 n.7 (E.D. Cal. 2002) ("Unpublished documents or private discussions not of common knowledge do not constitute 'prior art' within the meaning of section 103(a)"). Rather, Dr. Irazoqui alleges that these non-public documents describe the internal design and operation of systems he purports were offered for sale in the United States before 2005: (1) the Boston Scientific Precision System (Trial Exs. 7360-7364, 7366-7368 (2) the Boston Scientific BION System (Trial Exs. 7369-7373, 7383); and (3) the St. Jude EON System (Trial Exs. 7346, 7349-7353). There is *no evidence* linking these draft documents to any commercial products. Any such argument would be substantially more prejudicial than probative, and would violate the mandate that witnesses testify based on personal knowledge.

For instance, to describe the purported design and operation of Precision, Dr. Irazoqui primarily relies on two documents[10] from May 2000 and April 2001, marked "Revision 0.0." These documents do not state they relate to Precision, and are insufficient to establish that they describe the design or operation of "any specific version of the Precision was on sale, offered for sale, or publicly known or in public use in the United States at any particular point in time." Ex. 13, Berger Rpt. ¶¶ 170, 756-762. Similarly, Dr. Irazoqui relies on documents marked "Revision 0.0", "Revision 1.0", "Revision 1.1," and an incomplete copy of "Revision 3.6,"[11] to describe the design and operation of BION that was purportedly on sale before the critical date. These documents also do not describe any final design. *See, e.g.*, Ex. 22 (Trial Ex. 7369) at 3 █████████████████████████. There is also no evidence that they accurately describe any version of BION ever on sale in the United States. Finally, Dr. Irazoqui *assumes* that certain Advanced Neuromodulation documents accurately

---

[10] Ex. 20 (Trial Ex. 7361); Ex. 21 (Trial Ex. 7363).

[11] Ex. 22 (Trial Ex. 7369); Ex. 26 (Trial Ex. 7370); Ex. 27 (Trial Ex. 7373); Ex. 28 (Trial Ex. 7383).

1   describe the internal design and operation of the "Eon or Genesis System" purportedly available in

2   2004-2005. There is no evidence supporting this assumption; the documents—several dated *after* the

3   priority date of the asserted patents[12]—relate to a project in development, not a finalized commercial

4   design. *See, e.g.*, Ex. 23 (Trial Ex. 7353)

5       At best, Axonics provides declarations from a Boston Scientific attorney (Ex. 24 (Trial Ex.

6   7411)) and an Abbott paralegal (Ex. 25 (Trial Ex. 7412)) stating that the documents are authentic

7   business records. Ex. 24 (Trial Ex. 7411) at ¶ 6; Ex. 25 (Trial Ex. 7412) at ¶ 4. This is not evidence

8   that the documents accurately describe the internal design and operation of any prior art system.

9   Neither the declarations, nor Dr. Irazoqui's testimony can cure this fatal defect. Dr. Irazoqui admitted

10  that he did not rely on any conversations in forming his opinions on Precision, BION, or EON. *See*

11  Ex. 10, Berger Dep. Tr. at 92:17-93:20, 94:1-95:8, 95:11-96:6. And Axonics does not (and cannot)

12  offer a witness with personal knowledge to testify under oath that any prior art system offered for sale

13  is accurately described by these documents. *Vargas v. Cty. of L.A.*, 2023 WL 2266114, at *4 (C.D.

14  Cal. Feb. 27, 2023) ("A witness may testify to a matter only if evidence is introduced sufficient to

15  support a finding that the witness has personal knowledge of the matter."). Axonics did not depose

16  any of the authors or reviewers of these documents or any other Boston Scientific or Abbott employee,

17  and has not indicated that it intends to call any fact witness to testify on these documents or prior art

18  systems. Because none of these witnesses are being offered, there is no one who can testify that these

19  draft documents accurately describe the design and operation of Precision, BION, or EON purportedly

20  on sale. These are grounds for exclusion. *Doe v. Reddy*, 2004 WL 5512966, at *3 (N.D. Cal. Mar. 24,

21  2004) (barring testimony on topic "for which the witness lacks personal knowledge"); *Marten v.*

22  *Montana*, 2019 WL 4753249, at *5 (D. Mont. Sep. 30, 2019) (excluding testimony because "opinion

23  was based on information from other MDC employees and not on personal knowledge"). For these

24  reasons, this Court should exclude any irrelevant, non-public documents from Boston Scientific and

25  Abbott, including without limitation[13] Trial Exhibits 7346, 7349-7353, 7360-7364, 7366-7368, 7369-

26  7373, 7383, and any argument that these non-public or draft documents reflect the design or operation

27  [12] Trial Ex. 7350 at 9                                                    7351 at 11

    , 7352 (ABT/AXO000380)                                    .

28  [13] Axonics lists similar trial exhibits that Dr. Irazoqui does not rely on. *See* Trial Exs. 7365,7364-7382.

of the Precision, BION, or EON Systems that Axonics asserts as prior art.

## XV. MIL 15: Any evidence or argument that Axonics does not infringe because its product lacks features from the patent specification or Medtronic's embodying products

Under Rules 402 and 403, this Court should preclude Axonics from introducing any evidence or argument that its accused product does not infringe because it lacks unclaimed features present in Medtronic's embodying products or in specific embodiments in Medtronic's temperature control and charge control patents. *See, e.g.,* Ex. 14, 12/18/22 Irazoqui Rpt. ¶¶ 92 ████████████████████████████████████████████████████████████████████████████████████████ , 94, 95 ████████████████████████████████████████████████████████████████████████████

134-135, 263-271 (citing inventor/engineer testimony regarding embodying products to argue accused products do not infringe the "associated with" term), 404 ("If there are instances in which the current is below the minimum amount and the charger does not terminate its power, then this limitation is not met. This is consistent with the specification of the '758 Patent, which identifies a single termination condition: the current is below a listed amount, as shown in Figure 19 below (annotated) and as described in the specification[.]"). These arguments are confusing and legally wrong, and should be excluded. *Johnson & Johnson Assoc. Inc.*, 285 F.3d, at 1052 ("The law of infringement compares the accused product with the claims are construed by the court.").

Dated: June 30, 2023

WINSTON & STRAWN LLP

By: /s/ Nimalka Wickramasekera
    Nimalka Wickramasekera
    George C. Lombardi
    Brian Nisbet
    J.R. McNair

    Attorneys for Plaintiffs
    MEDTRONIC, INC.; MEDTRONIC PUERTO
    RICO OPERATIONS CO.; MEDTRONIC
    LOGISTICS, LLC; MEDTRONIC USA, INC.