UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDE                                                   Date: July 17, 2023

Title: MEDTRONIC, INC., ET AL. v. AXONICS MODULATION TECHNOLOGIES, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER VACATING JULY 18, 2023 HEARING AND GRANTING DEFENDANT'S EX PARTE APPLICATION TO STAY THE CASE [306]**

     Before the Court is Defendant Axonics Modulation Technologies, Inc.'s ("Axonics's") Ex Parte Application for Order to Stay This Case or Reopen *Daubert* Briefing Based on New Controlling Authority ("Application") (Dkt. 306). Plaintiffs Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, and Medtronic USA, Inc. ("Medtronic" or "Plaintiff") opposed on July 13, 2023 ("Opp'n") (Dkt. 310). The Court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

     For the reasons set forth below, Axonics's Application is **GRANTED IN PART** and **DENIED IN PART**. Axonics's request for a stay is granted and Axonics's request to reopen *Daubert* briefing is denied without prejudice to refiling upon lifting of the stay. Consistent with this order, the Court hereby **VACATES** the hearing on the parties' motions for summary judgment and *Daubert* motions, which is currently set for July 18,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDE                                          Date: July 17, 2023

Page 2

2023. *See* Order Setting Trial Schedule (Dkt. 276).[1] No appearances shall be necessary on that day.

## I.     Legal Standard

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a [Patent and Trademark Office] reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citations omitted). "To be sure, a court is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations—even if the reexaminations are relevant to the infringement claims before the Court." *Pinn, Inc. v. Apple, Inc.*, No. SACV1901805DOCJDE, 2020 WL 6064642, at *1 (C.D. Cal. Aug. 27, 2020) (citation and internal quotation marks omitted); *see also Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-CV-04653-BLF, 2022 WL 1592441, at *2 (N.D. Cal. May 19, 2022) ("A court is under no obligation to stay proceedings pending parallel litigation before the [Patent Trial and Appeal Board]."). "The party seeking a stay bears the burden of showing that a stay is warranted." *Otto Bock HealthCare LP v. Össur hf*, No. SACV 13-00891-CJC(ANx), 2013 WL 12313020, at *2 (C.D. Cal. Dec. 16, 2013) (citation omitted); *Mieco, Inc. v. Triple Point Tech., Inc.*, No. CV 17-6564 PSG (JCX), 2018 WL 6258894, at *3 (C.D. Cal. Aug. 16, 2018) ("The 'proponent of a stay bears the burden of establishing its need.'" (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)); *Aire Tech., Ltd. v. Garmin Int'l, Inc.*, No. 822CV01027JVSKESX, 2022 WL 19076660, at *1 (C.D. Cal. Aug. 16, 2022) ("District courts have broad discretion to stay proceedings in patent actions pending resolution of reexamination or IPR proceedings before the PTO.").

To determine whether to stay a case pending reexamination or inter partes review, courts in this district typically consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a

---

[1] The hearing was scheduled for various motions, including Defendant Axonics' Objections to the Special Master Report and Recommendation on Claim Construction (Dkt. 165); Plaintiff Medtronic's Objections to Special Master's Report and Recommendation on Claim Construction (Dkt. 166); Plaintiff Medtronic's Daubert Motion to Exclude Certain Opinion Testimony of Expert Witnesses Davis, Pless, Butrick, and Anderson (Dkt. 186); Defendant Axonics's Daubert Motion to Exclude Certain Opinions of Drs. Chai, Mihran, and Berger and Mr. Stevens (Dkt. 187); Defendant Axonics's Daubert Motion to Exclude Certain Opinions of Dr. McDuff (Dkt. 190); Plaintiff Medtronic's Motion for Partial Summary Judgment (Dkt. 193); and Defendant Axonics's Motion for Summary Judgment (Dkt. 194).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDE                                           Date: July 17, 2023

Page 3

clear tactical disadvantage to the nonmoving party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013) (citations and internal quotation marks omitted). The three factors "are not exhaustive, however, as the decision whether to order a stay must be based on the totality of the circumstances." *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. 8:16-cv-00300-CJC-RAO, 2016 WL 7496740, at *1 (C.D. Cal. Nov. 17, 2016) (citing *Universal Elecs.*, 943 F. Supp. 2d at 1030–31).

