Nimalka Wickramasekera (SBN: 268518)
NWickramasekera@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Robert N. Kang (CA SBN: 274389)
RKang@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

George C. Lombardi (*pro hac vice)*
GLombard@winston.com
Brian Nisbet (*pro hac vice*)
BNisbet@winston.com
J.R. McNair (*pro hac vice*)
JMcNair@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.,

Plaintiffs,

v.

AXONICS MODULATION TECHNOLOGIES, INC.,

Defendant.

**Case No. 8:19-cv-02115-DOC-JDE**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO LIFT STAY**

Date: May 6, 2024
Time: 8:30 a.m.
Courtroom: 10A
Judge: Hon. David O. Carter

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2024 at 8:30 a.m., before the Honorable David O. Carter, 411 West Fourth Street, Courtroom 10A, Santa Ana, California 92701, Plaintiffs Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, and Medtronic USA, Inc. (collectively, "Medtronic"), by and through their undersigned counsel, move this Court to lift the stay entered on July 17, 2023, Dkt. 314, (the "Motion") and to issue a new scheduling order with dates for (1) a hearing on the parties' summary judgment and Daubert motions, (2) a pretrial conference, and (3) a trial.

This Motion is made on the grounds that the stage of the proceedings, the potential for simplification, and prejudice to Medtronic all warrant lifting the stay. This Motion is based on the accompanying Memorandum of Points and Authorities attached hereto, the accompanying Declaration of J.R. McNair ("McNair Decl."), the records and pleadings on file herein, any matters of which this Court may take judicial notice, and on such additional evidence or argument as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to C.D. Cal. R. 7-3, which took place on March 29, 2024.

Dated: April 5, 2024

WINSTON & STRAWN LLP

By: */s/ Nimalka Wickramasekera*
George C. Lombardi
Nimalka Wickramasekera
J.R. McNair
Brian Nisbet
Robert N. Kang

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, INC.

# TABLE OF CONTENTS

**Page**

**I.** INTRODUCTION ........ 1

**II.** BACKGROUND ........ 2

- **B.** The Technology of The Patents-in-Suit ........ 3
- **C.** Axonics' IPR Petitions and Motion for Stay ........ 4
- **D.** The PTAB's Final Written Decisions ........ 5

**III.** LEGAL STANDARD ........ 6

**IV.** ARGUMENT ........ 7

- **A.** The Stage of the Litigation Weighs in Favor of Lifting the Stay. ........ 7
- **B.** Director Review and Appeals Are Unlikely to Simplify the Case. ........ 7
- **C.** Continuing the Stay Would Give Axonics a Clear Tactical Advantage ........ 9

**V.** CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Survival v. Surface Transp. Bd.*,
704 F.3d 615 (9th Cir. 2012) ........ 6

*Axonics, Inc. v. Medtronic, Inc.*,
73 F.4th 950 (Fed. Cir. 2023) ........ 4

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023) ........ 5

*Axonics, Inc. v. Medtronic Inc.*,
No. 2022-1534, Dkt. 52 ........ 4

*Axonics, Inc. v. Medtronic, Inc.*,
No. IPR2020-00679, 2024 WL 1215318 (P.T.A.B. Mar. 21, 2024) ........ 2

*Axonics, Inc. v. Medtronic, Inc.*,
No. IPR2020-00715, 2024 WL 1219352 (P.T.A.B. Mar. 21, 2024) ........ 2

*Boston Sci. Corp. v. Edwards Lifesciences Corp.*,
No. 16-cv-00730, 2018 WL 11349847 (C.D. Cal. Nov. 15, 2018) ........ 8

*Carl Zeiss A.G. v. Nikon Corp.*,
No. 17-cv-3221, 2018 WL 1855525 (C.D. Cal. Feb. 9, 2018) ........ 7

*Cherokee Nation of Okla. v. United States*,
124 F.3d 1413 (Fed. Cir. 1997) ........ 6

*Clinton v. Jones*,
520 U.S. 681 (1997) ........ 6

*Credit Acceptance Corp. v. Westlake Servs., LLC*,
2015 WL 12860460 (C.D. Cal. July 2, 2015) ........ 6

