DAVID M. KEYZER (SB# 248585)
david@keyzerlaw.com
LAW OFFICE OF DAVID KEYZER, P.C.
5170 Golden Foothill Parkway
El Dorado Hills, CA 95762
Telephone: (916) 243-5259
Facsimile: (916) 404-0436

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MEDTRONIC, INC., et al. | Case No. 8:19-CV-02115-DOC-JDE |
| Plaintiffs, | Hon. David O. Carter |
| v. | Special Master David M. Keyzer |
| AXONICS MODULATION TECHNOLOGIES, INC. | **SPECIAL MASTER ORDER** |
| Defendant. | **No. SM-30 AND** |
| | **SPECIAL MASTER MINUTES** |
| | **REDACTED** |

Pursuant to authority provided by the April 26, 2022 Amended Order Appointing Special Master (*see* Dkt. 100), the procedure set forth in Special Master Order No. SM-5 (Dkt. 135-1), and e-mail correspondence between the Special Master and counsel for both

sides on at least June 27, 2024, and July 2 and 12, 2024, the Special Master held a hearing on July 15, 2024 (in conjunction with the Court's Final Pretrial Conference on that date), regarding Axonics's request to strike certain expert opinions and proposed trial witnesses. The Special Master also received an opening letter brief from Axonics on July 9, 2024, and a responsive letter brief from Medtronic on July 12, 2024.

## I. SPECIAL MASTER MINUTES

At the July 15, 2024 hearing, the parties appeared as follows:

| For Plaintiffs (Medtronic) | For Defendant (Axonics) | Reporter |
|---|---|---|
| George Lombardi<br>Nimalka Wickramasekera<br>Brian Nisbet<br>Michael Meneghini | Matthew Powers<br>Aaron Nathan<br>William Nelson<br>Azra Hadzimehmedovic<br>David Stein<br>Amy Crocetti (client representative) | Electronic Court Recorder |

The Special Master convened the hearing in Courtroom 10A of the Ronald Reagan Federal Building on July 15, 2024, at 4:25 P.M. Pacific Time (in conjunction with the Final Pretrial Conference conducted by Judge Carter on that date), heard oral arguments by Matthew Powers on behalf of Axonics and by Nimalka Wickramasekera and Brian Nisbet on behalf of Medtronic, took the matters under submission, and adjourned at 5:20 P.M. During a subsequent portion of the Final Pretrial Conference on that same date, the Special Master orally granted Axonics's motion to strike and stated the Special Master would provide reasoning in a written order, which is now set forth herein.

## II.  SPECIAL MASTER ORDER

A.  DISCUSSION

(1)  Dr. McDuff

When Medtronic's damages expert, Dr. DeForest McDuff, supplemented his report pursuant SM-29 (cited below), he included an opinion that "Axonics's recently produced sales data further indicates that Medtronic suffered additional harm to that discussed above from Axonics's alleged infringement due to the competitive advantage Axonics gained relative to Medtronic's competing products, as compared to a but-for world in which Axonics never sold an allegedly infringing product." (June 17, 2024 McDuff Report at ¶ 21.)

Axonics moves to strike this theory of additional damages, arguing that it is new, untimely, and unfairly prejudicial.  (July 9, 2024 Axonics Ltr. at 1–2.)

Medtronic responds:

> [T]he crux of McDuff's analysis could not be performed—the head start could not be quantified—without the newly produced financial data showing the result and extent of the head start. In quantifying the "head start" Axonics gained via its alleged infringement, McDuff relies upon the newly produced information. Axonics brushes this under the rug by blithely acknowledging only that "McDuff uses some of the newly produced data later in these calculations." Ltr. Br. at 2. But these calculations that "use[] some of the newly produced data" are the heart of the analysis.

(July 12, 2024 Medtronic Ltr. at 2.)

The Court's April 22, 2024 Order Granting Plaintiff's Motion to Lift Stay provided:

> If one or more parties believe that any *change of circumstances during the stay necessitates some limited additional fact discovery or limited additional expert discovery*, any such request should be directed to the Special Master, and the Court hereby AUTHORIZES the Special Master to order limited additional discovery if the Special Master finds it appropriate.

(Dkt. 334 at 6 (emphasis added); *see* Dkt. 314, July 17, 2023 Order (granting stay).)

The Special Master received argument and entered Special Master Order No. SM-29 on May 31, 2024 (Dkt. 372) ("SM-29"), which "read[] narrowly the Court's requirement that a 'change of circumstances during the stay necessitates some limited additional fact discovery or limited additional expert discovery.'" (SM-29 at 3 (quoting Dkt. 334 at 6).) The Special Master addressed several requests in SM-29 and ultimately ordered:

> (1) Axonics and Medtronic shall update their productions of financial data regarding Axonics's accused products, Axonics's redesigned charger, Medtronic's products that purportedly embody the patents-in-suit, and any related sacral neuromodulation products as to which the parties produced financial data during discovery (so as to include financial information for periods of time after the close of fact discovery and up to as recent a date as is reasonably feasible to produce) . . .;
>
> (2) Medtronic's damages expert, Dr. DeForest McDuff, may serve a limited supplemental report to update his opinions based on the additional discovery ordered in (1), above, . . .; and
>
> (3) Axonics's damages expert, Ms. Julie Davis, may serve a limited supplemental report to update her opinions based on the additional discovery ordered in (1), above, . . . .