## II.     Background

The patents-in-suit are United States Patents No. 7,774,069; No. 8,036,756; No. 8,457,758; No. 8,626,314; No. 8,738,148; No. 9,463,324; and No. 9,821,112. *See* Amended Complaint (Dkt. 28). Medtronic submits that the asserted patents relate to implantable sacral neuromodulation systems, which Medtronic submits are used "to help to control symptoms of overactive bladder, non-obstructive urinary retention, and chronic fecal incontinence through direct modulation of sacral nerve activity." Plaintiff's Opening Claim Construction Brief ("Pl.'s Brief") (Dkt. 122) at 1. Axonics submits: "Each of the asserted patents concerns a narrow purported improvement to implantable medical devices for neurostimulation." Defendant's Opening Claim Construction Brief ("Def.'s Brief") (Dkt. 111) at 1.

The seven patents-in-suit span three distinct patent families that the parties refer to as the "Tined Leads Patents," the "Temperature Control Patents," and the "Charge Control Patents." All but one of these patents were subject to Inter Partes Review ("IPR") proceedings at the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO"). The procedural history of the IPRs need not be set forth here other than to note that the PTAB found that the claims Medtronic is asserting in the present litigation are not invalid.

On July 10, 2023, the Court of Appeals for the Federal Circuit reversed the PTAB's IPR decisions as to the Tined Leads Patents, which are United States Patents No. 8,036,756 and 8,626,314, and the Federal Circuit remanded those two patents to the PTAB for further consideration. *Axonics, Inc. v. Medtronic, Inc.*, No. 2022-1451, -1452, --- F.4th ----, 2023 WL 4410686 (Fed. Cir. July 10, 2023).

The day after the Federal Circuit entered its opinion, Axonics submitted a notice so as to "promptly inform[]" the Court "of these time-sensitive developments." Notice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDE　　　　　　　　　　　　　　　　　Date: July 17, 2023

Page 4

New Controlling Authority (Dkt. 303) at 3. Axonics also indicated its intent to file an Ex Parte Application to stay proceedings. *Id.* On July 12, 2023, Axonics filed the present request as an ex parte application ("Application" or "App.") (Dkt. 306). Medtronic responded with a detailed opposition on July 13, 2023 ("Opp'n") (Dkt. 310).

### III.　Discussion

Axonics argues that because the Tined Leads Patents are once again in IPR, this case should be stayed just as it was in 2020 during the original IPRs. App. at 10. Axonics also emphasizes that the Tined Leads Patents are expired, so Medtronic cannot seek an injunction as to those patents, which Axonics argues means there is no urgency in proceeding to trial as to those patents. *Id.* at 12. Additionally, Axonics requests that regardless of whether the case is stayed, *Daubert* briefing should be reopened because the Federal Circuit's decision altered the scope of permissible invalidity arguments in this case such that some of the opinions of Medtronic's experts are legally erroneous. *Id.* at 16–17.

Medtronic responds that this Court need not await the outcomes of the remanded IPRs because the invalidity issues in the present litigation are different from the invalidity issues in the IPR proceedings. Opp'n at 7. Medtronic also argues that the more advanced state of this litigation warrants a different conclusion than when the Court stayed the case in 2020. *Id.* at 8–11. Medtronic emphasizes that it filed this case almost four years ago, that none of the continuances have been through any fault of Medtronic, that Medtronic and Axonics are direct competitors in the marketplace, that the other asserted patents will expire in 2024–2026, and that during the stays and continuances Axonics has been taking market share away from Medtronic. *Id.* at 8–11 & 17–21.

Medtronic also suggests that concerns about a potential retrial may be avoided by "a special verdict form separating out the jury's decisions on the patents still subject to the Board's review." *Id.* at 12. Medtronic's suggestion of a special verdict form is unpersuasive. If a trial is conducted on all asserted patents and the PTAB later invalidates the Tined Leads Patents, Axonics would likely request a new trial based on the discussion of the Tined Leads Patents at trial having purportedly increased the perceived value of the asserted patents as a whole and thereby increased any damages award by the jury. Although it is premature to address this potential issue prior to hearing the evidence and arguments presented at trial, the potential risk renders

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDEDate: July 17, 2023

Page 5

Medtronic's suggestion of a special verdict form unpersuasive in the present analysis on Axonics's request for a stay.