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ........ 6

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ........ 6

*Juno Therapeutics, Inc. v. Kite Pharma*, No. 17-cv-7639, 2018 WL 1470594 (C.D. Cal. Mar. 8, 2018) ........................ 8, 9

*Kahn v. Gen. Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) ........................ 6

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................ 6, 10

*Lund Motion Products, Inc. v. T-Max Hangzhou Tech. Co.*, No. 17-cv-01914, 2020 WL 13610390 (May 13, 2020) ........................ 7, 8, 10

*Otto Bock HealthCare LP v. Össur hf*, No. 13-cv-891, 2013 WL 12313020 (C.D. Cal. Dec. 16, 2013) ........................ 6

*PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022 (N.D. Cal. Sept. 24, 2014) ........................ 9

*Tire Hanger Corp. v. Shinn Fu Co. of Am.*, No. 16-cv-2668, 2017 WL 3457122 (C.D. Cal. Jun. 7, 2017) ........................ 9

*Toshiba Tec Corp. v. Katun Corp.*, No. 15-cv-1979, 2016 WL 9137646 (C.D. Cal. Sept. 21, 2016) ........................ 9

*Universal Elecs., Inc. v. Universal Remote Control, Inc.* 943 F. Supp. 2d 1028 (C.D. Cal. May 2, 2013) ........................ 6, 7, 9

*Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000) ........................ 6

**Statutes**

U.S.C. § 314(d) ........................ 8

**Other Authorities**

Median Disposition Time for Cases Terminated After Hearing or Submission (Table): 2023 (reported September 30, 2023, available at http://www.cafc.uscourts.gov/sites/default/files/the-court/statistics/06_Med_Disp_Time_MERITS_Line_Chart.pdf (accessed April 3, 2024). ........................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Medtronic respectfully requests that the Court lift Axonics's second requested stay of this case. Dkt. 314. At Axonics's request, this case, which has been pending for over four years, has now been stayed for a total of more than two years pending Axonics's repeated unsuccessful challenges to Medtronic's asserted patents. As relevant to this motion, Axonics has now failed twice before the Patent Trial and Appeal Board ("PTAB") to invalidate all claims of the Tined Leads Patents, U.S. Patent Nos. 8,036,756 and 8,626,314. Dkt. 314. Accordingly, as the Court previously contemplated when the first stay was lifted, Medtronic[1] promptly and respectfully requests that the stay of this case be lifted once again with the Court resetting the remaining dates for the Daubert/summary judgement hearing, pretrial conference, and trial set at its earliest convenience. Dkt. 314; Dkt. 319; Dkt. 329; Hearing Tr. 10:7–19 ("[I]ntially, Axonics prevailed on me granting that [first] stay . . . [a]nd I would think the equities would fall to Medtronic on today's date in terms of choosing the dates that you want to go forward on.").

Medtronic promptly filed this patent infringement case on November 4, 2019, two months after Axonics's infringing rechargeable Sacral Neuromodulation ("r-SNM") System was approved by the FDA, and six days after the first commercial implant of the infringing product took place. Dkt. 310 at 2. On July 17, 2023, less than one month before trial, the Court stayed this case—for a second time—"pending resolution of the Inter Partes Reviews of asserted United States Patents No. 8,036,756 and 8,626,314 . . . ." On March 21, 2024, the PTAB upheld the patentability of all asserted claims in the '756 patent and asserted claims 18–21 and 24 of the '314 patent.

---

[1] Plaintiffs Medtronic, Inc., Medtronic Puerto Rico Operations Co., Medtronic Logistics, LLC, and Medtronic USA, Inc. are referred to collectively herein as "Medtronic."

*Axonics, Inc. v. Medtronic, Inc.*, No. IPR2020-00679, 2024 WL 1215318 (P.T.A.B. Mar. 21, 2024); *Axonics, Inc. v. Medtronic, Inc.*, No. IPR2020-00715, 2024 WL 1219352 (P.T.A.B. Mar. 21, 2024).