Thus, whereas the parties had exchanged financial data only up to June 2022, the Special Master ordered additional productions of financial data for subsequent time

periods, and the Special Master permitted the experts to "update" their opinions based on this additional discovery. (*Id.*)

The first two portions of Dr. McDuff's June 17, 2024 report (Sections 2.1 and 2.2) apply Dr. McDuff's existing analysis to the additional sales data produced by the parties pursuant to SM-29.

In Section 2.3 of the report, by contrast, Dr. McDuff opines that, "as an economic matter," "Axonics's enhanced competitive position through early infringement would have caused additional harm to Medtronic beyond that quantified above [in Sections 2.1 and 2.2)." (June 17, 2024 McDuff Report at ¶ 21.)

At the July 15, 2024 hearing, Medtronic emphasized that Axonics did not begin selling its F15 product until a "soft launch" in March 2022, followed by a full launch of the product in April 2022, thus yielding only about two months of F15 sales data for Dr. McDuff to consider before the end of the parties' productions of sales data in June 2022 (until, in May 2024, the Special Master entered SM-29 to order production of additional financial data for periods after June 2022).

Of particular note, Dr. McDuff opines that "[c]onsistent with my experience and expertise, Axonics sought to build a customer base, sales base, and brand reputation in the SNM market in connection with the launch of its first product, the allegedly infringing R15 system." (*Id.* at ¶ 24.) Thus, whereas Dr. McDuff newly opines that "the physician relationships and marketplace reputation [Axonics] established through early

infringement related to the R15 system enabled [Axonics] to gain a competitive advantage in the broader SNM market relative to Medtronic" (*id.* at ¶ 25), the founding basis for such opinions resides in Dr. McDuff's expertise and in evidence that predates the supplemental financial productions ordered by SM-29 (for periods subsequent to June 2022).

In keeping with reading "narrowly the Court's requirement that a 'change of circumstances during the stay necessitates some limited additional fact discovery or limited additional expert discovery'" (SM-29 at 3 (quoting Dkt. 334 at 6)), the Special Master reads narrowly the grant of limited relief in SM-29. Even if, as Medtronic argues, the "result and extent of the head start" could not be "quantified" until the production of additional financial data pursuant to SM-29 (*see* July 12, 2024 Medtronic Ltr. at 2), Dr. McDuff's opinions regarding a "head start benefit" exceed the scope of the "updat[ing]" permitted by SM-29. (*See* SM-29 at 18 & 19.) Even if that theory of harm did not become apparent or worthwhile, in Dr. McDuff's view, until after the production of financial data post-dating June 2022, the "head start benefit" theory had already been available by the close of discovery in October 2022 but simply was not identified or not pursued in a timely fashion.

Axonics's motion to strike Section 2.3 of Dr. McDuff's June 17, 2024 Third Supplemental Expert Report is therefore GRANTED.

(2) Mr. Raj Thomas and Ms. Emily Elswick

Axonics moves to strike Medtronic's amendment of its initial disclosures to name Mr. Raj Thomas and Ms. Emily Elswick as witnesses.

Medtronic's June 5, 2024 Sixth Amended Initial Disclosures identify Mr. Thomas's area of knowledge as follows:

> President, Endoscopy Operating Unit at Medtronic; former Vice President R&D and Chief of Staff, Pelvic Health & Gastric Therapies. Mr. Thomas has knowledge regarding Medtronic's Interstim products, including marketing and success of those products in the marketplace. Mr. Thomas also has knowledge of Medtronic's sales and distribution of the Interstim products. Mr. Thomas also has knowledge of the potential acquisition of Axonics.

Medtronic's June 5, 2024 Sixth Amended Initial Disclosures also identify Ms. Elswick's area of knowledge as follows:

> President, Pelvic Health & Gastric Therapies at Medtronic. Ms. Elswick has knowledge regarding Medtronic, Medtronic's corporate practices and strategies, and Medtronic's InterStim devices.

Medtronic's witness list identifies Mr. Thomas as a will-call witness and Ms. Elswick as a may-call witness. (*See* Dkt. 446, June 21, 2024 Pl.'s Witness List.)

Axonics argues that Medtronic has given "*no* substantive explanation of what if anything these new witnesses need to testify about that the already deposed personnel cannot testify about at trial." (Axonics Ltr. at 3.) Axonics urges:

> Axonics should not be forced to take two more depositions (and potentially follow up discovery based on those) long after discovery is closed and prepare to examine them at trial during the final stages of trial preparation, without any fair or reasonable notice about the testimony Medtronic intends

> for these witnesses to offer—broad subject matter disclosures prompting exploratory deposition discovery are not appropriate at this stage of the case—nor any chance for Axonics to rely on this testimony during expert discovery or at summary judgment.