The first *Universal Electronics* factor is "whether discovery is complete and whether a trial date has been set." *Universal Elecs.*, 943 F. Supp. 2d at 1031. Here, fact and expert discovery are complete, a hearing on summary judgment motions and *Daubert* motions is set for July 18, 2023, a final pretrial conference is set for August 1, 2023, and trial is set for August 15, 2023. *See* Order Setting Trial Schedule (Dkt. 265). This case is therefore at an advanced pretrial stage. Accordingly, this factor weighs against a stay. *See* Opp'n at 8–11 (citing *Space Data Corp. v. Alphabet, Inc.*, No. 16-cv-03260-BLF, 2019 WL 1131420, at *2 (N.D. Cal. Mar. 12, 2019) (considering "whether parties have engaged in costly expert discovery and dispositive motion practice, whether the court has issued its claim construction order, and whether the court has set a trial date") (citation omitted); *Carl Zeiss A.G. v. Nikon Corp.*, No. 2:17-CV-07083-RGK-MRW, 2018 WL 5081479, at *2–*3 (C.D. Cal. Oct. 16, 2018) (completion of claim construction weighs against a stay)).

The second *Universal Electronics* factor is "whether a stay will simplify the issues in question and trial of the case." *Universal Elecs.*, 943 F. Supp. 2d at 1032. The parties present competing views of what the PTAB is likely to do on remand. There is a significant possibility, however, that the PTAB may invalidate the Tined Leads Patents, in which case any further litigation of those patents would be a waste of resources for the parties, for the Court, and for any jury. Additionally, as both sides note, the PTAB has a Standard Operating Procedure[2] to resolve remanded IPRs within six months of the Federal Circuit's mandate. Medtronic cites instances in which the PTAB took eight or nine months to reach a decision after remand (Opp'n at 18), but in all likelihood a stay in this case would be far less than the 17 months (May 2020 to October 2022) that this case was originally stayed pending IPRs.

When the Court stayed this case in 2020 for the original IPRs, the Court considered whether "there is more work ahead of the parties and the Court than behind the parties and the Court." *See* May 8, 2020 Minute Order Granting Motion to Stay (Dkt. 55) at 3 (citation omitted). That factor has changed substantially because discovery has been completed (including resolution of numerous discovery disputes), and the parties

---

[2] The parties cite "https://www.uspto.gov/sites/default/files/documents/
sop_9_%20procedure_for_decisions_remanded_from_the_federal_circuit.pdf"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02115-DOC-JDE                                      Date: July 17, 2023

Page 6

have filed summary judgment motions, *Daubert* motions, claim construction objections, and motions in limine—all of which have been fully briefed (except for responses to motions in limine).

Nonetheless, the summary judgment motions, *Daubert* motions, claim construction objections, and motions in limine have not yet been orally argued. As such, the Court finds that much of the work in this case still lies ahead, including hearing and ruling on these motions, conducting a final pretrial conference, and conducting what is likely to be a complex patent trial involving seven patents across three distinct patent families with as many as dozens of asserted claims. This extensive work may become moot should the PTAB invalidate the Tined Leads Patents.

Medtronic argues that this factor weighs against a stay because the pending PTAB proceedings involve only a portion of the overall case. *See* Opp'n at 12 (citation omitted). This case in its present form, however, is highly complex. If the PTAB invalidates the Tined Leads Patents, thereby removing one of the three asserted patents families, the trial would be significantly less costly for the parties, more manageable for the Court, and more understandable for the jury. One alternative that seems workable at the outset is that the Tined Leads Patents could be severed out and the remainder of the patents proceed to trial. But if the PTAB does not invalidate the Tined Leads Patents, then there would be a second trial with duplication of effort. And Medtronic concedes that severing out the remanded patents "would be entirely inefficient because of the significant overlap in evidence" (because all of the patents-in-suit involve the same accused sales of the same accused products) and "would result in two nearly duplicative trials." Opp'n at 12.