The Court typically considers three factors in determining whether to stay a case pending inter partes review. At present, all three factors favor lifting the stay. ***First***, this case is at an advanced pretrial stage with only a hearing on pretrial motions and trial remaining. ***Second***, given the PTAB's upholding of the validity of asserted claims of the '314 and '756 patents on remand and Medtronic's decision to dismiss the '148 and '758 patents currently in remand with prejudice, the case has been simplified with the remaining PTAB proceedings having no bearing on this case. ***Finally***, Medtronic has been and continues to be harmed from the two years of stays in this case that pushed the original trial date more than three years, prejudicially delaying Medtronic from presenting to the jury Axonics's blatant disregard and infringement of Medtronic's patents, which continues unabated to this day.

Accordingly, and for the reasons discussed below, Medtronic requests that the Court lift the stay and issue a new scheduling order with dates for (1) a hearing on the parties' summary judgment and Daubert motions; (2) a pretrial conference; and (3) a trial date.

## II. BACKGROUND

### A. Initiation of Action by Medtronic and Progress of the Case

Medtronic initiated this action on November 4, 2019, Dkt. 1, and filed its Amended Complaint ("FAC") on November 26, 2019, Dkt. 28, alleging infringement of seven patents. Axonics answered the FAC on January 2, 2020. Dkt. 34. This case has been stayed pending IPR proceedings twice, and the trial date has otherwise been delayed twice, including to accommodate Axonics' counsel. Dkt. 42 at 1; Dkt. 149; Dkt. 162; Dkt. 260; Dkt. 265.

The first stay occurred between May 2020 and October 2021 while the parties waited for the PTAB to issue final written decisions finding patent claims valid in all

challenged patents. Dkt. 55; Dkt. 68. Before the first stay, the parties actively engaged in discovery and were working towards a trial in March 2021. Dkt. 42. After the Court lifted the first stay, the parties completed discovery and all pretrial briefing. Dkt. 314 at 5. After asking the Court to postpone the trial to accommodate counsel, Axonics requested and the Court ordered a second stay on July 17, 2023—on the eve of the parties' oral arguments on summary judgment and Daubert motions—to allow remand proceedings at the PTAB to go forward. *Id.* This case has been pending for over four years, having now been stayed for a total of two years.

### B. The Technology of The Patents-in-Suit

This case involves three patent families related to implantable medical devices that use electrical energy, including for nerve stimulation, with patent terms extending to 2022, 2024, and 2026, respectively. The first family, which expired while this case was pending, covers the invention of Medtronic's "tined lead," which transformed a highly invasive surgery into a minimally invasive outpatient procedure universally lauded by those in the field. Dkt. 63-5 at 7-13. Axonics' CEO himself identified the "advent of the tined lead" as "the initial catalyst that sparked growth" and "[o]nce that innovation was brought to bear, you saw the market just took off from there[.]" Dkt. 63-6 at 3. Axonics mimicked this invention with its own tined lead, Axonics' CEO colorfully explaining that "[y]ou can blindfold a physician, they won't be able to know the difference between whether you're doing a Medtronic implant or an Axonics implant." Dkt. 63-7 at 5.

The other patent families both relate to technology that facilitates safe and efficient recharging of devices implanted under the skin with an external recharger. While Axonics claims to be an innovator because it was first to launch its rechargeable device for sacral neuromodulation, Dkt. 63-2 at 1, it has only done so by using Medtronic's patented technology, forcing Medtronic to compete with its own inventions. The second patent family (the '112 and '324 patents) covers Medtronic's technology for controlling the transfer of recharge energy to the implant based on the

temperature of the external recharger, a critical safety feature, the absence of which caused another company to have to recall its device for treating pain to use the feature to avoid burning patients. Dkt. 63-8 at 58-61. The third family (the ’069 patent) relates to additional features to efficiently control the transfer of recharge energy based on feedback of certain parameters measured in the implantable device.

### C. Axonics' IPR Petitions and Stay Motions

The first stay in this case lasted more than seventeen months. On March 16, 2020, Axonics filed seven IPR petitions,[2] asserting that claims of all seven asserted patents in this case were unpatentable. On April 10, 2020, Axonics moved for a stay "pending final determinations in the seven IPR proceedings it has raised." Dkt. 49 at 16. The Court granted Axonics' motion for stay, noting that "[a]lthough *inter partes* review would not be completed until September 2021, which is later than the current trial date, the conservation of judicial resources stemming from the simplification of issues would justify continuing the trial date." Dkt. 55 at 3. The PTAB denied institution as to the ’324 patent, but it reviewed the remaining six patents.