(*Id.*)

Medtronic responds:

> Axonics now seeks to benefit from the prejudice caused by its repeatedly requested stays. During the Axonics-caused delay, there was a personnel change at Medtronic. Mira Sahney, who was going to serve as Medtronic's corporate representative at trial to introduce Medtronic, the Pelvic Health Unit, and the SNM market, is no longer leading the business. Only due to this personnel change, Medtronic needs to replace Ms. Sahney as its corporate representative at trial. Medtronic identified Mr. Thomas and Ms. Elswick to do so. *See Fahmy v. Jay Z*, No. 2:07-CV-05715-CAS(PJWx), 2015 WL 5680299, at *9 (C.D. Cal. Sept. 24, 2015) (declining to exclude the defendant's late-disclosed corporate representative witness because the late disclosure was substantially justified after the defendant's previous witness left the company). Medtronic should not be prejudiced because Axonics delayed the trial in this case for years.

(July 12, 2024 Medtronic Ltr. at 2.) At the July 15, 2024 hearing, Medtronic submitted that it intends to present only very brief testimony by Ms. Elswick to introduce her to the jury as the current leader of the relevant business unit of Medtronic and as the corporate representative who will attend the entire trial.

As to Ms. Elswick, courts sometimes allow parties to add new witnesses to represent them at trial when a previously-identified witness has left their employment with the party. *See, e.g., Ruzhinskaya v. HealthPort Techs., LLC*, No. 14 CIV 2921 (PAE), 2016 WL 7388371, at *7 (S.D.N.Y. Dec. 20, 2016). However, courts have also

SPECIAL MASTER ORDER No. SM-30 AND SPECIAL MASTER MINUTES - 8

denied motions to add new corporate witnesses when the previously-identified witness was still available to testify at trial, even if their employment status with the corporation had changed. *See, e.g., Germain v. AIG Domestic Claims Servs, Inc.*, No. 07-cv-133-M-JCL, 2009 WL 10677332 (D. Mont. May 28, 2009).

Medtronic's ability to have a corporate representative of its choosing be present at trial does not afford Medtronic any automatic right to a late disclosure of that person as a trial witness. Moreover, Medtronic represents that Ms. Sahney ████████ ████████████████████████████████████████████████████████████ and Medtronic stated at the July 15, 2024 hearing that it does not seek to prevent Axonics from calling Mr. Sahney to testify at trial. The factual development that ██████████ ████████████████████████████████████████ is insufficient to support Medtronic's request to add a new trial witness. *See Germain*, 2009 WL 10677332 at *2. Further, conducting a deposition of the proposed new witness, Ms. Elswick, in the weeks leading up to trial would not cure the prejudice to Axonics but rather would compound it.

As to Mr. Thomas, the parties confirmed at the July 15, 2024 hearing that Mr. Thomas did not appear in any of Medtronic's initial disclosures until the June 5, 2024 Sixth Amended Initial Disclosures. Medtronic argued that Axonics has long been aware of Mr. Thomas as a person with relevant knowledge, emphasizing that Axonics itself sought to depose Mr. Thomas. Axonics responded that it chose instead to use its

permitted number of depositions to depose other witnesses that Medtronic *did* identify in its initial disclosures.

Medtronic replied that Axonics's position is contrary to the parties' agreement, which the Court adopted in footnote 1 of the September 12, 2022 Amended Order Adopting Trial Schedule, as follows:

> While the parties should in good faith attempt to complete fact depositions (including fact depositions of trial witnesses as described in Special Master Order No. SM-6) by [the close of fact discovery,] [t]o the extent necessary, the parties may conduct fact depositions after this date by agreement and, pursuant to Special Master Order No. SM-6, should any trial witnesses be identified later, the parties will work together in good faith to arrange for the deposition of that witness, although best efforts will be made by both sides to avoid or minimize that circumstance.

(Dkt. No. 162 at 2 n.1.)

Axonics's arguments are persuasive that although Axonics has long been aware of Mr. Thomas, Axonics has been aware of dozens of Medtronic employees with relevant knowledge but could not possibly have deposed all of those employees or anticipated that Medtronic would now decide to add Mr. Thomas to its initial disclosures as a will-call trial witness. To whatever extent the Court's September 12, 2022 Amended Order Adopting Trial Schedule can be read as possibly permitting Medtronic's identification of Mr. Thomas as a trial witness at this late stage of the case, Medtronic has not met the requirement that "best efforts will be made . . . to avoid or minimize that circumstance." (Dkt. 162 at 2 n.1.)

Axonics's motion to strike Medtronic's identification of Mr. Raj Thomas and Ms. Emily Elswick as trial witnesses is therefore GRANTED.

**B. DISPOSITION**

Axonics's motion to strike is hereby GRANTED such that the Special Master:

(1) STRIKES Section 2.3 of Dr. DeForest McDuff's June 17, 2024 Third Supplemental Expert Report; and

(2) STRIKES Medtronic's identification of Mr. Raj Thomas and Ms. Emily Elswick as trial witnesses.

No fees are awarded.

IT IS SO ORDERED.

Dated: July 16, 2024    By: _____
David M. Keyzer
Special Master