Finally, despite Medtronic's assertion that there is no overlap in the invalidity issues in the present case and in the IPRs, a stay of the present case would have the added benefit of avoiding any potential risk of inconsistency between a jury verdict and any of the PTAB's findings or analysis. Thus, the Court finds that the second factor weighs in favor of a stay. *See Wonderland Nursery Goods Co. v. Baby Trend*, Inc., No. EDCV 14-01153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (finding that a delay incurred by a stay "is minimal relative to the risk of unnecessary expenditure of resources should the stay be denied").

The third *Universal Electronics* factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs.*, 943 F. Supp. 2d at 1032. A stay will undoubtedly cause some degree of prejudice to Medtronic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDE     Date: July 17, 2023

Page 7

by delaying resolution of whether Medtronic is entitled to any damages or an injunction. The parties are direct competitors in the marketplace and, although the prior stay and continuances have been through no fault of Medtronic, two patent families—the '324 and '112 "Temperature Control Patents", and the '758 and '069 "Charge Control Patents"—will expire during 2024–2026. Specifically, Medtronic submits that "the sacral neuromodulation market consists only of Medtronic and Axonics, and during the time the case is stayed, Axonics will continue to capture Medtronic's market share via it[]s infringing R15 product."  Opp'n at 20; *see id.* at 19–20 (citing *Juno Therapeutics, Inc. v. Kite Pharma*, No. CV 17-07639 SJO (RAOx), 2018 WL 1470594, at *8 (C.D. Cal. Mar. 8, 2018), and citing *Tire Hanger Corp. v. Shinn Fu Co. of Am.*, No. ED CV 16-02668 JAK (JPRx), 2017 WL 3457122, at *4 (C.D. Cal. Jun. 7, 2017) ("infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages")).  Medtronic argues that now, as when the Court lifted the previous stay in 2021, any lack of finality as to the IPR proceedings is "not, in and of itself, a sufficient basis to make the patentee continue to wait to enforce patent rights that it currently holds." *Juno*, 2018 WL 1470594, at *7; s*ee* Opp'n at 17; *see also* Oct. 2021 Minute Order Granting Motion to Lift Stay (Dkt. 68).

On balance, the relatively advanced state of this case and the prejudice to Medtronic as a result of any stay here are outweighed by the risk of unnecessary and significant expenditure that the Federal Circuit's remanding of the IPRs, whatever their outcome, will entail. Proceeding to trial at the present time would likely result in substantial wasted time and effort, extensive additional motion practice, and perhaps even an additional lengthy trial.  These substantial risks cannot be justified here, particularly given that, as noted above, the PTAB has a Standard Operating Procedure to resolve remanded IPRs within six months of the Federal Circuit's mandate.

Having thus considered these factors and the totality of the circumstances in this case, the Court GRANTS Axonics's request for a stay of this case until the PTAB enters its decisions on the remanded IPRs.

As for Axonics's request to reopen *Daubert* briefing regardless of whether the case is stayed, Medtronic opposes, arguing that its experts' opinions on invalidity are *not* undermined by the Federal Circuit's recent decision.  Opp'n at 15–16.  This dispute need not be addressed prior to staying the case and would be better addressed after the PTAB

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-02115-DOC-JDEDate: July 17, 2023

Page 8

enters its decisions on the remanded IPRs.  Axonics's request to reopen *Daubert* briefing is therefore denied without prejudice.

## IV.Disposition

Defendant Axonics's Ex Parte Application for Order to Stay This Case or Reopen *Daubert* Briefing Based on New Controlling Authority (Dkt. 306) is **GRANTED IN PART** and **DENIED IN PART** as follows:  The case is hereby **STAYED** pending resolution of the Inter Partes Reviews of asserted United States Patents No. 8,036,756 and 8,626,314 that the Federal Circuit recently reversed and remanded to the PTAB.  Defendant's request to reopen *Daubert* briefing is hereby **DENIED WITHOUT PREJUDICE**.  The parties shall file a joint status report within ten (10) days of the PTAB issuing its decision on the remanded Inter Partes Reviews.

The hearing on the parties' motions for summary judgment and *Daubert* motions, currently set for July 18, 2023, is hereby **VACATED.**

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11Initials of Deputy Clerk: kdu

CIVIL-GEN