The PTAB issued its final written decisions and upheld the patentability of asserted claims in each patent. Dkt. 62 at 2–3. The Court accordingly lifted the stay in this case on October 22, 2021. Dkt. 68. While this case progressed through discovery and toward trial, Axonics appealed the IPRs for the ’112, ’314, ’756, ’758, and ’148 patents to the Federal Circuit. *See* Dkt. 303; Dkt. 315. The Federal Circuit affirmed the PTAB's finding of validity of the ’112 patent, which Axonics did not further appeal. *Axonics, Inc. v. Medtronic Inc.*, No. 2022-1534, Dkt. 52. The Federal Circuit also vacated and remanded the PTAB's decisions pertaining to the ’314, ’756, ’758, and ’148 patents. *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 959 (Fed. Cir. 2023)

[2] IPR2020-00678 (the ’069 patent); IPR2020-00680 (the ’758 patent); IPR2020-00712 (the ’148 patent); IPR2020-00713 (the ’112 patent); IPR2020-00714 (the ’324 patent); IPR2020-00679 (the ’314 patent); and IPR2020-00715 (the ’756 patent).

('314 and '756 patents); *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1384 (Fed. Cir. 2023) ('758 and '148 patents). The Court entered a second stay on July 17, 2023, pending the PTAB's decision on remand of the tined lead patents ('314 patent and '756 patent). Dkt. 314. At this time, that stay has lasted over eight months.

**D. The PTAB's Decision on Remand**

On March 21, 2024, the PTAB again resolved the IPRs relating to the '756 patent and the '314 patent in Medtronic's favor, confirming the patentability of all asserted claims of the '756 patent and claims 18–21 and 24 of the '314 patent. Following the issuance of the final written decisions, which are summarized below for the currently asserted claims, ***all*** asserted patents remain in suit:

| IPR Petition No. | Patent No. | Institution/ Final Written Decision |
|---|---|---|
| IPR2020-00714 | 9,463,324 | Denied institution as to each asserted claim on all asserted grounds, no pending proceedings |
| IPR2020-00715 | 8,036,756 | Patentability of all asserted claims upheld |
| IPR2020-00679 | 8,626,314 | Patentability of asserted claims 18–21, and 24 upheld |
| IPR2020-00713 | 9,821,112 | Patentability of asserted claims 1–7, 16–18, and 22 upheld, no pending proceedings |
| IPR2020-00712 | 8,738,148 | Currently in remand |
| IPR2020-00680 | 8,457,758 | Currently in remand |
| IPR2020-00678 | 7,774,069 | Patentability of asserted claim 7 upheld, no pending proceedings |

Following these final determinations, the PTAB has confirmed the patentability of claims across five Asserted Patents. The remand IPR review of the '148 and '758 patents remain pending, but in order to expedite proceedings, Medtronic intends to

dismiss those patents with prejudice as to Axonics' accused R15 product. Dkt. 331 at 3–4. As fact and expert discovery are complete, all that remains is to handle pretrial motions and set a trial date. Dkt. 314 at 5.

## III.   LEGAL STANDARD

"The party seeking a stay bears the burden of showing that a stay is warranted." *Otto Bock HealthCare LP v. Össur hf*, No. 13-cv-891, 2013 WL 12313020, at *2 (C.D. Cal. Dec. 16, 2013); *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay." *Credit Acceptance Corp. v. Westlake Servs., LLC*, No. 13-cv-1523, 2015 WL 12860460, at *3 (C.D. Cal. July 2, 2015); *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012) (A stay should be lifted when a court concludes that "[p]etitioners no longer satisfy the standard for issuance of a stay."). "Courts have inherent power to manage their dockets and stay proceedings." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). It is, however, an abuse of discretion to issue an indefinite stay "in the absence of a pressing need," and stays of indefinite duration are particularly disfavored. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see also Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("In deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay."). A stay is "indefinite" when it is tied to the resolution of another proceeding whose end date is unknown. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007); *see also Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).

A stay should not stand unless the following factors weigh in favor of delaying the plaintiff's ability to enforce its rights: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear

tactical disadvantage to the nonmoving party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.* 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. May 2, 2013). The determination whether to lift a stay is governed by the "totality of the circumstances." *Id.* at 1031.

## IV. ARGUMENT

### A. The Stage of the Litigation Weighs in Favor of Lifting the Stay.

The first factor—the stage of litigation—favors lifting the stay. When the Court stayed the case in July 2023, it found that this factor weighed against granting a stay because "fact and expert discovery [we]re complete, a hearing on summary judgment motions and *Daubert* motions [wa]s set . . ., a final pretrial conference [wa]s set . . ., and trial [wa]s set . . . ." Dkt. 314 at 5. The analysis has not changed since then. This case remains "at an advanced pretrial stage." (*Id.*) It has been pending for over four years, during which the parties completed extensive and costly proceedings, including depositions of 26 different fact witnesses, full argument and a report and recommendation on claim construction before the Special Master, reports and depositions of 12 experts, and the filing of pretrial motions and orders. It has been stayed twice for a total of nearly two years all at Axonics' request, and the trial has been delayed multiple times from its original setting three years ago, on March 9, 2021, including to accommodate an issue with Axonics' trial counsel. Dkt. 42 at 1; Dkt. 149; Dkt. 162; Dkt. 260; Dkt. 265. Accordingly, this factor weighs against a stay. *See Carl Zeiss A.G. v. Nikon Corp.*, No. 17-cv-3221, 2018 WL 1855525, at *2 (C.D. Cal. Feb. 9, 2018) (this factor favors lifting a stay when "parties have served extensive discovery").

### B. No Issue Remains That the Stay Could Simplify.

The second factor asks "whether a continuation of the stay is likely to simplify the issues remaining before the Court." *See Lund Motion Products, Inc. v. T-Max Hangzhou Tech. Co.*, No. 17-cv-01914, 2020 WL 13610390, at *5 (May 13, 2020). It is not.

None of the issues before the Court will be simplified by a stay because the IPRs have completed for each patent Medtronic intends to assert at trial. First, the PTAB denied institution as to each claim of the ’324 patent, and its decision is “final and nonappealable.” 35. U.S.C. § 314(d). Second, the PTAB considered and upheld the patentability of the ’112 and ’069 patents, and Axonics has exhausted any appellate relief. Third, the PTAB recently confirmed the patentability of the currently asserted claims of the ’756 and ’314 patents. Finally, two other Asserted Patents—the ’148 and ’758 patents—remain in remand, but in order to simplify and expedite trial, Medtronic is prepared to dismiss with prejudice the claims based on those patents as to Axonics’s accused R15 product. There is no need to stay the case further pending those IPRs. For the five patents that will remain in this case, therefore, no issue remains that will be simplified by a stay.

Even if Axonics appeals or seeks director review of the recent PTAB decisions pertaining to the tined lead patents, there is no reason to stay the case pending those appeals. As this Court stated when Axonics sought to extend its first stay pending appeals of the final written decisions, “the pendency of an appeal and its speculative success is ‘not, in and of itself,’ a sufficient basis to make the patentee continue to wait to enforce patent rights that it currently holds.” Dkt. No. 68 at 2–3. Indeed, the possibility of extending the stay through the appeals process for an undetermined duration of time would needlessly delay resolution of this case. *See Lund*, 2020 WL 13610390, at *5 (quoting *Juno Therapeutics, Inc. v. Kite Pharma*, No. 17-cv-7639, 2018 WL 1470594, at *7 (C.D. Cal. Mar. 8, 2018)) (“That the Federal Circuit may reverse the PTO . . . is not, in and of itself, a sufficient basis to make the patentee . . . continue to wait to enforce patent rights that it currently holds.”). Moreover, any further possibility of simplification should the stay be continued is purely speculative. *See Boston Sci. Corp. v. Edwards Lifesciences Corp.*, No. 16-cv-00730, 2018 WL 11349847, at *2 (C.D. Cal. Nov. 15, 2018) (“Waiting for a decision from the Federal Circuit subjects the present action to the indefinite timeline of the appeal process in

exchange for an uncertain or unlikely possibility of further simplification of the issues.").

As such, this factor strongly favors lifting the stay.

**C. Continuing the Stay Would Give Axonics a Clear Tactical Advantage**

The third and final factor also favors lifting the stay. As the Court previously recognized before staying this case a second time due to the IPR remand proceedings, "[a] stay will undoubtedly cause some degree of prejudice to Medtronic by delaying resolution of whether Medtronic is entitled to any damages or an injunction." Dkt. 314. That prejudice has only heightened while the case has been stayed the last eight months and will continue to cause Medtronic harm until a trial date is set.

Axonics cannot contest and the Court has found that "[t]he parties are direct competitors in the marketplace." Dkt. 314. Indeed, they compete directly in a two-player market to convince doctors and patients to implant their sacral neuromodulation systems over their competitor. Dkt. 50-1 at 2–3; *id. at* 13 (Axonics CEO stating, "Medtronic has had this market to themselves for 20+ years."). "[P]rejudice [to the patentee] is heightened when parties to litigation are direct competitors," and as a result, "courts presume that a stay will prejudice the non-movant." *Juno*, 2018 WL 1470594, at *8 (citing *Universal Elecs.*, 943 F. Supp. 2d at 1034). Axonics admits that its accused products directly compete with Medtronic's products, Dkt. 53 at 8, and "[c]ourts regularly find this factor weighs strongly against granting a stay where the parties are direct competitors." *See Toshiba Tec Corp. v. Katun Corp.*, No. 15-cv-1979, 2016 WL 9137646, at *4 (C.D. Cal. Sept. 21, 2016). Moreover, unlike "patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Tire Hanger Corp. v. Shinn Fu Co. of Am.*, No. 16-cv-2668, 2017 WL 3457122, at *4 (C.D. Cal. Jun. 7, 2017) (citing *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1030 (N.D. Cal. Sept. 24, 2014)). Indeed, Axonics recently announced that it will be acquired by a much

larger Medtronic competitor, Boston Scientific Corporation, forcing Medtronic to compete with its own technology on a much larger scale. Ex. 1 at 1.

If the Court extends the stay pending appeal, the case would likely be stalled indefinitely and likely at least another year. The median time from filing to disposition at the Federal Circuit in cases appealed based on decisions from the PTO has increased to 19 months in the last fiscal year.[3] Subjecting Medtronic to this additional delay would cause undue prejudice, especially because patents-at-issue covering Medtronic's rechargeable product are set to expire between 2024 and 2026. This is especially so where Axonics has exhausted any further appeal of three patents in this case that are ready to be tried: the '324, '112, and '069 patents. *See Lund*, 2020 WL 13610390, at *6 (Judge Carney finding that plaintiff would be subject to undue prejudice if a stay were continued where the patents in issue are set to expire soon). Absent the present stay, Medtronic could have sought an injunction on five unexpired patents. Two more patents ('112 and '324 patents) expire later this month. If this stay remains pending the Federal Circuit's decision, the remaining asserted patents will likely all expire, and trial will not occur until nearly seven years after Medtronic filed its complaint. "[I]f there is even a fair possibility that the stay . . . will work damage to" the non-movant, the movant "must make out a clear case of hardship or inequity" to it to justify a stay of any length. *Landis*, 299 U.S. at 255.

Axonics cannot make that showing here and the stay should be lifted.

## V. CONCLUSION

For the reasons stated herein, Medtronic requests that the Court lift the stay and issue a new scheduling order with dates for (1) a hearing on the parties' summary judgment and Daubert motions; (2) a pretrial conference; and (3) a trial date.

[3] *See* Median Disposition Time for Cases Terminated After Hearing or Submission (Table): 2023 (reported September 30, 2023, available at http://www.cafc.uscourts.gov/sites/default/files/the-court/statistics/06_Med_Disp_Time_MERITS_Line_Chart.pdf (accessed April 3, 2024).

Accordingly, Medtronic's motion should be granted.

Dated: April 5, 2024

WINSTON & STRAWN LLP

By: /s/ *Nimalka Wickramasekera*
George C. Lombardi
Nimalka Wickramasekera
J.R. McNair
Brian Nisbet
Robert N. Kang

Attorneys for Plaintiffs
MEDTRONIC, INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; MEDTRONIC LOGISTICS, LLC; MEDTRONIC USA, IN